UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIAN HEILBUT, JESSE BRODKIN, and ENEA MILIORIS,<br><br>    Plaintiffs,<br><br>DAVID BREDT and GEOFFREY PITT,<br><br>    Proposed-Intervenor Plaintiffs,<br><br>    v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, and LINDSAY BURNS,<br><br>    Defendants. | Case No. 1:24-cv-05948-JLR-OTW |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DAVID BREDT'S AND GEOFFREY PITT'S MOTION TO INTERVENE**

Jeffrey A. Simes
Meghan K. Spillane
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.:   (212) 813-8800
Fax:   (212) 355-3333
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

*Attorneys for Proposed-Intervenor Plaintiffs*
*David Bredt and Geoffrey Pitt*

# **TABLE OF CONTENTS**

BACKGROUND ............................................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

A.      The Neuroscientist Plaintiffs are Entitled to Intervene as a Matter of Right. ...................... 3

        1.      The Neuroscientist Plaintiffs' Motion to Intervene is Timely. ............................... 4

        2.      The Neuroscientist Plaintiffs Have Interests in the Subject Matter of the Action. ................................................................................................................... 5

        3.      The Neuroscientist Plaintiffs' Interests May Be Impaired by the Disposition of the Action. ....................................................................................... 6

        4.      The Neuroscientist Plaintiffs' Interests Are Not Adequately Represented by Existing Parties. ............................................................................................... 7

B.      Alternatively, the Neuroscientist Plaintiffs Should be Permitted to Intervene in the Court's Discretion. ................................................................................................................ 8

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arista Recs., Inc. v. Dalaba Color Copy Ctr., Inc.*,
  2007 WL 749737 (E.D.N.Y. Mar. 7, 2007) ................................................................................5

*Bionpharma Inc. v. CoreRx, Inc.*,
  2022 WL 580767 (S.D.N.Y. Feb. 24, 2022) ..............................................................................8

*Brennan v. N.Y.C. Bd. of Educ.*,
  260 F.3d 123 (2d Cir. 2001) ........................................................................................3, 5, 6, 7

*Hartford Fire Ins. Co. v. Mitlof*,
  193 F.R.D. 154 (S.D.N.Y. 2000) ...............................................................................................4

*Mortg. Lenders Network, Inc. v. Rosenblum*,
  218 F.R.D. 381 (E.D.N.Y. 2003) ............................................................................................6, 7

*New Jersey Carpenters Health Fund v. Residential Cap. LLC*,
  2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010) .........................................................................6, 7

*Olin Corp. v. Lamorak Ins. Co.*,
  325 F.R.D. 85 (S.D.N.Y. 2018) ..................................................................................................8

*Oneida Indian Nation of Wisconsin v. New York*,
  732 F.2d 261 (2d Cir. 1984) ......................................................................................................6

*S&S Kings Corp. v. Westchester Fire Ins. Co.*,
  2017 WL 396741 (S.D.N.Y. Jan. 27, 2017) ...........................................................................4, 5

*S.E.C. v. Credit Bancorp, Ltd.*,
  2000 WL 1170136 (S.D.N.Y. Aug. 16, 2000) ...........................................................................5

*Schaghticoke Tribal Nation v. Norton*,
  2006 WL 1752384 (D. Conn. June 14, 2006) ........................................................................4, 5

*Tachiona ex rel. Tachiona v. Mugabe*,
  186 F. Supp. 2d 383 (S.D.N.Y. 2002) .......................................................................................4

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ..................................................................................................................7

*True Return Sys. LLC v. Compound Protocol*,
  2023 WL 6211815 (S.D.N.Y. Sept. 25, 2023) ..........................................................................4

*U.S. Postal Serv. v. Brennan*,
  579 F.2d 188 (2d Cir. 1978)..................................................................................................7

*U.S. v. N.Y.C. Hous. Auth.*,
  326 F.R.D. 411 (S.D.N.Y. 2018) ...........................................................................................8

*XL Specialty Ins. Co. v. Lakian*,
  632 F. App'x 667 (2d Cir. 2015) ...........................................................................................5

