## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIAN HEILBUT, JESSE BRODKIN, AND, ENEA MILIORIS,<br><br>    Plaintiffs,<br><br>DAVID BREDT and GEOFFREY PITT<br><br>    Intervenor Plaintiffs<br><br>v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, AND DR. LINDSAY BURNS<br><br>    Defendants. | Civil Action No. 1:24-cv-05948-JLR |

**DEFENDANTS CASSAVA SCIENCES, INC., REMI BARBIER, AND
DR. LINDSAY BURNS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS THE DOT.COM COMPLAINT**

Michael Vatis (NY Reg. No. 2258655)
J. Erik Connolly (*pro hac vice*)
Caitlin Kovacs (*pro hac vice*)
Michael B. Silverstein (*pro hac vice*)
    mvatis@beneschlaw.com
    econnolly@beneschlaw.com
    ckovacs@beneschlaw.com
    msilverstein@beneschlaw.com

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.      Dot.com Plaintiffs' Anti-SLAPP claim fails because it is inapplicable and ignores the facts of the Defamation Action. ..................................................... 6

    A.      New York's Anti-SLAPP law cannot apply to the Defamation Action............ 6

    B.      Dot. com Plaintiffs are not "defendants" under § 70-a. ................................... 9

    C.      Dot.com Plaintiffs have not and cannot allege that the Defamation Action lacked a substantial basis in law and fact. ....................................................... 11

II.     Dot.com Plaintiffs' malicious-prosecution claim fails because Dot.com Plaintiffs fail to adequately plead its elements. ............................................... 13

    A.      Cassava had probable cause to bring the underlying Defamation Action. ... 14

    B.      Cassava brought the Defamation Action without malice............................... 15

    C.      Defendants caused no special injuries to Dot.com Plaintiffs.......................... 17

III.    Dot.com Plaintiffs' conspiracy claim ignores binding legal doctrines and is inadequately pled. ......................................................................................... 20

    A.      A corporation cannot conspire with its own agents acting under the scope of their employment. ......................................................................................... 20

    B.      Dot.com Plaintiffs fail to allege any common scheme or plan. ...................... 21

    C.      Dot. comPlaintiffs' related claims are insufficient.......................................... 22

CONCLUSION .................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................5

*Bank of Am., N.A. v. Kessler*,
    206 N.E.3d 1228 (N.Y. 2023)............................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................5

*Carroll v. Trump*,
    590 F. Supp. 3d 575 (S.D.N.Y. 2022)...........................................................7, 8

*Cassava Sciences, Inc. v. Bredt et al.*,
    No. 22-cv-9409, 2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024)..................... *passim*

*Coritsidis v. Khal Bnei Torah of Mt Ivy*,
    No. 22-CV-10502 (CS), 2024 WL 37122 (S.D.N.Y. Jan. 3, 2024)...................7

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)...............................................................................2

*Du Chateau v. Metro-N. Commuter R. Co.*,
    253 A.D.2d 128 (N.Y. App. Div. 1999) ..........................................................15

*Dudick v. Gulyas*,
    277 A.D.2d 686 (N.Y. App. Div. 2000) ..........................................................17

*Dowd v. DeMarco*,
    314 F. Supp. 3d 576 (S.D.N.Y. 2018)..............................................................21

*Dynamic Energy Sols., LLC v. Pinney*,
    387 F. Supp. 3d 176 (N.D.N.Y. 2019)....................................................8, 10, 11

*Engel v. CBS, Inc.*,
    93 N.Y.2d 195, 711 N.E.2d 626 (1999).......................................................17, 18

*Ericson v. Syracuse Univ.*,
    35 F. Supp. 2d 326 (S.D.N.Y. 1999).................................................................21

*FiDi Creatives LLC v. Skapos LLC*,
    No. 654685/2023, 2024 WL 1647284 (N.Y. Sup. Ct. Apr. 12, 2024),...........20, 21

*Fink v. Shawangunk Conservancy, Inc.*,
    15 A.D.3d 754 (N.Y. App. Div. 2005) ...............................................................14

*Fisk v. Letterman*,
    424 F. Supp. 2d 670 (S.D.N.Y. 2006)...........................................................20, 21

*Ginx, Inc. v. Soho All.*
    720 F. Supp. 2d 342 (S.D.N.Y. 2010).................................................................7

*Hanna v. Plumer*,
    380 U.S. 460 (1965)...........................................................................................7

*IntegrateNYC, Inc. v. State*,
    228 A.D.3d 152 (N.Y. App. Div. 2024) ............................................................10

*Johnson v. Priceline.com, Inc.*,
    711 F.3d 271 (2d Cir. 2013)...............................................................................5

*Kaye v. Trump*,
    58 A.D.3d 579, 873 N.Y.S.2d 5 (2009) ........................................................18, 19

*Keiler v. Harlequin Enterprises Ltd.*,
    751 F.3d 64 (2d Cir. 2014)..................................................................................5

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020)...........................................................................5, 7, 8

*Levitin v. Miller*,
    No. 92 CIV. 0520 (KMW), 1994 WL 376078 (S.D.N.Y. July 15, 1994) .........13, 14

*Max v. Lissner*
    22-CV-5070 (VEC), 2023 WL 2346365 (S.D.N.Y. Mar. 3, 2023) ..........................8

*McGee v. Dunn*
    940 F. Supp. 2d 93 (S.D.N.Y. 2013).................................................................16

*Murphy v. City of Stamford*,
    634 F. App'x 804 (2d Cir. 2015) ......................................................................21

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
    551 F. Supp. 3d 408 (S.D.N.Y. 2021)..............................................................7, 8

*Nieves v. Cty. of Monroe*,
    761 F. Supp. 2d 48 (W.D.N.Y. 2011) ...............................................................16

*Pappas v. Philip Morris, Inc.*,
    915 F.3d 889 (2d Cir. 2019)...............................................................................7

*Pirro v. Bd. of Trustees of Vill. of Groton*,
   203 A.D.3d 1263 (N.Y. App. Div. 2022) ...............................................................14

*Prince v. Intercept*,
   634 F. Supp. 3d 114 (S.D.N.Y. 2022)..................................................................2, 7

