January 23, 2025

<u>**Via ECF**</u>

Honorable Jennifer L. Rochon
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

   Re: *Heilbut, et al. v. Cassava, et al.*, Case No. 1:24-cv-05948-JLR

Dear Judge Rochon:

  We write jointly on behalf of plaintiffs and intervenor-plaintiffs ("Plaintiffs") in opposition to Defendants' motion to stay. (Dkt. 47.) Defendants fail to show "good cause" for a stay. *See Morales v. Next Stop 2006, Inc.*, 2022 WL 15523370 (S.D.N.Y. Oct. 27, 2022).

    **The motions to dismiss are baseless.** (*See* Dkts. 43-46.)

  <u>Anti-SLAPP</u>: Defendants misapply the *Erie* doctrine to argue that "state Anti-SLAPP statutes cannot and do not apply to complaints filed in federal court." (Dkt. 47 at 1.) Plaintiffs' claims rely on a *substantive* state law: Section 70-a of New York's Civil Rights Law, which provides a statutory right of action to victims of SLAPP suits. (*See* Dkts. 9 and 40, Counts One.) As Judge Oetken recently held, Section 70-a "is not procedural," and *Erie* does not bar its application in federal court. *Bobulinski v. Tarlov*, 2024 WL 4893277, at *12 (S.D.N.Y. Nov. 26, 2024) (citing *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014)). Judges Koeltl and Caproni have reached the same conclusion. *See Watson v. NY Doe 1*, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) (denying motion to dismiss anti-SLAPP claims); *Max v. Lissner*, 2023 WL 2346365, at *9 (S.D.N.Y. Mar. 3, 2023) ("Plaintiff can bring her anti-SLAPP claim in federal court"). The weight of authority is clear: Plaintiffs' anti-SLAPP claims are allowed in this Court. Even Defendants' own cases recognize as much. *See Dynamic Energy Sols., LLC v. Pinney*, 387 F. Supp. 3d 176, 184 n.1 (N.D.N.Y. 2019) ("independent cause of action in federal court . . . is permitted by the statute").[1]

  Defendants also argue that, to the extent anti-SLAPP claims are allowed in federal court, such claims can survive only where the underlying defamation claim was asserted in state court. (Dkt. 44 at 8-9.) But this limitation would encourage abusive litigants to immunize themselves from anti-SLAPP liability by filing in federal court. Such an "inequitable outcome is exactly what *Erie* and its progeny sought to avoid." *Bobulinski*, 2024 WL 4893277, at *14. Indeed, Defendants' argument is further refuted by the cases that sustain anti-SLAPP claims based on defamation claims filed in federal court. *See, e.g., Watson*, 2023 WL 6540662, at *3; *Nat'l

---

[1] In *Max v. Lissner*, Judge Caproni addressed the cases relied on by Defendants (*see* Dkt. 44 at 6-9), including her own earlier decision in *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408 (S.D.N.Y. 2021): "those cases do not stand for the proposition that the federal courts cannot entertain a claim that a defamation plaintiff violated the substantive state law." 2023 WL 2346365, at *8. Indeed, Defendants' cases follow *La Liberte v. Reid*, which precludes only the application of *procedural* provisions of anti-SLAPP laws so as to conflict with federal procedure. *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020).

*Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 420 (S.D.N.Y. 2019); *Goldman v. Reddington*, 2021 WL 4099462, at *4-5 (E.D.N.Y. Sept. 9, 2021).

Next, Defendants argue that Plaintiffs' claims are barred because Plaintiffs were no longer defendants when they filed their claims. (Dkt. 44 at 9-11.) This newly imagined standing requirement defies common sense and is without precedential support. *See, e.g., Buhl v. Kesner*, 2024 WL 4026129, at *2 (N.Y. Sup. Ct. Sept. 3, 2024) (awarding fees on Section 70-a claim brought *after* dismissal of underlying federal claim).