**Other Authorities**

Fed. R. Civ. P. 24(a)(2).................................................................................................... *passim*

Fed. R. Civ. P. 24(b)(1).................................................................................................... *passim*

Dr. David Bredt and Dr. Geoffrey Pitt (the "Neuroscientist Plaintiffs") respectfully move to intervene as Plaintiffs in the above-captioned action. Pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a)(2), the Neuroscientist Plaintiffs seek intervention as a matter of right due to their interests in the subject matter of this action. Alternatively, they seek permission to intervene pursuant to FRCP 24(b)(1).

## BACKGROUND

Plaintiffs Adrian Heilbut, Jesse Brodkin, and Enea Milioris commenced the above-captioned action against Defendants Cassava Sciences, Inc. ("Cassava"), Remi Barbier, and Dr. Lindsay Burns on August 6, 2024, and subsequently filed their First Amended Complaint on October 24, 2024, alleging claims under New York's anti-SLAPP law and claims for malicious prosecution and civil conspiracy to recover their costs and attorney's fees, other compensatory damages, and punitive damages. See Amend. Compl., ECF No. 9. The Neuroscientist Plaintiffs were co-Defendants with Drs. Heilbut, Brodkin and Miloris in the abusive lawsuit brought by Cassava that this Court dismissed. See Case No. 1:22-cv-9409-GHW, ECF No. 119. The Neuroscientist Plaintiffs seek to intervene in this lawsuit to assert claims similar to those of Drs. Heilbut, Brodkin and Miloris based on similar facts arising from the same underlying SLAPP lawsuit by Cassava.

According to the First Amended Complaint, Plaintiffs are scientists and investors who expressed criticism and concern with Cassava's research and data regarding the drug simufilam in various public forums, including through posts on PubPeer and Twitter (now known as X), beginning in 2021. See Am. Compl. ¶¶ 2, 41. Plaintiffs allege that, in an effort to punish and suppress Plaintiffs' participation in the public and scientific discourse concerning Cassava and its research and data regarding simufilam, Cassava filed a baseless defamation action (the

"Defamation Action"), at the direction of Defendants Barbier (Cassava's former CEO) and Dr. Burns (Cassava's former SVP of Neuroscience) against Plaintiffs on November 2, 2022, which was ultimately dismissed nearly two years later. *See id.* ¶¶ 46, 80. Plaintiffs further allege that Cassava commenced and continued the Defamation Action in bad faith, knowing all along that their "foundational claims about simufilam were unique to the company, uncorroborated, and based entirely on contested research by" its lead scientist Dr. Hoau-Yan Wang, a professor at the City University of New York ("CUNY"), and Dr. Burns. *Id.* ¶¶ 8, 122. Moreover, Plaintiffs allege that their criticisms have been corroborated by investigations by the Food and Drug Administration ("FDA"), the Department of Justice ("DOJ"), the Securities and Exchange Commission ("SEC"), and CUNY, which have led to Dr. Wang being indicted, Barbier and Dr. Burns being forced out the company, and Cassava agreeing to pay a $40 million fine to the SEC. *See id.* ¶ 3.

The Neuroscientist Plaintiffs were subject to the same Defamation Action as Plaintiffs, based on similar but distinct facts. As set forth in the Complaint in Intervention, attached hereto as Exhibit A and incorporated by reference herein, Plaintiffs are accomplished scientists who availed themselves of the Citizen Petition ("CP") mechanism designed to alert the FDA to public concerns about drug-related matters. *See* Compl. in Intervention ¶¶ 2, 31. They presented their concerns with Defendants' research in exacting factual detail, requesting that the FDA further investigate the data that Cassava itself admitted contained "problems" and "errors." *See id.* ¶ 2. The Neuroscientist Plaintiffs allege that Defendants knew, at the time the Defamation Action was commenced, that they lacked the evidence necessary to dispute the Neuroscientist Plaintiffs' claims, as Defendants were already aware of the "lack of experiment logbooks/notebooks for all study/research work being performed" by Dr. Wang and had already concluded that his lab was "unacceptable" and "not qualified to provide biomarker analysis." *See id.* ¶ 4. Yet, as the