*Reeves v. Associated Newspapers, Ltd.*,
   No. 154855/20, 2024 WL 3892069 (N.Y. App. Div. Aug. 22, 2024) ....................11

*Reszka v. Collins*,
   136 A.D.3d 1299 (N.Y. App. Div. 2016) ..............................................................17

*Rodriguez v. Perales*,
   657 N.E.2d 247 (N.Y. App. Div. 1995)..................................................................11

*Rubin v. Lutfy*,
   No. 110510/09, 2009 WL 4878425 (N.Y. Sup. Ct. 2009).  .....................16, 18, 19

*Savarese v City of New York*,
   547 F Supp 3d 305 (S.D.N.Y 2021).......................................................................20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)...............................................................................................5, 7

*Stolow v. Greg Manning Auctions Inc.*,
   258 F. Supp. 2d 236 (S.D.N.Y.)............................................................................21

*United States v. Filippatos*,
   307 F. Supp. 564 (S.D.N.Y. 1969) ........................................................................13

## Statutes and Rules

Fed. R. Civ. P. 12 ........................................................................................... *passim*

N.Y. Civ. Rights Law § 70-a ........................................................................... *passim*

Defendants Cassava Sciences, Inc. ("Cassava"), Remi Barbier, and Dr. Lindsay Burns, by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, file the following Memorandum in Support of their Motion to Dismiss Plaintiffs Adrian Heilbut, Jesse Brodkin, and Enea Milioris' ("Dot.com Plaintiffs") First Amended Complaint ("FAC" or "Complaint").

## INTRODUCTION

Dot.com Plaintiffs' FAC should be dismissed because it alleges no conduct that amounts to any tort or actionable violation.  Dot.com Plaintiffs bring a novel Anti-SLAPP claim in federal court, in an attempt to backdoor a disallowed remedy; Dot.com Plaintiffs bring a malicious prosecution claim, despite this Court already holding that there was plausible merit in hundreds of claims within the Defamation Action; and Dot.com Plaintiffs bring a civil conspiracy claim, merely alleging that Defendants engaged in a "PR campaign," which is not actionable.  This suit is merely another ploy in a yearslong campaign of harassment against Cassava that should have ended with the resolution of the Defamation Action.  All three claims are meritless, and all three claims must fail.

Accordingly, this Court should dismiss Dot.com Plaintiffs' First Amended Complaint with prejudice.

## BACKGROUND

Dot.com Plaintiffs base their claim on Cassava's lawsuit against them for defamation (the "Defamation Action").  [*See* FAC ¶¶ 1–15, 46–82.]  However, as a threshold matter, Dot.com Plaintiffs' Complaint omits central allegations and holdings from this Court that are found in the same pleadings and decisions they reference throughout the FAC.  Those pleadings and decisions are integrated within the FAC via Dot.com Plaintiffs' repeated reference to them and the fact that their case is based entirely on the Defamation Action.  Accordingly, this Court should consider the

1

relevant pleadings and decisions when ruling on this Motion, and Cassava describes those key facts below.[1]

Cassava sued Dot.com Plaintiffs—among others—for defamation on November 2, 2022 in the Southern District of New York.  *See* Compl., *Cassava Scis., Inc. v. Bredt et al.*, No. 22-cv-9409 (S.D.N.Y. Nov. 2, 2022).  Cassava alleged that Dot.com Plaintiffs and others engaged in a "short and distort campaign" against Cassava.  *See* First Amended Complaint ("Defamation FAC"), *Cassava Sciences, Inc. v. Bredt et al.*, No. 22-cv-9409 (S.D.N.Y. Nov. 4, 2023), ¶ 5.  Through this campaign, Dot.com Plaintiffs and others shorted Cassava's stock and published defamatory statements to drive the price down.  *Id.* ¶¶ 5–10.  As the defamatory statements took their effect, Dot.com Plaintiffs' and others' short positions rewarded them.  *Id.* ¶ 1.  Cassava alleged Dot.com Plaintiffs made these false statements with actual malice and in order to simply line their pockets.  *Id.* ¶¶ 289–365.  Dot.com Plaintiffs and the other parties made these statements in various forums, but Dot.com Plaintiffs' most prolific outlet was X, formerly known as Twitter. *Id.* ¶¶ 18–21.

And while Dot.com Plaintiffs made hundreds of different defamatory statements about Cassava on various subjects, they centered on the same theme: "Cassava is a fraud."  *Id.* ¶¶ 8, 160. The thrust of Dot.com Plaintiffs' many defamatory tweets was not simply a critique of the science underlying Cassava's investigational treatment for Alzheimer's or even a focused attack on the individuals who performed that research.  Instead, Dot.com Plaintiffs asserted that *Cassava itself*— not the underlying studies or individuals who performed them—was a fraud.  Of course, as Cassava

---

[1] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Even if this Court does not believe the facts and procedure of the Defamation Action are necessarily integrated into the First Amended Complaint, this Court can still consider them by taking judicial notice of the public filings in that case.  *Prince v. Intercept*, 634 F. Supp. 3d 114, 126 (S.D.N.Y. 2022).

alleged and maintains, Cassava is not a fraud. *Id.* ¶¶ 162–67. Cassava is a biotechnology company conducting clinical trials on a hopefully lifechanging drug for those with Alzheimer's: simufilam. *Id.* ¶ 2. So Cassava sought to vindicate its name and seek damages from those who purposefully profited off this false narrative.

The district court ruled that 315 of Dot.com Plaintiffs' statements were defamatory. These statements "either directly accused [Cassava] of scientific misconduct, stated that simufilam was not effective, or heavily intimated that [Cassava] was engaged in fraudulent behavior." *Cassava Scis., Inc. v. Bredt et al.*, No. 1:22-cv-9409, 2024 WL 1347362, at *21 (S.D.N.Y. Mar. 28, 2024). The district court then held that Cassava could amend its complaint as to those 315 statements in order to enhance its actual-malice allegations. *Id.* at *29. In so holding, the district court held that it could not conclude "that amendment of the Complaint to replead Plaintiff's claims with respect to the challenged tweets would be futile." *Id.*

And, of course, when ruling on Dot.com Plaintiffs' motion to dismiss, the district court used the applicable federal standard: "[t]o avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* at *6.