Defendants also claim that Plaintiffs failed to adequately plead their anti-SLAPP claims. (Dkt. 44 at 11-13; Dkt. 46 at 11-15.) In fact, the dismissal of the defamation claims shows that the claims were baseless under Section 70-a. *See Bobulinski*, 2024 WL 4893277, at *13 ("Logically, a complaint that fails to state a claim is, *a fortiori*, 'without a *substantial* basis in fact and law'"); *Aristocrat Plastic Surgery P.C. v. Silva*, 219 N.Y.S.3d 336, 337 (1st Dep't 2024) (same). And, the complaints robustly plead the baseless nature of the Defamation Action, including Defendants' infirm pleadings, disregard for defamation law, gratuitous tactics, and ulterior motives. (*See, e.g.,* Dkt. 9, ¶¶ 51-82, 115-171.)

Finally, Defendants argue that the Defamation Action must have had a "substantial basis" because Judge Woods identified a subset of statements for which Defendants adequately pled a defamatory meaning and dismissed those claims without prejudice. (Dkt. 44 at 11-13.) However, Judge Woods still dismissed *all* claims because Defendants failed to plead actual malice. (Dkt. 9 ¶¶ 62-72.) It is telling that the best Defendants can muster is that they pled *some* of the essential elements for *some* of their claims as to *some* Plaintiffs—as if the lack of an essential element were a mere technicality. In reality, a "claim" without a necessary element is no claim at all.[2]

Malicious Prosecution: *First*, on "probable cause," Defendants grossly misconstrue Judge Woods's dismissal of all claims as a "provisional holding [] in Cassava's favor." (Dkt. 47 at 2.) (This defense fails for the same reason it fails as a defense to the anti-SLAPP claim: probable cause for *some* but not *all* essential elements is not probable cause for the claim.) *Second*, Defendants argue that Plaintiffs failed to plead "malice." (Dkt. 44 at 15-16.) But the complaints extensively detail Defendants' bad-faith prosecution of the Defamation Action, in retaliation against Plaintiffs' criticism, using threats and gratuitous tactics (Dkt. 9 ¶¶ 43-114), while knowing that the "defamatory" statements could never be proven false because they lacked the data and records necessary to refute them (*id.* ¶¶ 115-171). These allegations more than suffice. *See Thomas v. G2 FMV, LLC*, 48 N.Y.S.3d 358, 360 (1st Dep't 2017) (sustaining claims against company, CEO, and GC). *Third*, Defendants claim that Plaintiffs failed to plead special injuries. (Dkt. 44 at 17-20; Dkt. 46 at 19-22.) But the complaints contain specific individualized allegations of the concrete harms that each Plaintiff suffered, including, for example, Dr. Milioris's loss of an executed employment contract (*see* Dkt. 9 ¶ 176; *see also id.*, ¶¶ 172-175, 177-182; Dkt. 40 ¶¶ 49-58). *See Thomas,* 48 N.Y.S.3d at 361; *see also Sapienza v. Notaro*, 102 N.Y.S.3d 291, 293 (2d Dep't 2019) (non-renewal of employment was sufficient).

---

[2] Defendants ignore the holdings by Judge Wang and Judge Woods that Cassava's pleadings violated Rule 8. (Dkt. 9, ¶¶ 60-72.) Nor do they mention that Judge Woods "emphasize[d]" that the list of statements with a plausible defamatory meaning was provisional, due to the failure to plead contextual allegations necessary to assess whether they were actionable. *Cassava Scis., Inc. v. Bredt*, 2024 WL 1347362, at *21, n. 42 (S.D.N.Y. Mar. 28, 2024).

Conspiracy: Defendants argue that the "intracorporate conspiracy doctrine" bars Plaintiffs' conspiracy claims. (Dkt. 47 at 2.) However, there is an exception where an individual defendant's "involvement in the alleged conspiracy was plausibly based on personal interests." *Reich v. Lopez*, 38 F. Supp. 3d 436, 465 (S.D.N.Y. 2014); *see also Kriss v. Bayrock Grp. LLC*, 2017 WL 1901966, at *3 (S.D.N.Y. May 8, 2017). Here, the individual defendants, spouses Barbier and Dr. Burns, had distinct personal interests, including the protection of Dr. Burns's reputation as a scientist and collaborator of Dr. Wang, and the concealment of their own misconduct at issue in the securities action and government and internal investigations. (*See* Dkt. 9 ¶¶ 210-212.) Their terminations and bans by the SEC on serving as officers (*id.* ¶ 3) further show that each had personal interests separate from the company.