2

Neuroscientist Plaintiffs allege, "Defendants commenced and continued the Defamation Action to suppress criticism and conceal their misconduct without regard for the lack of veracity of their claims." *Id.* ¶ 5. Like Plaintiffs, the Neuroscientist Plaintiffs point to the dismissal of the Defamation Action as confirmation of the Defamation Action's deficiencies as a matter of law and the various investigations as corroboration of the Neuroscientist Plaintiffs' concerns raised to the FDA. *See id.* ¶ 6. The Neuroscientist Plaintiffs similarly allege claims under New York's anti-SLAPP law and claims for malicious prosecution and civil conspiracy to recover their costs and attorney's fees, other compensatory damages, and punitive damages. *See id.* ¶¶ 50–92.

In order to protect their substantial interests in the outcome of this litigation, the Neuroscientist Plaintiffs now move for leave to intervene as plaintiffs as-of-right pursuant to FRCP Rule 24(a)(2), or, in the alternative, for permissive intervention under FRCP Rule 24(b)(1).

## ARGUMENT

### A.   The Neuroscientist Plaintiffs are Entitled to Intervene as a Matter of Right.

Under FRCP 24(a)(2), a court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).[1] "To intervene as of right, a movant must: (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128–29 (2d Cir. 2001). This test is "a flexible and discretionary one,

---

[1] With respect to materials and legal authorities cited herein, all (i) internal alterations, citations, and quotation marks are omitted unless noted; and (ii) emphasis is added.

3

and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002); s*ee S&S Kings Corp. v. Westchester Fire Ins. Co.*, 2017 WL 396741, at *1 (S.D.N.Y. Jan. 27, 2017).

Since the Neuroscientist Plaintiffs amply satisfy all four requirements of Rule 24(a)(2), this Court should grant their request to intervene as a matter of right.

1. <u>The Neuroscientist Plaintiffs' Motion to Intervene is Timely.</u>

The Neuroscientist Plaintiffs' motion is timely as it comes at the early stages of this lawsuit. In determining whether a motion to intervene is timely, courts consider a number of factors, including: "(a) the length of time the applicant knew or should have known of [their] interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 159–60 (S.D.N.Y. 2000) (quoting *U.S. v. State of N.Y.*, 820 F.2d 554, 557 (2d Cir. 1987)). "Timeliness is a matter within the sound discretion of the trial court." *Hartford Fire Ins. Co.*, 193 F.R.D. at 159.

Here, the Neuroscientist Plaintiffs seek to intervene "at an early stage in the litigation, prior to any substantive motions or active discovery." *True Return Sys. LLC v. Compound Protocol*, 2023 WL 6211815, at *3 (S.D.N.Y. Sept. 25, 2023); *see Schaghticoke Tribal Nation v. Norton*, 2006 WL 1752384, at *8 (D. Conn. June 14, 2006). There has been no discovery in this case nor any substantive motion practice, beyond the present motion. Plaintiffs commenced this action less than four months ago and filed their First Amended Complaint less than six weeks ago on October 24, 2024 (ECF No. 9), to which Defendants have not yet answered or moved to dismiss. No

4

discovery has yet been served or exchanged. Moreover, the parties in the instant action cannot be surprised nor prejudiced by the Neuroscientist Plaintiffs' proposed intervention, as the Neuroscientist Plaintiffs have "previously participated in actions before this Court"; specifically, they were defendants in the related Defamation Action and suffered similar harms as Plaintiffs allege to have suffered here. *Schaghticoke Tribal Nation*, 2006 WL 1752384, at *8. Because the Neuroscientist Plaintiffs' prompt motion could not in any way be construed to impact any strategic, procedural, or substantive decisions that the parties have taken or may take in connection with this action, the Neuroscientist Plaintiffs' motion is timely. *See, e.g.*, *Arista Recs., Inc. v. Dalaba Color Copy Ctr., Inc.*, 2007 WL 749737, at *3 (E.D.N.Y. Mar. 7, 2007) (finding motion to intervene timely where motion was "filed just five months after the complaint was filed, and before the commencement of discovery"); *see S&S Kings Corp.*, 2017 WL 396741, at *2 (finding motion to intervene timely where discovery had not yet begun); *see also S.E.C. v. Credit Bancorp, Ltd.*, 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (finding motion to intervene timely where the exchange of some discovery for several months had "not progressed so far that it will be unduly delayed or complicated by [the] intervention").