Cassava then filed a Second Amended Complaint addressing the district court's concerns. *See* Second Am. Compl., *Cassava Sciences, Inc. v. Bredt et al.*, No. 22-cv-9409 (S.D.N.Y. Apr. 29, 2024) (hereinafter "Defamation SAC"). It focused on an even narrower subset of statements than the 315 statements the court labeled defamatory and added additional allegations to bolster its actual malice assertions. *See generally id.* But while Cassava amended its actual-malice allegations, its claims remained animated by Dot.com Plaintiffs' overwhelming message that Cassava was "Theranos 2.0," a company "engaged in fraudulent and illegal activity." *Id.* ¶ 8. The

statements Cassava proceeded with in the SAC had already been found defamatory by the district court.

Dot.com Plaintiffs again filed a motion to dismiss. *See* Mot. to Dismiss, *Cassava Scis., Inc. v. Bredt et al.*, No. 22-cv-9409 (S.D.N.Y. June 28, 2024). They rehashed most of the same arguments they made in their first motion to dismiss. The largest difference was their inclusion of the federal indictment of Dr. Wang. *See* Mem. In Support of Mot. to Dismiss, at 10–11, *Cassava Scis., Inc. v. Bredt et al.*, No. 22-cv-9409 (S.D.N.Y. June 28, 2024). The same day Dot.com Plaintiffs filed their new motion, the Department of Justice filed an indictment against Dr. Wang related to alleged fraud the government believes he committed related to early research on simufilam. *See* Indictment, *United States v. Wang*, Case No. 24-cr-00211-TDC (D. Md.). In their motion, Dot.com Plaintiffs characterized this indictment as justification for all of their statements about Cassava. *See* Mem. In Support of Mot. to Dismiss, at 21–22, *Cassava Scis., Inc. v. Bredt et al.*, No. 22-cv-9409 (S.D.N.Y. June 28, 2024). Notably, neither Cassava nor any of its employees had been indicted, and the indictment did not allege that Cassava itself or any of its employees engaged in any wrongful or illegal conduct.

Cassava voluntarily dismissed the case against the Dot.com Plaintiffs on August 2, 2024. *See* Not. of Vol. Dismissal, *Cassava Scis., Inc. v. Bredt et al.*, No. 22-cv-9409 (S.D.N.Y. August 2, 2024). The district court endorsed that notice on August 5, 2024. *See* Mem., *Cassava Scis., Inc. v. Bredt et al.*, No. 22-cv-9409 (S.D.N.Y. August 5, 2024). By August 5, at latest, Dot.com Plaintiffs ceased to be defendants in the Defamation Action.

Dot.com Plaintiffs filed the instant action the next day. The original complaint was 10 pages long, and contained one count against only Cassava. Dot.com Plaintiffs never served that complaint on Cassava. On October 24, 2024, Dot.com Plaintiffs amended the complaint, and

4

finally served Defendants.  The new 48-page FAC contains three counts.  **First**, it alleges that Cassava violated New York Civil Rights Law § 70-a by bringing the Defamation Action "without a substantial basis in fact and law."  [FAC ¶¶ 183–194.]  To support this legal conclusion, Dot.com Plaintiffs allege that Cassava lacked any proof that a reasonable mind could accept as adequate to support the conclusion the Dot.com Plaintiffs defamed Cassava.  [*Id*. ¶ 189.]  They do not mention that **the district court** found 315 of the statements at issue in the Defamation Action to be defamatory.  **Second**, the Dot.com Complaint alleges that Cassava maliciously prosecuted the Defamation Action, again making no mention of the numerous provisional holdings in favor of Cassava therein.  [*Id.* ¶¶ 195–205.]  **Third**, the DCC alleges a count of conspiracy, relying on Cassava's "PR campaign" as the basis of a common scheme.  [*Id.* ¶¶ 206–214.]

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013).  This Court must "accept[] as true all material factual allegations in the complaint and draw[] all reasonable inferences in plaintiffs' favor."  *Id.*  While a complaint need not "contain detailed or elaborate factual allegations," the allegations must be "sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).  In other words, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

When state laws conflict with federal rules, the federal rule must win out, and the state law cannot apply.  *See La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010).

# ARGUMENT

The First Amended Complaint fails on each count. Count I fails because: the Anti-SLAPP claim is inapplicable in federal court; the Anti-SLAPP statute only applies to defendants, and Dot.com Plaintiffs are not defendants; and Defendants had a "substantial basis"—as defined in the Anti-SLAPP statute—in fact and law for bringing the Defamation Action. Count II fails because: Defendants brought the Defamation Action with probable cause; Dot.com Plaintiffs make no showing of malice underlying the Defamation Action; and Dot.com Plaintiffs allege no special injury caused by Defendants. Count III fails because: the intracorporate conspiracy doctrine bars conspiracy claims against a corporation and its employees; the FAC alleges no common scheme or plan as required for conspiracy; and conspiracy cannot be pled as an independent tort.

## I. Plaintiff's Anti-SLAPP claim fails because it is inapplicable and ignores the facts of the Defamation Action.

Count I fails to state a plausible claim for relief for three reasons. ***First***, whether framed as an affirmative cause of action or otherwise, New York's Anti-SLAPP law cannot apply to a federal complaint. ***Second***, New York's Anti-SLAPP law allows only "defendants" to bring claims, which Dot.com Plaintiffs no longer are. ***Third***, Dot.com Plaintiffs have not alleged and cannot allege that Cassava's Defamation Action lacked a substantial basis in fact and law, particularly where the district court has already determined that 315 of the at-issue statements were defamatory.

### A. New York's Anti-SLAPP law cannot apply to the Defamation Action.

The Complaint attempts to hold Cassava to a higher burden than imposed on it by the Federal Rules of Civil Procedure. For this reason alone, Count I fails.