**Defendants' discovery objections are premature and overblown.** Defendants object to Plaintiffs' requests for documents produced to the SEC or DOJ and emphasize the burden of conducting a "close review of potentially privileged documents." (Dkt. 47 at 2-3.) But Plaintiffs singled out such materials precisely because they were already reviewed for privilege (or are no longer privileged). In fact, Cassava's same counsel told the Court it would have no problem reproducing these documents.[3] Nor does the *potential* for privilege disputes warrant a stay, particularly in light of Plaintiffs' reasonable document requests, which focus on the supposed factual bases for the Defamation Action. (*See* Declaration of Isaac B. Zaur ("Zaur Decl."), Exs. A-B.) Defendants' objection to the potential deposition of Cassava's general counsel is equally misplaced.[4] *See Dickerson v. Novartis Corp.*, 2016 WL 9560056, at *4 (S.D.N.Y. Apr. 11, 2016) ("speculative assertion that 'there will likely be discovery disputes'" is not grounds for a stay).

**This action would not be subject to an automatic stay in state court.** Defendants misconstrue the text and purpose of the law. (Dkt. 47 at 3.) C.P.L.R. 3211(g) provides for a stay where dismissal of an action *subject to the anti-SLAPP law* is sought (*i.e.*, "an action involving public petition and participation" that lacks a "substantial basis in fact and law"). In other words, it shields *victims* of SLAPP suits from discovery upon a prima facie (and unrebutted) showing that the suit is indeed a SLAPP suit. There is no precedent for Defendants' contention that *perpetrators* of SLAPP suits are entitled to the same protections from discovery.

**A stay would prejudice Plaintiffs.** Cassava has been in freefall since November 2024, when the Phase 3 trials for simufilam failed: the stock plummeted; the company laid off a third of its staff; and investor lawsuits have multiplied. Real preservation concerns also exist, particularly in light of SEC and DOJ findings that Defendants and Dr. Wang failed to preserve research data or records (*see* Dkt. 9 ¶ 136), and investors' assertions about "Cassava's deletion of crucial evidence such as Burn's unblinding email to Wang" (*In re Cassava*, 21-cv-00751 (W.D. Tex.), Dkt. 257 at 2). Delaying the ultimate outcome threatens to seriously prejudice Plaintiffs.

For all these reasons, the Court should deny Defendants' motion for a stay.

---

[3] Zaur Decl., Ex. C [3/8/23 CMC Tr. 26:13-19]: "if you're asking me for the documents that have been provided to regulatory authorities, I absolutely can provide that information. That's going to be part of my document production already. If you're asking me for things that went to a DOJ, I'm absolutely giving you that already because I'm providing it, anyways, as part of my regular production."

[4] Defendants assert that Christopher Cook "was hired after the Defamation Action commenced" (Dkt. 47 at 2). But Defendants announced his hiring on October 27, 2022 (Zaur Decl., Ex. D) and commenced the Defamation Action on November 2, 2022. Regardless, Section 70-a applies to "commenced or *continued*" SLAPP actions.

Respectfully submitted,

| | |
|---|---|
| CLARICK GUERON REISBAUM LLP | GOODWIN PROCTER LLP |
| By: /s/ Isaac B. Zaur | By: /s/ Jeffrey A. Simes |
| Isaac B. Zaur | Jeffrey A. Simes |
| David Kumagai | Meghan K. Spillane |
| Amanda Wong | 620 Eighth Avenue |
| 220 Fifth Avenue, 14th Floor | New York, NY 10018 |
| New York, NY 10001 | 212-813-8800 |
| 212-633-4310 | jsimes@goodwinlaw.com |
| izaur@cgr-law.com | mspillane@goodwinlaw.com |
| dkumagai@cgr-law.com | |
| awong@cgr-law.com | *Attorneys for Intervenor-Plaintiffs Dr. David Bredt and Dr. Geoffrey Pitt* |
| LAW OFFICE OF DANIEL F. WACHTELL | |
| By: /s/ Daniel F. Wachtell | |
| Daniel F. Wachtell | |
| 90 Broad Street, 23rd Floor | |
| New York, New York 10004 | |
| 917-667-6954 | |
| dan@danwachtell.com | |
| *Attorneys for Plaintiffs Adrian Heilbut, Jesse Brodkin, and Enea Milioris* | |