    2. <u>The Neuroscientist Plaintiffs Have Interests in the Subject Matter of the Action.</u>

The Neuroscientist Plaintiffs show an interest in the action as their claims arise from the same occurrences as the other Plaintiffs—namely, Cassava's abusive SLAPP lawsuit. "[F]or an interest to be cognizable under Rule 24(a)(2), it must be direct, substantial, and legally protectable." *Brennan*, 260 F.3d at 129; *see XL Specialty Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015). On the other hand, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Brennan*, 260 F.3d at 129. Rule 24(a)(2) "does not require

5

that an intervenor prove a property right, whether in the constitutional or any other sense"; rather what must be shown is an interest *relating to* the property or transaction. *Id.* at 130.

Here, the Neuroscientist Plaintiffs have direct, substantial, and legally protectable interests in this action because their claims "arise[] out of the same transaction and occurrence that is the subject of the instant case." *Mortg. Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381, 384 (E.D.N.Y. 2003); *see New Jersey Carpenters Health Fund v. Residential Cap., LLC*, 2010 WL 5222127, at *4 (S.D.N.Y. Dec. 22, 2010) (holding that intervenors have a direct interest in the action because their claims "arise out of the same transaction and occurrence that is the subject of the instant case"). Specifically, the Neuroscientist Plaintiffs were subject to the same Defamation Action and intimidation campaign that are at the heart of this anti-SLAPP lawsuit and have similar claims under New York's anti-SLAPP law and claims for malicious prosecution and civil conspiracy based upon Defendants' efforts to silence, intimidate, and discredit critics of their work, which include both Plaintiffs and the Neuroscientist Plaintiffs. As such, the second requirement of Rule 24(a)(2) is clearly satisfied.

3. <u>The Neuroscientist Plaintiffs' Interests May Be Impaired by the Disposition of the Action.</u>

Intervention is also proper because the Neuroscientist Plaintiffs' interests may be impeded or impaired by the disposition of this action. After the movant has established a sufficient interest in the subject of the action, the movant must demonstrate that disposition of that "action might as a practical matter impair its interest." *Brennan*, 260 F.3d at 129. The Second Circuit has recognized that the *stare decisis* effect of a court's decision is sufficient to demonstrate the requisite impairment of an interest to support a motion to intervene. *See Oneida Indian Nation of Wisconsin v. New York*, 732 F.2d 261, 265 (2d Cir. 1984) (remanding to permit intervention due to the "substantial likelihood that the claims and interests of the proposed intervenors concerning

6

the disputed lands may be adversely affected at least by principles of *stare decisis*, arising out of the final judgment to be entered in this case").

Here, "[a]ny disposition on the merits would inevitably affect their claims since they arise from the same course of conduct and assert the same legal theories as the current [P]laintiffs." *New Jersey Carpenters Health Fund*, 2010 WL 5222127, at *4; s*ee Mortg. Lenders Network, Inc.*, 218 F.R.D. at 384 (holding that proposed intervenor's ability to protect its interests would be impeded if denied intervention due to, among other things, "a risk of inconsistent rulings on the same issues"). Should this Court render a decision in the Neuroscientist Plaintiffs' absence, and contrary to their position, they could be hampered in seeking to vindicate their position in another court. This detriment alone clearly satisfies the third requirement of Rule 24(a)(2).