This position is not controversial. If a Federal Rule of Civil Procedure "answers the same question" as a state law, the Federal Rule governs in federal court, unless the rule at issue violates

the Rules Enabling Act. *Reid*, 966 F.3d at 87. In other words, if a state law conflicts with a federal rule answering the same question, the federal rule prevails. *Carroll v. Trump*, 590 F. Supp. 3d 575, 582 (S.D.N.Y. 2022). This balances two competing interests: (1) ensuring that federal courts honor substantive state law, and (2) protecting the integrity of federal courts as an independent judicial system. *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894 (2d Cir. 2019). Courts strike this balance by focusing on whether the Rule "really regulate[s] procedure." *Shady Grove*, 559 U.S. at 407 (cleaned up). In this way, courts honor "[o]ne of the shaping purposes of the Federal Rules[, which] is to bring about uniformity in the federal courts." *Hanna v. Plumer*, 380 U.S. 460, 472 (1965) (citation omitted).

Applying these principles, numerous courts have held that New York's Anti-SLAPP laws cannot apply in federal court. *See, e.g.*, *Coritsidis v. Khal Bnei Torah of Mt Ivy*, No. 22-CV-10502 (CS), 2024 WL 37122, at *6 (S.D.N.Y. Jan. 3, 2024) (collecting cases). New York's Anti-SLAPP laws "elevate a plaintiff's burden at the pleading stage above 'plausibility' (the post-*Twombly*/*Iqbal* federal standard) to 'substantial basis.'" *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 366 (S.D.N.Y. 2010). This heightened burden directly conflicts with Rules 12 and 56—the summary judgment standard—of the Federal Rules. *See id.* Rule 12—as noted above—requires a plaintiff establish only a plausible basis for relief, and Rule 56 requires a party to show there is merely a genuine dispute of material fact.

Judges in this Court have specifically found that Dot.com Plaintiffs' chosen section—70-a—"does not apply in federal court." *Prince v. Intercept*, 634 F. Supp. 3d 114, 142 (S.D.N.Y. 2022). Section 70-a "imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure." *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021). The substantial basis

standard in New York's § 70-a conflicts with Federal Rules 12 and 56, so it "is inapplicable in federal court." *Id.* (citing *Reid*, 966 F.3d at 87).

When parties to federal suits attempt to lodge substantive counterclaims under New York's Anti-SLAPP statute, federal courts largely have rejected that attempt. *See, e.g., Carroll,* 590 F. Supp. 3d at 582 ; *Nat'l Acad. of Television Arts & Scis., Inc.*, 551 F. Supp. 3d at 431–32.  In both *Carroll* and *National Academy*, the defendant sought to assert a counterclaim based on § 70-a. *Carroll*, 590 F. Supp. 3d at 578; *Nat'l Acad. of Television Arts & Scis., Inc.*, 551 F. Supp. 3d at 417.  Neither court permitted the defendant to do so, because § 70-a conflicts with the Federal Rules. *Carroll,* 590 F. Supp. 3d at 582; *Nat'l Acad. of Television Arts & Scis., Inc.*, 551 F. Supp. 3d at 431–32.  It did not matter that the relief was framed as a substantive claim as opposed to a defense—the claim would still subvert the Federal Rules by allowing a defendant to hold plaintiffs to a heightened, state-imposed standard. *Carroll,* 590 F. Supp. 3d at 582; *Nat'l Acad. of Television Arts & Scis., Inc.*, 551 F. Supp. 3d at 431–32.

The only cases Cassava's counsel has found permitting a completely independent affirmative cause of action under § 70-a centered on *state* complaints.  The *Max* court recognized that New York's Anti-SLAPP law permitted an affirmative cause of action in a narrow setting: an allegation that "a defamation plaintiff violated the substantive state law by commencing a defamation lawsuit in ***state*** court." *Max v. Lissner*, 22-CV-5070 (VEC), 2023 WL 2346365, at *8 (S.D.N.Y. Mar. 3, 2023), *appeal dismissed* (June 21, 2023) (emphasis added).  And in *Pinney*, the plaintiff similarly brought its Anti-SLAPP claim based on a state complaint. *Dynamic Energy Sols., LLC v. Pinney*, 387 F. Supp. 3d 176, 189 (N.D.N.Y. 2019).  There was no conflict applying New York's Anti-SLAPP law in *Max* or *Pinney* because the plaintiffs did not seek to subvert the federal rules; instead, the plaintiffs sought to apply a state law to a state complaint with the federal

court sitting only in diversity.  Here, however, Dot.com Plaintiffs seek to subvert the federal rules by applying a heightened, state-law pleading standard to a voluntarily dismissed federal complaint.

So Dot.com Plaintiffs' claim suffers from the same defect as the counterclaims asserted in *Carroll* and *National Academy*.  The claim's status as a standalone suit does not save it; counterclaims are simply affirmative claims asserted by a defendant, and there is no reason why asserting the same claim in a separate action would mitigate the conflict between that claim and the Federal Rules.  Just like the counterclaims in *Carroll* and *National Academy*, Dot.com Plaintiffs' claim here would retroactively and impermissibly heighten the burden that Cassava needed to meet in the Defamation Action.

Dot.com Plaintiffs' attempt to end-run the federal rules, therefore, fails.  There is no meaningful difference between Dot.com Plaintiffs asserting New York's Anti-SLAPP provisions as a defense or counterclaim versus an independent cause of action.  Accordingly, this Court should follow the many other courts that have refused to apply § 70-a to federal complaints, and dismiss this case.

### B.    Dot.com Plaintiffs are not "defendants" under § 70-a.

Section 70-a creates a cause of action only for "a defendant in an action involving public petition and participation."  Not "a person," or "a party who is or has been a defendant," but "a defendant."  Therefore, only actual defendants can bring a § 70-a claim.  But Dot.com Plaintiffs are not defendants, so they have no claim.

The plain text of § 70-a limits claims to those who are defendants.  The starting point for statutory interpretation is "the plain text—the clearest indicator of legislative intent." *Bank of Am., N.A. v. Kessler*, 206 N.E.3d 1228, 1233 (N.Y. 2023) (quotation and citation omitted).  Section 70-a does not define defendant, so this Court should look to its "usual and commonly understood

meaning." *See IntegrateNYC, Inc. v. State*, 228 A.D.3d 152, 171-72 (N.Y. App. Div. 2024). A defendant is "a person or group against whom a criminal or civil action is brought: someone who is being sued or accused of committing a crime." *Defendant*, Meriam-Webster, https://www.merriam-webster.com/dictionary/defendant. In other words, a defendant is someone *currently* facing a lawsuit.