    4.    <u>The Neuroscientist Plaintiffs' Interests Are Not Adequately Represented by Existing Parties.</u>

Finally, the Neuroscientist Plaintiffs' interests cannot be adequately represented by the parties to this lawsuit as the Neuroscientist Plaintiffs have suffered different injuries and were in Cassava's litigation cross hairs for somewhat different reasons. A proposed intervenor bears a "minimal" burden of establishing that its interests *may not* be adequately represented by the parties to the lawsuit. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538, n.10 (1972); *see U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). Courts consider whether a current party's interests are so similar to that of the proposed intervenor that adequacy of representation is assured. *See Brennan*, 260 F.3d at 132–33.

Here, although Plaintiffs and the Neuroscientist Plaintiffs were both subject to the same Defamation Action and intimidation campaign waged by Defendants, they do not share wholly identical interests. The Neuroscientist Plaintiffs' interests diverge from the present Plaintiffs insofar as the economic, reputational, emotional, and psychological damages caused by

Defendants are personal to them and based upon specific actions taken by Defendants against them. Further, their losses can only be recouped by their presence as parties in the instant action. For these reasons, the Neuroscientist Plaintiffs' interests cannot and will not be adequately represented by the current parties.

> **B.  Alternatively, the Neuroscientist Plaintiffs Should be Permitted to Intervene in the Court's Discretion.**

In the alternative, even if the Neuroscientist Plaintiffs could not establish their right to intervene as of right, this Court should grant them permission to intervene as a matter of discretion pursuant to Rule 24(b)(1). FRCP 24(b)(1) provides, in relevant part, that intervention is permissible when an applicant, "[o]n timely motion, . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention "is to be liberally construed." *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018). "In deciding whether to permit intervention under Rule 24(b), courts generally consider the same factors that are relevant as of right under Rule 24(a)(2)." *Id*. "However, '[t]he principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Id.* (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)); *see Bionpharma Inc. v. CoreRx, Inc.*, 2022 WL 580767, at *5 (S.D.N.Y. Feb. 24, 2022). The Court will also consider additional factors such as whether the intervenor will "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal issues presented." *U.S. v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018).

Permissive intervention is appropriate in this case. The Neuroscientist Plaintiffs' claims against Defendants are grounded upon the same legal and factual questions as the main action. And, as set forth above, the Neuroscientist Plaintiffs' motion is timely and their intervention will

8

not prejudice the rights of existing parties. Finally, the Neuroscientist Plaintiffs' intervention will significantly contribute to the development of the underlying factual issues in this case and to the just and equitable adjudication of the issues present. The Neuroscientist Plaintiffs are uniquely positioned to speak to Defendants' Defamation Action and intimidation campaign levied against them and their critiques set forth in the CP and supplemental submissions. If the Neuroscientist Plaintiffs' motion to intervene is not granted, they will be forced to file a competing action for damages, leading to additional litigation and potentially inconsistent outcomes. Thus, granting the Neuroscientist Plaintiffs' motion serves the purpose of intervention—efficiently administering legal disputes by resolving related issues in one lawsuit.

## **CONCLUSION**

For the foregoing reasons, the Neuroscientist Plaintiffs respectfully request that this Court grant their motion to intervene in this litigation either as of right pursuant to Fed. R. Civ. P. 24(a)(2) or, in the alternative, by permission pursuant to Fed. R. Civ. P. 24(b)(1), and grant such other and further relief as may be deemed appropriate in the interests of justice.

Dated: December 2, 2024
New York, New York

GOODWIN PROCTER LLP

*/s/ Jeffrey A. Simes*
Jeffrey A. Simes
Meghan K. Spillane
620 Eighth Avenue
New York, NY 10018
Tel.:   (212) 813-8800
Fax:   (212) 355-3333
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

*Attorneys for Proposed-Intervenor Plaintiffs
David Bredt and Geoffrey Pitt*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Memorandum of Law in Support of David Bredt's and Geoffrey Pitt's Motion to Intervene contains 2,761 words, as reported by Microsoft Word.

*/s/ Jeffrey A. Simes*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2024, a true and correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

*/s/ Jeffrey A. Simes*