Dot.com Plaintiffs are not currently facing a lawsuit by Cassava, SLAPP or otherwise. Cassava voluntarily dismissed the Defamation Action on August 2, 2024, and the court endorsed that dismissal on August 5. Only after that first action was resolved did Dot.com Plaintiffs file the instant action. But they were no longer "someone who is being sued," so they were not defendants who could institute such an action.

*Pinney* bears this out. There, the plaintiff brought an Anti-SLAPP action in federal court based on a state complaint. *Pinney*, 387 F. Supp. 3d at 181. The plaintiff complained that a tortious interference claim that the defendant had voluntarily dismissed was a SLAPP claim and sought remedies under §§ 70-a and 76-a. *Id.* Among the reasons the Court granted defendant's motion to dismiss was that the plaintiff did not assert Anti-SLAPP as a counterclaim in state court. *Id.* at 189. The Court held that such a procedure of bringing a separate lawsuit did not adhere to the purposes of the Anti-SLAPP statute. *Id.* The same is true here. Bringing a separate lawsuit *after* litigation is over does not adhere to the purposes of the Anti-SLAPP statute: preventing damages and litigation costs for those facing meritless lawsuits. *See Senate Bill S52A,* The New York State Senate, https://www.nysenate.gov/legislation/bills/2019/S52.

If the New York legislature wanted to expand those protected by Anti-SLAPP to include those who have *previously* been defendants, they could have used language making that clear. After all, this Court must assume "the Legislature did not deliberately place a phrase in the statute

which was intended to serve no purpose." *Rodriguez v. Perales*, 657 N.E.2d 247, 249 (N.Y. App. Div. 1995). And here, the legislature deliberately chose the word "defendant." They could have said "person" or even "a party who is or has been a defendant" or otherwise made it clear that this law applied to those who were not currently defendants. Yet, every state Anti-SLAPP statute currently in effect permits only "defendants" to bring a claim under the statute. Accordingly, Cassava's counsel has found no cases in any jurisdiction where a party was allowed to bring an affirmative Anti-SLAPP claim ***after*** the alleged SLAPP suit had ended. *See Pinney*, 387 F. Supp. 3d at 189. Dot.com Plaintiffs should not be the first.

### C.    Dot.com Plaintiffs have not and cannot allege that the Defamation Action lacked a substantial basis in law and fact.

Even if this Court believes—as a matter of first impression—that Dot.com Plaintiffs can avoid a conflict with Federal Rules by framing their Anti-SLAPP claim as an independent affirmative claim, and even if this Court believes—despite *Pinney*—that Dot.com Plaintiffs do not have to currently be defendants in a SLAPP suit to maintain a claim, Dot.com Plaintiffs' claims still fail. Dot.com Plaintiffs' Count I fails unless they show that the Defamation Action lacked any substantial basis in law and fact. N.Y. Civ. Rights Law § 70-a. "[S]ubstantial basis" means "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." *Reeves v. Associated Newspapers, Ltd.*, No. 154855/20, 2024 WL 3892069, at *1 (N.Y. App. Div. Aug. 22, 2024) (citation omitted). This Court's memorandum opinion on the Defamation Action demonstrates Cassava's substantial basis in law because the Court found hundreds of Dot.com Plaintiffs' statements defamatory. No allegations—conclusory, irrelevant, or otherwise—change that core fact.

***First***, Dot.com Plaintiffs cannot show that Cassava lacked a substantial basis in law to allege Dot.com Plaintiffs defamed it. Contrary to the assertions in paragraph 26, the district court

11

held that 315 of the Dot.com Plaintiffs' statements were capable of a defamatory meaning. The FAC, tellingly, ignores this part of the district court's holding. Cassava could not have lacked a substantial basis in law for its claims when the district court agreed that Dot.com Plaintiffs' statements—at least at the motion to dismiss stage—were actionable and defamatory.

Further, the district court explicitly stated that it could not find Cassava's claims regarding those 315 statements were futile. *Cassava Scis., Inc.*, 2024 WL 1347362, at *29. The district court allowed Cassava to replead its allegations regarding those statements to allege additional context to prove actual malice. *Id.* If the district court believed Cassava had absolutely no basis to meet the actual malice bar, it could have and would have said so. Instead, it stated that it "cannot conclude that it would be futile for Plaintiff to replead its allegations of actual malice." *Id.*

**Second**, Dot.com Plaintiffs cannot show that Cassava's claims lacked a substantial basis in fact. The thrust of the at-issue statements was that Cassava itself was a fraud. *Id.* at *18. Cassava knows that these allegations were false because it knows it is not a fraud. No allegations in the Complaint can show otherwise.

Indeed, certain allegations in the Defamation Action actually demonstrate Cassava was *not* a fraud. The Defamation Action contained allegations that (1) Cassava made public filings with the SEC demonstrating that it did not engage in any wrongdoing, *e.g.*, Defamation FAC ¶¶ 166–67; (2) Cassava's executives did not receive cash payments tied to Cassava's stock, *e.g. id.* ¶ 166; (3) independent third parties reviewed Cassava's data prior to publication, *e.g. id.* ¶¶ 182–83. A fraudulent company does not open itself up to the public so willingly nor curtail its executives' profits. And filing a lawsuit defending itself against defamatory claims necessarily exposed Cassava to more scrutiny, which is also not something a fraudulent company would willing do. In

12

short, nothing in the FAC demonstrates that Cassava lacked a substantial basis for believing—correctly—that it was and is not a fraud.

Further, nothing in Dr. Wang's indictment supports an inference that the Defamation Action lacked a substantial basis in fact. The indictment is "no more than an accusation" — not a finding of fact. *United States v. Filippatos*, 307 F. Supp. 564, 565 (S.D.N.Y. 1969). It has "no evidentiary value" whatsoever. *Id.* Further, the indictment against Dr. Wang does not allege that Cassava itself engaged in any fraudulent activity. The allegations against Dr. Wang do not translate to allegations of fraud against Cassava of the kind Dot.com Plaintiffs made. *See* SAC ¶ 310. In other words, Dr. Wang's indictment does nothing to create a reasonable inference that Cassava itself committed fraud, and that Cassava lacked a substantial basis for contending otherwise.

Without sufficient facts—either in the Complaint or in reality—Count I cannot stand.

## II. Dot.com Plaintiffs' malicious-prosecution claim fails because Dot.com Plaintiffs fail to adequately plead its elements.

Count II fails because the Complaint does not adequately allege that the Defamation Action was brought without probable cause, with malice, or caused special injury to any Plaintiff. To allege malicious prosecution, the Dot.com Plaintiffs need facts to infer: "(1) the commencement of a judicial proceeding against plaintiff; (2) by or at the instance of defendant; (3) without probable cause; (4) with malice; (5) which has terminated in favor of the plaintiff; (6) to his injury. … Where, as here, the [underlying] proceeding is civil in nature, plaintiff must also show (7) that he suffered interference with his person or property from some provisional remedy." *Levitin v. Miller*, No. 92 CIV. 0520 (KMW), 1994 WL 376078, at *3 (S.D.N.Y. July 15, 1994). Here, construing all facts in their favor, Dot.com Plaintiffs cannot show a lack of probable cause, existence of malice, or special injury.

13

A.      **Cassava had probable cause to bring the underlying Defamation Action.**

Cassava brought the Defamation Action because it had plausible merit.  Probable cause consists of "such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Fink v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 755 (N.Y. App. Div. 2005).  "Because 'obviously less in the way of grounds for belief will be required to justify a reasonable [person] in bringing a civil rather than a criminal suit,' when the underlying action is civil in nature the want of probable cause must be patent." *Id.* (citation omitted).  Indeed, if "at least some causes of action in the underlying complaint had *potential* merit," then a malicious prosecution claim fails.  *Pirro v. Bd. of Trustees of Vill. of Groton*, 203 A.D.3d 1263, 1265 (N.Y. App. Div. 2022) (citation omitted).

The Defamation Action clearly had potential merit, which is enough to establish probable cause.  When defendants in a malicious prosecution suit receive even some favorable holdings in their underlying suit, "probable cause [is] not obviously lacking."  *See Levitin*, 1994 WL 376078, at *5.  The district court here did, in fact, reach holdings in favor of Cassava in the Defamation Action, demonstrating probable cause.  *Fink* shows why.  In *Fink v. Shawangunk*, the district court made one holding in favor of Shawangunk (defendant in malicious-prosecution claim, plaintiff in the underlying proceedings), though ultimately finding for Fink on most issues. 15 A.D.3d at 754– 55.  When Fink subsequently filed a malicious prosecution claim, that one holding for Shawangunk gave rise to a presumption of probable cause.  *Id.*  The court recognized that "defendant's arguments, although ultimately unsuccessful, were not frivolous or unsupported," and dismissed the malicious prosecution claim.  *Fink*, 15 A.D.3d at 755.

The same is true here.  In the Defamation Action, the district court found hundreds of statements by Dot.com Plaintiffs to be both actionable and defamatory, judicially recognizing the

14

merit of Cassava's claims in the underlying cause. *See, e.g., Cassava Scis., Inc.*, 2024 WL 1347362, at *17 ("the statements regarding the Open Label Study are more ambiguous and are therefore actionable"); *Id.* at *18 ("statements about the Open Label Study are defamatory."); *Id.* at *20 ("The Court concludes that [Cassava] has adequately pleaded that some of the tweets were defamatory."). Indeed, the Court held that "The Defamatory Tweets either directly accused Plaintiff of scientific misconduct, stated that simufilam was not effective, or heavily intimated that Plaintiff was engaged in fraudulent behavior." *Id.* at *21. This partial holding for Cassava, like the partial holding in Fink, is enough to establish probable cause.

What's more, the district court itself held that Cassava's claims had potential merit. The district court allowed Cassava to replead its claims as to those tweets because it could not "conclude that it would be futile for [Cassava] to replead its allegations of actual malice." *Id.* at *29. In other words, the district court believed that Cassava may be able to cure any perceived deficiencies in actual malice allegations to overcome a motion to dismiss. Holding that a claim is not futile is the same as saying it has potential merit. The district court never had a chance to rule on Cassava's supplemental malice allegations, since Cassava voluntarily dismissed its claims. So, the effective holdings in the Defamation Action are those regarding Cassava's First Amended Complaint, wherein the court found that Cassava's claims had potential merit.

### B.  Cassava brought the Defamation Action without malice.

Dot.com Plaintiffs do not and cannot plead evidence of any improper motive for the Defamation Action, as required to make a showing of malice. Dot.com Plaintiffs must show that Cassava commenced the Defamation Action "due to a wrong or improper motive, something other than a desire to see the ends of justice served" to show malice for malicious prosecution. *Du Chateau v. Metro-N. Commuter R. Co.*, 253 A.D.2d 128, 132, (N.Y. App. Div. 1999) (citation

omitted).   Instead, Dot.com Plaintiffs allege motive in two ways, both insufficient: legal conclusions and *non sequitur* facts that cannot constitute improper motive as matter of law.

Dot.com Plaintiffs assert bald legal conclusions in their FAC to establish malice. "Conclusory or speculative allegations are insufficient: plaintiff must *specifically* allege that the named defendants acted with malice." *Nieves v. Cty. of Monroe*, 761 F. Supp. 2d 48, 52 (W.D.N.Y. 2011).   Dot.com Plaintiffs, however, merely repeat common law standards in their allegations that the Defamation Action was commenced "for the sole purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting the free exercise of speech, petition or association rights," or "in retaliation against Plaintiffs for their public criticism."   [FAC ¶¶ 190, 191.] "Unsubstantiated and conclusory allegations of malice [are] insufficient to sustain" a claim for malicious prosecution.  *Rubin v. Lutfy*, No. 110510/09, 2009 WL 4878425, at *8 (N.Y. Sup. Ct. 2009).  Dot.com Plaintiffs can lob conclusions at this Court, but those conclusions do not sustain or support their claims of improper motive at this stage.

In the face of non-existent malice allegations, *McGee v. Dunn* is instructive.  940 F. Supp. 2d 93 (S.D.N.Y. 2013).  In advancing a malicious prosecution claim, the *McGee* plaintiff alleged that the defendant had used varying dates to describe when a phone call had occurred.  *Id.* at 102. Because the defendant was inconsistent when giving a date, plaintiff argued, the defendant was likely to lie, be inconsistent, or speak "without regard for the truth or falsity" when talking to police about a related legal proceeding.  *Id.* at 102.  This Court held that such allegations do "not show, nor imply that [the defendant] acted with malice," and granted the defendant's motion to dismiss. *Id.*

Here, Dot.com Plaintiffs make similarly nonsensical allegations, hoping to create an inference or illusion of improper motive.  They assert a string of circumstances about which they

16

are unhappy and equate that with "malice" as defined by New York law.  As in *McGee*, Plaintiffs ask the Court to make an insurmountable logical leap to connect Dot.com Plaintiffs' factual allegations here with malice.  Improper motive is not shown nor implied by proper service, market standard incentive compensation plans, or base level self-respect.  Dot.com Plaintiffs' illogical allegations cannot show that any defendants acted with malice, and neither can their legal conclusions, and so Count II must fail.

### C.    Defendants caused no special injuries to Dot.com Plaintiffs.

Heilbut and Brodkin allege no special injuries, and Milioris alleges an injury that Defendants could not have caused.  Malicious prosecution claims based on a civil proceeding must allege a special injury.  *Dudick v. Gulyas*, 277 A.D.2d 686, 688 (N.Y. App. Div. 2000).  "[T]he role that the special injury requirement fulfills is that of a buffer to insure against retaliatory malicious prosecution claims and unending litigation."  *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205, 711 N.E.2d 626, 631 (1999).  "Put another way, what is 'special' about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit."  *Id.*

Heilbut and Brodkin's only special injury allegations are conclusory statements about the physical, psychological and financial demands of defending a credible lawsuit.  These do not count.  The FAC alleges that Brodkin suffered reputational and emotional harm, and conclusorily states that he "suffered a sharp reduction in his income … and lost …. investment opportunities." [FAC ¶ 182.]  Brodkin does not allege any facts to support this "sharp reduction" or lost "investment opportunities."  Without such facts, his assertions are mere legal conclusions that this Court need not accept.  And worse, the injuries Brodkin conclusory alleges are not the right kinds of injuries.  Special injuries must be a "wrongful interference with [his] person or property" that

do not merely amount to "the physical, psychological or financial demands of defending a lawsuit." *See Reszka v. Collins*, 136 A.D.3d 1299, 1301 (N.Y. App. Div. 2016) (citations omitted). In *Reszka,* the plaintiff alleged that he experienced some financial harms and reputational harms, none of which "involved wrongful interference" but only amounted to normal costs of defending a lawsuit. *Id.* (citation omitted). Similarly, Brodkin's unsubstantiated, vague, "reduction in income" allegation does not imply any wrongful interference by Defendants. With alleged reputational and emotional harm, the FAC merely alleges that Brodkin experienced the psychological demands of defending a lawsuit. These demands are not special injuries.

Heilbut makes allegations of three injuries, which are merely descriptions of the difficulty of defending against a lawsuit, and were not caused by Defendants. The FAC alleges that Heilbut lost one client (the FAC estimates about 24 hours of work *across two years*), experienced "the financial pressures of the Defamation Action, the associated emotional and mental distractions," and had difficulty launching a new business that was "highly dependent on discretion and confidentiality." [FAC ¶ 180.] ***First***, "the loss of one client along with vague allegations of reputational loss, … are not sufficient [to allege special injury]." *Rubin*, 2009 WL 4878425, at *9 (quoting *Engel*, 711 N.E.2d at 632). ***Second***, Heilbut admits that his financial, emotional and mental "distractions" were just those "associated" with the Defamation Action, amounting to the typical demands of defending against a lawsuit. [FAC ¶ 181.] ***Lastly***, this Court listed Heilbut as the author of close to 100 defamatory, public tweets in its decision on the Defamation Action. *Cassava Scis., Inc.*, 2024 WL 1347362, at Exhibit A. Special injury must be caused by the defendant. *See Kaye v. Trump*, 58 A.D.3d 579, 580 (N.Y. App. Div. 2009). Dot.com Plaintiffs cannot plausibly plead that the *Defendants* harmed Heilbut's reputation for "discretion and confidentiality" when Heilbut himself was creating his online presence and publishing a litany of

18

defamatory tweets.  The types of "injuries" Heilbut alleges are indicative of the time and effort it takes to defend against a credible lawsuit and the natural consequences of his own publications, and were not caused by Defendants.  *Rubin*, 2009 WL 4878425, at *9.

And for Milioris, the FAC conclusorily alleges that the Defamation Action lost him a job opportunity, an outcome that Cassava and the individual defendants did not cause.  A special injury must be alleged alongside causation.  *Kaye*, 58 A.D.3d at 580.  In *Kaye*, the plaintiff brought a malicious-prosecution claim against a former condominium-board member.  *Id.*  The plaintiff alleged that she had to move out of her condo, a special injury, because the former condominium-board member filed two civil actions against her, made a criminal complaint, and made rude remarks.  *Id.*  The Court dismissed her complaint, because she "allege[d] conclusorily that she was forced by defendants' 'acts' to sell her condominium unit…she assert[ed] no facts that would establish that the two civil actions or the filing of a criminal complaint, or the rude remarks, *caused* her to move."  *Id.*  The Court held that Kaye did not establish that those acts *caused* her injury; she made a decision based on circumstances.  *Id.*  Here, Milioris conclusorily alleges that he was fired because his Greek employer was concerned "about the attention and bad publicity caused by the Defamation Action."  [FAC ¶ 176.]  But Defendants did not force Milioris' employer to do anything.  Milioris was a named defendant in a lawsuit that was the subject of much online discussion [*see id.*]—but the lawsuit did not cause his employer to fire him; his employer made a decision based on circumstances.  Defendants did not interfere with Milioris' employment.

The FAC alleges no special injuries to Heilbut and Brodkin and alleges an injury to Milioris that the Defendants could not have caused, so Dot.com Plaintiffs' Count II fails.

III.    **Dot.com Plaintiffs' conspiracy claim ignores binding legal doctrines and is inadequately pled.**

Dot.com Plaintiffs cannot allege civil conspiracy.  Conspiracy is not an independent substantive tort; conspiracy may be alleged only "to connect the actions of separate defendants with an otherwise actionable tort." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (citation omitted).  A civil-conspiracy claim fails unless plaintiffs "demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Id.*

Dot.com Plaintiffs' claim fails because (1) the intracorporate-conspiracy doctrine bars their claim, (2) Dot.com Plaintiffs fail to allege a common scheme or plan, and (3) Dot.com Plaintiffs fail to allege any underlying tort.

A.    **A corporation cannot conspire with its own agents acting under the scope of their employment.**

A claim alleging "a conspiracy to commit fraud, entered into by [a corporation] and two of its employees…is barred by the intracorporate-conspiracy doctrine, under which 'the officers, employees, and agents of the same corporate entity acting within their scope of employment, along with the corporate entity itself, are considered a single entity and are legally incapable of conspiring with each other.'" *FiDi Creatives LLC v. Skapos LLC*, No. 654685/2023, 2024 WL 1647284,  at *6 (N.Y. Sup. Ct. Apr. 12, 2024), (quoting *Savarese v City of New York*, 547 F Supp 3d 305, 343 (S.D.N.Y 2021)).[2]  Dot.com Plaintiffs themselves admit that Cassava's CEO and

---

[2] In *Savarese,* this Court did not apply the intracorporate-conspiracy doctrine because it found that the Defendants were not acting within the scope of their employment.  *Savarese v City of New York*, 547 F Supp 3d 305, 344 (S.D.N.Y 2021).  The defendants were a group of police officers, one traffic agent, and the city, who all allegedly conspired to arrest the plaintiff.  *Id.*  The Court

senior vice president were "orchestrating and implementing *the company's PR campaign* . . . and . . . overseeing *the company's overall litigation strategy*." [FAC ¶ 197 (emphasis added).] The FAC confirms that the individual Defendants were working alongside and with the approval of Cassava, the corporation that employed them. Thus, the intracorporate-conspiracy doctrine applies, and a claim of civil conspiracy must fail. *See Fidi Creatives LLC*, 2024 WL 1647284, at *6 (dismissing conspiracy claim based on intracorporate-conspiracy doctrine); *Dowd v. DeMarco*, 314 F. Supp. 3d 576, 587–88 (S.D.N.Y. 2018) (same); *Murphy v. City of Stamford*, 634 F. App'x 804 (2d Cir. 2015) (same); *Ericson v. Syracuse Univ.*, 35 F. Supp. 2d 326, 329 (S.D.N.Y. 1999) (same).

### B.    Dot.com Plaintiffs fail to allege any common scheme or plan.

Dot.com Plaintiffs must allege the first element of civil conspiracy, "an agreement between two or more parties." *FiDi Creatives LLC*, 2024 WL 1647284, at *6. Instead, Dot.com Plaintiffs make "conclusory, vague [and] general allegations that the defendants have engaged in a conspiracy." *Fisk*, 424 F. Supp. 2d at 677. This Court deemed such allegations insufficient in *Fisk*. The plaintiff in *Fisk* raised vague allegations that a scheme existed but made no concrete mention of the defendant's involvement. *Id.* Here, Dot.com Plaintiffs merely allege the existence of "Defendants' concerted and coordinated PR campaign," and a myriad of actions taken by Defendants to protect the reputation of Cassava. [FAC, ¶ 208.] This "PR campaign" is not an agreement to use the Defamation Action improperly; instead, it is what it says it is: a PR campaign. Accordingly, the FAC alleges no facts to support a common scheme.

---

held that the traffic agent was outside the scope of his employment because making arrests is in the job description of a police officer, but not a traffic agent. *Id.* But here, Defendants are two agents of a corporation, the CEO and senior vice president, and the corporation itself, who allegedly conspired to file the Defamation Action against Plaintiffs. [FAC ¶¶ 206-214.]

**C.** **Dot.com Plaintiffs' related claims are insufficient.**

Lastly, as discussed above, Dot.com Plaintiffs fail to state claims for Count I, violation of New York Civil Law 70-a, and Count II, and malicious prosecution.  Thus, Dot.com Plaintiffs fail to prove any underlying tort, and their claim of conspiracy must fail.  *See Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 244 (S.D.N.Y.) ("If a conspiracy claim does not have an underlying actionable tort, it must be dismissed.").

## <u>CONCLUSION</u>

Cassava respectfully requests that the Court grant its Motion and dismiss this case with prejudice.

Dated: January 9, 2024

Respectfully submitted,

CASSAVA SCIENCES, INC.
DR. LINDSAY BURNS
REMI BARBIER


By their attorneys,

*/s/ J. Erik Connolly*
J. Erik Connolly (*pro hac vice*)
   EConnolly@beneschlaw.com
   Illinois ARDC No. 6269558

Caitlin Kovacs (*pro hac vice*)
   ckovacs@beneschlaw.com
   Illinois ARDC No. 4180162

**BENESCH,  FRIEDLANDER,  COPLAN  &
ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

Michael B. Silverstein (*pro hac vice*)
   msilverstein@beneschlaw.com
   Ohio Bar No. 98036

**BENESCH,  FRIEDLANDER,  COPLAN  &
ARONOFF LLP**
41 South High Street, Suite 2600
Columbus, OH 43215
Telephone: (614) 223-9300

Michael Vatis
   mvatis@beneschlaw.com
   NY Reg. No. 2258655

**BENESCH,  FRIEDLANDER,  COPLAN  &
ARONOFF LLP**
1155 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (646) 593-7050

23

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Hon. J. J. L. Rochon's Individual Rule of Practice 3(c), I certify that the foregoing Memorandum in Support of Motion to Dismiss was prepared in 12-point font, including footnotes, and contains 6,809 words, excluding the parts of the document that are exempted by Individual Rule 3(c).

I declare under penalty of perjury that the foregoing is true and correct.


Dated: January 9, 2024                      */s/ J. Erik Connolly*

                                           J. Erik Connolly (*pro hac vice*)
                                           EConnolly@beneschlaw.com
                                           Illinois ARDC No. 6269558

## <u>CERTIFICATE OF SERVICE</u>

I, Erik Connolly, hereby certify that a copy of the foregoing Memorandum in Support of Motion to Dismiss, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 9, 2024.


Dated: January 9, 2024                              */s/ J. Erik Connolly*