UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADRIAN HEILBUT, JESSE BRODKIN, and
ENEA MILIORIS,

        Plaintiffs,

DAVID BREDT and GEOFFREY PITT,

        Intervenor-Plaintiffs,

        v.

CASSAVA SCIENCES, INC., REMI BARBIER,
and LINDSAY BURNS,

        Defendants.

Case No. 1:24-cv-05948-JLR

---

### PLAINTIFFS' AND INTERVENOR-PLAINTIFFS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT AND COMPLAINT-IN-INTERVENTION

CLARICK GUERON REISBAUM LLP
Isaac B. Zaur
David Kumagai
Amanda J. Wong
41 Madison Avenue, 23rd Floor
New York, NY 10010
212-633-4310
izaur@cgr-law.com
dkumagai@cgr-law.com
awong@cgr-law.com

LAW OFFICE OF DANIEL F. WACHTELL
Daniel F. Wachtell
90 Broad Street, 23rd Floor
New York, New York 10004
917-667-6954
dan@danwachtell.com

*Attorneys for Plaintiffs Dr. Adrian Heilbut, Dr.
Jesse Brodkin, and Dr. Enea Milioris*

GOODWIN PROCTER LLP
Jeffrey A. Simes
Meghan K. Spillane
620 Eighth Avenue
New York, NY 10018
212-813-8800
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

*Attorneys for Intervenor-Plaintiffs
Dr. David Bredt and Dr. Geoffrey Pitt*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................ 3

    A.    Plaintiffs Expressed Well-Founded Concerns About Simufilam .......................... 3

    B.    Defendants Retaliated by Attacking Plaintiffs and Filing the Defamation Action .................................................................................................................... 4

    C.    The Defamation Action Succeeded in Punishing Plaintiffs and Suppressing Debate .................................................................................................................. 6

    D.    Defendants Pursued the Defamation Action in Bad Faith ..................................... 7

    E.    Plaintiffs State Claims for Relief ........................................................................ 8

ARGUMENT ..................................................................................................................... 8

I.    PLAINTIFFS' ANTI-SLAPP CLAIMS ARE ALLOWED IN FEDERAL COURT AND WELL PLED ........................................................................................ 9

    A.    Plaintiffs' Anti-SLAPP Claims Are Allowed in Federal Court ............................ 9

        a.    Legal Standard ......................................................................................... 10

        b.    No Federal Rule of Civil Procedure Answers the Questions Raised by Plaintiffs' Section 70-a Claims ........................................................... 10

        c.    Section 70-a Is Substantive and Its Application Furthers the Aims of *Erie* ...................................................................................................... 13

    B.    There Is No Requirement that the Underlying Claim Arise in State Court .......... 14

    C.    The Anti-SLAPP Law May Be Invoked by Plaintiffs ......................................... 15

    D.    Plaintiffs' Section 70-a Claims Are Well Pled .................................................... 17

II.    PLAINTIFFS STATE CLAIMS FOR MALICIOUS PROSECUTION .......................... 20

    A.    Plaintiffs Have Alleged that the Defamation Action Lacked Probable Cause ..... 21

    B.    Plaintiffs Have Alleged Malice ........................................................................... 23

    C.    Plaintiffs Have Alleged Special Injury ............................................................... 24

III.    PLAINTIFFS STATE CLAIMS FOR CIVIL CONSPIRACY ....................................... 26

CONCLUSION ................................................................................................................ 28

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                        **Page(s)**

*Adelson v. Harris*,
    774 F.3d 803 (2d Cir. 2014).................................................................9, 11, 13, 14

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975)...............................................................................................13

*Aristocrat Plastic Surgery P.C. v. Silva*,
    219 N.Y.S.3d 336 (1st Dep't 2024) .....................................................................17

*Bobulinski v. Tarlov*,
    24-cv-2349-JPO, 2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ................................... *passim*

*Buhl v. Kesner*,
    152548/2022, 2024 WL 4026129 (N.Y. Sup. Ct. Sept. 3, 2024)...........................16

*Cardoza v. City of New York*,
    29 N.Y.S.3d 330 (1st Dep't 2016) .......................................................................24

*Cassava Sciences, Inc. v. Bredt, et al.*,
    22-cv-09409-GHW-OTW (S.D.N.Y.) .................................................... *passim*

*Coritsidis v. Khal Bnei Torah of Mount Ivy*,
    22-cv-10502-CS, 2024 WL 37122 (S.D.N.Y. Jan. 3, 2024)..................................11

*Cornelio v. Connecticut*,
    32 F.4th 160 (2d Cir. 2022) ...................................................................................8

*Cotton v. Slone*,
    4 F.3d 176 (2d Cir.1993)......................................................................................13

*De Sole v. Knoedler Gallery, LLC*,
    137 F. Supp. 3d 387 (S.D.N.Y. 2015)..................................................................28

*Dudick v. Gulyas*,
    277 A.D.2d 686 (3d Dep't 2000) ..........................................................................24

*Dynamic Energy Sols., LLC v. Pinney*,
    387 F. Supp. 3d 176 (N.D.N.Y. 2019) ...........................................................12, 16

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)................................................................................... *passim*

*In re Eerie World Entm't., LLC*,
    00-cv-13708, 2006 WL 1288578 (S.D.N.Y. Bankr. Apr. 28, 2006) ...............25, 26

*Fat Brands Inc. v. Ramjeet,*
 75 F.4th 118 (2d Cir. 2023) ...................................................................9

*Fink v. Shawangunk Conservancy, Inc.,*
 790 N.Y.S.2d 249 (3d Dep't 2005)........................................................22

*Francis v. Kings Park Manor, Inc.,*
 992 F.3d 67 (2d Cir. 2021)......................................................................8

*Gasperini v. Ctr. for Humanities,*
 518 U.S. 415 (1996)..........................................................................10, 14

*Ginx, Inc. v. Soho All.,*
 720 F. Supp. 2d 342 (S.D.N.Y. 2010)...................................................11

*Goldman v. Reddington,*
 18-cv-3662-RPK, 2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021)...........15

*Gonzalez v. United States,*
 80 F.4th 183 (2d Cir. 2023) .............................................................13, 14

*Honzawa v. Honzawa,*
 701 N.Y.S.2d 411 (1st Dep't 2000) .......................................................21

*Isaly v. Garde,*
 213 N.Y.S.3d 852 (N.Y. Sup. Ct. 2024) .................................................9

*Jiang v. Corpuz,*
 19-cv-5664-RPK, 2020 WL 5517237 (E.D.N.Y. Sept. 13, 2020)........23

*Kaye v. Trump,*
 58 A.D.3d 579 (1st Dep't 2009) .............................................................26

*Kriss v. Bayrock Grp. LLC,*
 10-cv-3959-LGS, 2017 WL 1901966 (S.D.N.Y. May 8, 2017) ......27, 28

*La Liberte v. Reid,*
 966 F.3d 79 (2d Cir. 2020)................................................................10, 12

*Max v. Lissner,*
 22-cv-5070-VEC, 2023 WL 2346365 (S.D.N.Y. Mar. 3, 2023) ........9, 12

*Nat'l Acad. of Television v. Multimedia Sys. Design, Inc.,*
 551 F. Supp. 3d 408 (S.D.N.Y. 2021)...................................................12

*Nat'l Jewish Democratic Council v. Adelson,*
 417 F. Supp. 3d 416 (S.D.N.Y. 2019)...................................................15

*Panos v. FDIC*,
    24-cv-03496-JLR, 2025 WL 219347 (S.D.N.Y. Jan. 16, 2025) ..................................................8

*Polis v. Valley Electronics AG et al.*,
    528434/2022 (N.Y. Sup. Ct., Kings Cty.) ...............................................................................16

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022) ...................................................................................11

*Reeves v. Associated Newspapers, Ltd.*,
    218 N.Y.S.3d 19 (1st Dep't 2024) .........................................................................................17

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014) .....................................................................................27

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    977 F.2d 47 (2d Cir. 1992) ....................................................................................................13

*Sapienza v. Notaro*,
    102 N.Y.S.3d 291 (2d Dep't 2019) ..................................................................................21, 25

*Schneebalg v. Conway*,
    161568/2021 (N.Y. Sup. Ct., N.Y. Cty.) ...............................................................................17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ...............................................................................................................10

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
    18-cv-4921-PGG, 2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020) ...............................24, 25, 26

*Strumpf v. Asdourian*,
    110141/2006, 2006 WL 6348824 (N.Y. Sup. Ct., Dec. 12, 2006) ..............................22, 25, 26

*Thomas v. G2 FMV, LLC*,
    48 N.Y.S.3d 358 (1st Dep't 2017) ...........................................................................21, 22, 25

*Thyroff v. Nationwide Mut. Ins. Co.*,
    05-cv-6607T, 2006 WL 2827082 (W.D.N.Y. Sept. 29, 2006) ...............................................24

*Vizcaino v. City of New York*,
    157 N.Y.S.3d 370 (1st Dep't 2022) .......................................................................................23

*Watson v. NY Doe 1*,
    19-cv-533-JGK, 2023 WL 6540662 (S.D.N.Y. Oct. 6, 2023) ...........................................9, 15

**Statutes and Other Authorities**

Fed. R. Civ. P. 8 ...........................................................................................................5, 19, 22

Fed. R. Civ. P. 12 .................................................................................8, 11, 15, 22

Fed. R. Civ. P. 56 ...................................................................................................11

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, J. Free Speech L. 573, 601 (2023) ...................................11

N.Y. Civ. Rights Law § 70-a ............................................................... *passim*

N.Y. C.P.L.R. 3211(g) ............................................................................................13

N.Y. C.P.L.R. 3212(h) ............................................................................................13

<u>**PRELIMINARY STATEMENT**</u>

In 2021, plaintiffs Dr. Adrian Heilbut, Dr. Jesse Brodkin, and Dr. Enea Milioris, and intervenor-plaintiffs Dr. David Bredt and Dr. Geoffrey Pitt (collectively, "Plaintiffs") uncovered telltale signs of doctored research that Defendants Cassava Sciences, Inc., Remi Barbier, and Dr. Lindsay Burns used to advance their Alzheimer's drug candidate, simufilam. Today, Plaintiffs' concerns have been confirmed through investigations by the SEC, DOJ, FDA, CUNY, and Cassava itself: the preclinical and clinical research underlying simufilam was manipulated or fabricated. Barbier and Dr. Burns have now been forced out of the company, and Cassava has finally discontinued simufilam after the failure of its clinical trials.

In 2022, however, Defendants brought a baseless defamation lawsuit against Plaintiffs in retaliation for their expression of valid concerns about simufilam's underlying research. From the beginning, Defendants knew they could not prove their claims because they knew Plaintiffs' statements were either true or impossible to refute, as the original records behind the falsified data had already been destroyed by simufilam's lead scientist, the now-indicted Dr. Hoau-Yan Wang. Defendants nevertheless pursued the defamation action in bad faith to punish Plaintiffs for speaking the truth, intimidate other would-be critics from speaking out, conceal their own misconduct, and enrich themselves. This Court ultimately dismissed the defamation claims, and Defendants then abandoned the lawsuit in August 2024, but not before subjecting Plaintiffs to considerable harm through gratuitous litigation and PR tactics—which, for nearly two years, succeeded in delaying widespread acceptance of the truth about their sham drug. The baseless defamation action is precisely the type of lawsuit the anti-SLAPP regime was designed to combat—one filed not to vindicate any legal rights but to achieve ulterior and improper objectives. Accordingly, Plaintiffs now assert well-pled claims for violation of New York's anti-SLAPP law, malicious prosecution, and civil conspiracy against Cassava and its husband-and-

1

wife principals, Barbier and Dr. Burns, seeking their legal costs, additional compensatory damages, and punitive damages.

Defendants' motions to dismiss are wholly without merit.

First, Defendants misapply the *Erie* doctrine and misconstrue New York's anti-SLAPP statute to argue that Plaintiffs' anti-SLAPP claims cannot proceed in federal court. In fact, Plaintiffs' claims rely on a *substantive* state law: Section 70-a of New York's Civil Rights Law, which provides a statutory right of action to victims of SLAPP suits; it does not conflict with any federal rule of procedure, and *Erie* compels its application here. There is no requirement that anti-SLAPP claimants be active defendants to a lawsuit. And, Plaintiffs allege more than enough facts to plead their claims—in fact, as multiple courts have now held, the underlying dismissal of the defamation claims is itself sufficient to state a claim. Plaintiffs nevertheless plead additional facts in painstaking detail, further demonstrating that the underlying defamation action lacked a "substantial basis in fact and law" (entitling Plaintiffs to their legal costs) and that Defendants had no legitimate purpose for pursuing the action (allowing Plaintiffs to recover additional compensatory damages and punitive damages). (*Infra* Section I.)

Second, Defendants' efforts to dismiss the malicious prosecution claims are equally unavailing. On "probable cause," Defendants fail to overcome the extensive factual allegations demonstrating that the Defamation Action was objectively unreasonable from the outset. Likewise, Defendants overlook the detailed allegations of "malice," which describe Defendants' bad-faith prosecution of the Defamation Action, while knowing that the "defamatory" statements were true or could never be refuted. For example, Defendants say nothing about their internal audit completed two months before they commenced the lawsuit showing they lacked records of the "research" challenged by Plaintiffs and concluding that their laboratory was "unacceptable"

and "not qualified."  Finally, each Plaintiff sufficiently pleads special injury by alleging interferences with their "person, property, or business" that go beyond the ordinary harms associated with defending a lawsuit.  (*Infra* Section II.)

Third, and finally, Plaintiffs adequately state claims for civil conspiracy.  Contrary to Defendants' arguments, the "intracorporate conspiracy doctrine" does not bar Plaintiffs' claims because Plaintiffs allege that Barbier and Dr. Burns were motivated by personal agendas, including to protect Dr. Burns's reputation as a scientist, to avoid liability by concealing their own misrepresentations and roles manipulating the research, and to enrich themselves for as long as they could obscure the truth about simufilam.  (*Infra* Section III.)

For these reasons, Plaintiffs respectfully submit that the motions should be denied.

## BACKGROUND

Plaintiffs are scientists and investors who were early and prominent critics of Cassava's scientific claims underlying its Alzheimer's drug candidate, simufilam.  (First Amended Complaint, Dkt. 9 ("FAC") ¶ 2; Complaint-in-Intervention, Dkt. 40 ("CII") ¶ 2.)

### A.     Plaintiffs Expressed Well-Founded Concerns About Simufilam

Beginning in 2021, Plaintiffs raised concerns regarding the data used to support simufilam's clinical trials, anomalies suggestive of data manipulation, and the implausibility of the drug's supposed mechanism of action.  (FAC ¶ 2; CII ¶¶ 1-2.)

Using publicly available data, Dr. Bredt and Dr. Pitt prepared detailed, factual findings outlining the various anomalies in the research underlying simufilam and submitted these to the FDA in an August 18, 2021, Citizen Petition and supplemental filings, asking the FDA to investigate further.  (CII ¶¶ 30-32.)  Likewise, Dr. Heilbut, Dr. Brodkin, and Dr. Milioris described their own meticulously sourced findings of anomalies and research misconduct in

various public forums, including through an open letter to the FDA, scientific forums, Twitter/X, and slide decks posted on their website. (FAC ¶¶ 2, 41.)

Plaintiffs' criticisms have since been corroborated by the FDA, DOJ, SEC, CUNY, and Cassava. Cassava's lead research collaborator Dr. Hoau-Yan Wang has been indicted for research fraud, Barbier and Dr. Burns have resigned and been barred from serving as officers or directors of public companies, and Cassava itself has accepted a $40 million fine from the SEC. (FAC ¶¶ 3, 10-11; CII ¶ 6.) Indeed, late last year, Defendants finally discontinued simufilam, as the drug failed to show any efficacy during Phase 3 clinical trials.

B.     **Defendants Retaliated by Attacking Plaintiffs and Filing the Defamation Action**

Defendants responded to Plaintiffs' critiques with public threats and attacks (FAC ¶¶ 43-44; CII ¶ 57) designed to suppress debate and prevent widespread acknowledgement of the truth about simufilam (FAC ¶¶ 95-107; CII ¶ 54-58).

On November 2, 2022, Defendants filed their meritless defamation action against Plaintiffs and Quintessential Capital Management, LLC ("QCM"), *Cassava Sciences, Inc. v. Bredt, et al.*, 22-cv-09409-GHW-OTW (S.D.N.Y.) (the "Defamation Action"). (FAC ¶ 6; CII ¶ 4.) Cassava's gratuitous pleadings included 106 exhibits spanning nearly 1,600 pages and challenged hundreds of statements by Plaintiffs, while claiming that Plaintiffs had caused Cassava to lose "more than $2 billion in market capitalization." (FAC ¶¶ 46-52; CII ¶ 28.)

Plaintiffs moved to dismiss the Defamation Action and, in January 2024, Magistrate Judge Ona T. Wang recommended that Cassava's claims be dismissed. (*See* FAC ¶ 60 (citing 2024 WL 553806); CII ¶ 43 (citing 2024 WL 555484).)

Judge Wang found that Drs. Bredt and Pitt's statements were "accompanied by a recitation of the facts on which [they were] based," in that they "arise[d] from – and refer[red] to

– Cassava's own published research, and call[ed] for further investigation after drawing inferences about Dr. Wang's and Dr. Burns's research and reported results." 2024 WL 555484, at *10. Likewise, Judge Wang found that most of Drs. Heilbut, Brodkin, and Milioris's statements were nonactionable scientific discourse because they "summarize the publicly available data concerning simufilam and offer their opinion that the data, taken at face value, does not support Cassava's claims about the efficacy or mechanism of simufilam as a treatment for Alzheimer's disease." 2024 WL 553806, at *5. The rest of their statements, according to Judge Wang, were "rhetorical and hyperbolic"; "would be understood by an ordinary reader as pure opinion," and thus were not actionable either. *Id.*

Moreover, Judge Wang held that Cassava's pleadings violated Rule 8 as they were "tantamount to dropping all of the scientific discourse – spanning years of research – in the lap of a randomly selected federal judge." (FAC ¶ 65; CII ¶ 45.)

After Defendants filed meritless objections to Judge Wang's reports, Judge Gregory H. Woods granted Defendants' motions to dismiss on March 28, 2024. (FAC ¶¶ 62-64; CII ¶ 47-48 (citing 2024 WL 1347362).) With respect to Drs. Bredt and Pitt, Judge Woods dismissed Cassava's claims with prejudice, finding that Cassava had failed to allege that they made any defamatory statements or acted with actual malice. 2024 WL 1347362, at *8 and *27, n.48. With respect to Drs. Heilbut, Brodkin, and Milioris, Judge Woods determined that certain of their challenged Tweets, "examined . . . in isolation" could be actionable as statements of fact with a defamatory meaning, but that Cassava nevertheless failed to state a claim because it did not allege facts sufficient to show actual malice as to any of the challenged statements. *Id.*, at *21 n.42 and *22-28. Notably, Judge Woods agreed with Judge Wang that Cassava's pleading tactics violated Rule 8. *Id.*, at *27, n.48.

On April 29, 2024, Cassava filed a second amended complaint, including 192 exhibits spanning nearly 2,000 pages, against Drs. Heilbut, Brodkin, and Milioris. (FAC ¶ 69.) The second amended complaint was as baseless as Cassava's prior pleadings, containing essentially no new content, and instead elaborately reordering the same allegations already deemed insufficient to plead actual malice by Judge Wang and Judge Woods. (*Id.* ¶¶ 70-72.) Drs. Heilbut, Brodkin, and Milioris moved to dismiss the complaint; and, instead of opposing the motion, Cassava voluntarily withdrew the claims on August 2, 2024. (*Id.* ¶ 80.)

### C. The Defamation Action Succeeded in Punishing Plaintiffs and Suppressing Debate

Although Cassava's lawsuit plainly lacked merit, it accomplished its objective of punishing Plaintiffs for raising valid concerns about simufilam's underlying research, while stifling further criticism. (FAC ¶¶ 4-6; CII ¶ 5.)

Plaintiffs incurred hundreds of thousands of dollars in legal fees, reviewing and responding to the thousands of pages in Cassava's pleadings, and additional expenses responding to abusive subpoenas in the related Securities Action. (FAC ¶¶ 172-182; CII ¶¶ 49-58.)

Plaintiffs' personal and professional lives were also upended. (FAC ¶ 176 (describing termination of Dr. Milioris's three-year employment contract, worth several hundred thousand dollars and negotiated weeks prior to the Defamation Action); *id.* ¶¶ 178-181 (describing Dr. Heilbut's loss of consulting work and interference in his efforts to launch an equity research and consulting business); *id.* ¶ 182 (describing Dr. Brodkin's lost investment opportunities); CII ¶ 55 (describing harms to Dr. Pitt's career advancement at Weill Cornell Medical College); *id.* ¶¶ 56-57 (describing harms to Dr. Bredt's work as CSO of Rapport Therapeutics).)

Defendants wielded the lawsuit to attack Plaintiffs publicly and incite others to follow suit. For example, Barbier submitted a letter to the editor of the *Journal of Prevention of*

*Alzheimer's Disease* falsely accusing Dr. Heilbut, Dr. Brodkin, and Dr. Milioris of "'using adulterated simufilam,' 'patent infringement,' and failing to disclose 'conflicts of interest.'" (FAC ¶ 104.)  Barbier also "called investment bankers during Rapport's IPO process," falsely alleging that "Dr. Bredt (Rapport's CSO) had behaved without integrity."  (CII ¶ 57.)  As a result, Plaintiffs were attacked by those working with, and taking cues from, Defendants.  (FAC ¶¶ 113-114 (describing allegations of "genocide" against Drs. Heilbut, Brodkin, and Milioris); CII ¶¶ 53-54 (describing "doxing" and slurs against Drs. Bredt and Pitt).)

In the meantime, Defendants' strategy of intimidation suppressed widespread recognition of the truth.  For example, a major academic publisher admitted in writing that it was afraid to take action with respect to challenged research while the defamation lawsuit was pending; an expert consultant withdrew from participating in a CUNY investigation as a result of legal threats; and CUNY itself bowed to Defendants' attacks by "pausing" an already completed investigation after its conclusions—severely critical of Dr. Wang and Dr. Burns—were published.  (FAC ¶¶ 7, 84-94; CII ¶ 28.)

### D.    Defendants Pursued the Defamation Action in Bad Faith

From the outset, Defendants knew that they could not prove the allegations in their pleadings nor prevail on their claims.  (FAC ¶¶ 8-12; CII ¶ 28.)

Findings by the DOJ, FDA, SEC, CUNY—and Cassava itself—show that Defendants failed to preserve the raw data or original records from simufilam's foundational experiments and clinical studies.  (*See, e.g.,* FAC ¶ 136; CII ¶ 28.)  Thus, Defendants never had the evidence necessary to refute the allegedly defamatory claims that simufilam was based on manipulated or fabricated research.  In September 2022, Cassava's own internal investigation found a "lack of experiment logbooks/notebooks for all study/research work being performed" by Dr. Wang and concluded that his lab was "unacceptable" and "not qualified to provide biomarker analysis"—

two months *before* Defendants commenced the Defamation Action. (FAC ¶¶ 11, 136; CII ¶¶ 5, 28.) Moreover, these investigations have shown that Dr. Burns and Barbier were themselves personally involved in manipulating and misrepresenting simufilam's research; at the same time, Dr. Burns and Barbier were leading the company's intimidation campaign and baseless lawsuit against Plaintiffs in retaliation for their expression of concerns that Defendants knew to be valid. (*E.g.,* FAC ¶¶ 136, 139-142, 153-168; CII ¶ 28.)

     E.     **<u>Plaintiffs State Claims for Relief</u>**

<u>First</u>, Plaintiffs assert claims against Cassava for violating New York's anti-SLAPP law by pursuing defamation claims "without a substantial basis in fact and law" for the improper purpose of "harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech." (N.Y. Civ. Rights Law § 70-a(1)(a)-(c).) <u>Second</u>, Plaintiffs assert claims for malicious prosecution against Cassava, Barbier, and Dr. Burns based on their pursuit of the Defamation Action. <u>Third</u>, Plaintiffs assert claims for civil conspiracy against Cassava, Barbier, and Dr. Burns based on their scheme to use meritless litigation to silence Plaintiffs.

## **<u>ARGUMENT</u>**

To overcome a Rule 12(b)(6) motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court "accepts the complaint's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Panos v. FDIC*, 24-cv-03496-JLR, 2025 WL 219347, at *3 (S.D.N.Y. Jan. 16, 2025). A court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). "Dismissal is inappropriate unless it

appears beyond doubt that the plaintiff can prove no set of facts which would entitle [it] to relief." *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023).

## I. PLAINTIFFS' ANTI-SLAPP CLAIMS ARE ALLOWED IN FEDERAL COURT AND WELL PLED

Defendants move to dismiss Count I for three reasons: <u>First</u>, Defendants argue that "New York's Anti-SLAPP law cannot apply to a federal complaint." (Dkt. 44 at 6-9; Dkt. 46 at 7-9.) <u>Second</u>, Defendants contend that "only actual defendants can bring a § 70-a claim." (Dkt. 44 at 9-11; Dkt. 46 at 9-11.) <u>Third</u>, Defendants argue that Plaintiffs have not adequately pled their claims. (Dkt. 44 at 11-13; Dkt. 46 at 11-15.) Each effort fails.

### A. Plaintiffs' Anti-SLAPP Claims Are Allowed in Federal Court

As Judges Oetken, Koeltl, and Caproni have all recently found, Section 70-a applies in federal court. *Bobulinski v. Tarlov*, 24-cv-2349-JPO, 2024 WL 4893277, at *12 (S.D.N.Y. Nov. 26, 2024) (applying Section 70-a to award attorney's fees to SLAPP victim); *Watson v. NY Doe 1*, 19-cv-533-JGK, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) (denying motion to dismiss anti-SLAPP claims); *Max v. Lissner*, 22-cv-5070-VEC, 2023 WL 2346365, at *9 (S.D.N.Y. Mar. 3, 2023) ("Plaintiff can bring her anti-SLAPP claim in federal court"); *see also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (holding that Nevada's anti-SLAPP statute applied in federal court); *Isaly v. Garde*, 213 N.Y.S.3d 852, 862 (N.Y. Sup. Ct. 2024) ("That the Legislature established a separate cause of action for anti-SLAPP remedies merely reflects the common will of New York that anti-SLAPP remedies be available in federal court (where awarding anti-SLAPP remedies through procedural rules may not carry through diversity procedure) as well [as] state court.").

As explained below, Defendants' *Erie* arguments are misplaced.

### a. Legal Standard

Under the Supreme Court's decision in *Shady Grove*, when determining whether a state law applies in a diversity action in federal court, the threshold inquiry is whether a Federal Rule of Civil Procedure "attempts to answer the same question" in dispute as the state law. *Bobulinski*, 2024 WL 4893277, at *11 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010)). "If so, the Federal Rule governs, unless it violates the Rules Enabling Act." *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020). If no Federal Rule controls, courts must determine whether the state rule is substantive, and in so doing, consider the twin aims of *Erie*: "'discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Shady Grove*, 559 U.S. at 417 n.2 (Stevens, J., concurring) (citing *Hanna*, 380 U.S. at 468, 471). Finally, if the state law is substantive, the federal court must apply the state law, unless countervailing federal interests require its displacement. *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 431-432 (1996).

### b. No Federal Rule of Civil Procedure Answers the Questions Raised by Plaintiffs' Section 70-a Claims

There is no Federal Rule of Civil Procedure that answers the same questions raised by Plaintiffs' anti-SLAPP claims, namely: <u>one</u>, whether Plaintiffs can recover costs and attorney's fees by showing that Cassava "commenced or continued" the Defamation Action "without a substantial basis in fact and law" (*see* N.Y. Civ. Rights Law § 70-a(1)(a)); <u>two</u>, whether Plaintiffs can recover other compensatory damages by showing that Cassava "commenced or continued" the action for the purpose of "harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech" (*id.* § 70-a(1)(b)); and <u>three</u>, whether

Plaintiffs can recover punitive damages by showing that Cassava "commenced or continued" the action for that "sole" purpose (*id.* § 70-a(1)(c)).  *See Bobulinski*, 2024 WL 4893277, at *14.

Defendants assert that Section 70-a's "substantial basis" standard imposes a "heightened burden" that "conflicts" with Rule 12(b)(6)'s pleading standard and Rule 56's summary judgment standard.  (Dkt. 44 at 7; Dkt. 46 at 7.)  But there is no such conflict: the Rule 12(b)(6) pleading standard applied to Defendants' claims in the underlying Defamation Action and applies to Plaintiffs' claims in this action; if and when any party moves for summary judgment, Rule 56's "genuine dispute of material fact" standard will undoubtedly apply.

As Judge Oetken recognized when rejecting the same argument made by Defendants, the Second Circuit's decision in *Adelson* controls.  *Bobulinski*, 2024 WL 4893277, at *14 (citing *Adelson*, 774 F.3d at 809).  In *Adelson*, the Court found that the attorney's fees provision in Nevada's anti-SLAPP law "does not squarely conflict with a valid federal rule."  *Adelson*, 774 F.3d at 809.  Likewise, Section 70-a "is doing no procedural work," here, but rather "defining the substantive standard for entitlement to attorney's fees," as well as the substantive standards for an award of additional compensatory damages and punitive damages.  *See Bobulinski*, 2024 WL 4893277, at *14*; see also* Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573, 601 (2023) ("No federal rule is sufficiently broad to control the issue addressed by § 70-a: whether a SLAPP defendant can recover damages for being forced to defend against a SLAPP.").  Accordingly, Defendants fail to identify any actual conflict between Plaintiffs' Section 70-a claims and Rules 12 or 56.[1]

---

[1] In *Bobulinksi* and several of Defendants' cases, the party invoking Section 70-a sought an award of attorney's fees in conjunction with its motion to dismiss under Rule 12.  *See, e.g., Coritsidis v. Khal Bnei Torah of Mount Ivy*, 22-cv-10502-CS, 2024 WL 37122, at *6 (S.D.N.Y. Jan. 3, 2024); *Prince v. Intercept,* 634 F. Supp. 3d 114, 142 (S.D.N.Y. 2022); *Ginx, Inc. v. Soho*

Defendants' own cases recognize that anti-SLAPP claims are allowed in federal court. *See, e.g.*, *Dynamic Energy Sols., LLC v. Pinney*, 387 F. Supp. 3d 176, 183-184 n.1 (N.D.N.Y. 2019) ("independent cause of action in federal court . . . is permitted by the statute"). Notably, in *Max v. Lissner*, Judge Caproni addressed the line of cases relied on by Defendants, including her own earlier decision in *Nat'l Acad. of Television v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408 (S.D.N.Y. 2021), as follows: "those cases do not stand for the proposition that the federal courts cannot entertain a claim that a defamation plaintiff violated the substantive state law." 2023 WL 2346365, at *8.

Moreover, those cases follow *La Liberte v. Reid*, which is easily distinguishable. In *La Liberte*, the Court addressed a section of California's anti-SLAPP statute that provided for a special motion to strike mechanism; the question at issue in *La Liberte*—whether the movant was entitled to pretrial dismissal—was already "answered (differently) by Federal Rules 12 and 56"; therefore, the Court held that California's motion to strike mechanism did not apply under *Erie*. 966 F.3d at 87. Here, Plaintiffs are not invoking any special motion procedure, nor any other mechanism to obtain the pretrial dismissal of any claims. Rather, Plaintiffs are asserting substantive statutory rights of action. And, even to the extent other courts have identified procedural components of New York's anti-SLAPP regime "bound up with the substantive right," the only components at issue in this case are Section 70-a's substantive provisions for attorney's fees (§ 70-a(1)(a)), compensatory damages (§ 70-a(1)(b)), and punitive damages (§ 70-a(1)(c)). *See Bobulinski*, 2024 WL 4893277, at *16 (citing *Shady Grove*, 559 U.S. at 420).

_____

*All.*, 720 F. Supp. 2d 342, 344 (S.D.N.Y. 2010). Here, by contrast, any conflict concerns are even further afield because Plaintiffs bring standalone claims under Section 70-a.

Because there is no Federal Rule of Civil Procedure that answers the questions raised by Plaintiffs' anti-SLAPP claims, they pass the threshold *Erie* test.[2]

### c. Section 70-a Is Substantive and Its Application Furthers the Aims of *Erie*

After clearing this threshold inquiry, the analysis turns to whether Section 70-a is procedural or substantive, while considering the twin aims of *Erie*. *See Bobulinski*, 2024 WL 4893277, at *14 (citing *Shady Grove*, 559 U.S. at 398). Procedural law is "the judicial process for enforcing rights and duties recognized by substantive law," while substantive law is "the law that governs the rights and obligations of individuals within a given jurisdiction." *Gonzalez v. United States,* 80 F.4th 183, 193 (2d Cir. 2023).

Here, the provision for attorney's fees in Section 70-a "is a substantive right under *Erie*." *Bobulinski*, 2024 WL 4893277, at *14. The Second Circuit has consistently held that laws providing for attorney's fees are substantive, not procedural, including in the anti-SLAPP context. *Adelson*, 774 F.3d at 809; *see also Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir.1993) ("Attorney's fees mandated by state statute are available when a federal court sits in diversity."); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) ("State law creates the substantive right to attorney's fees [...]"); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (statutory right to attorneys' fees reflects "a substantial policy of the state" and "should be followed" in diversity cases). Likewise, Section 70-a's

---

[2] New York's anti-SLAPP regime also creates special burden-shifting procedures on motions to dismiss and for summary judgment, codified in the C.P.L.R.—which are distinct from the substantive rights Plaintiffs invoke here, separately codified in New York's Civil Rights Law. For example, C.P.L.R. 3211(g)(1) provides that on a motion to dismiss, if the movant shows the action is subject to the anti-SLAPP laws, the burden shifts to the respondent to demonstrate a "substantial basis in law." *See also* C.P.L.R. 3212(h) (shifting burden on motion for summary judgment). Plaintiffs do not invoke the C.P.L.R.'s procedural anti-SLAPP provisions in this action.

provisions for compensatory damages and punitive damages confer individual rights to damages and are thus substantive under *Erie*. *See Gonzalez*, 80 F.4th at 194 (rule is substantive where it "impacts the rights and obligations of individuals [. . .] by affecting the measure of damages a plaintiff may recover"); *see also Gasperini*, 518 U.S. at 438 (1996) (state damages standards are substantive).

Allowing Plaintiffs' Section 70-a claims to proceed in federal court furthers the twin aims of *Erie*. As the Second Circuit reasoned when applying Nevada's anti-SLAPP law, the attorney's fee provision "would apply in state court had suit been filed there," and it is "consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity." *Adelson*, 774 F.3d at 809. Likewise, Judge Oetken recognized that if federal courts refuse to apply Section 70-a, "[d]efendants in federal courts would have to pay the expenses of defending meritless SLAPP suits" whereas "defendants in state court would receive the fees intended for them by their state legislature"—an "inequitable outcome" that "is exactly what *Erie* and its progeny sought to avoid." *Bobulinski*, 2024 WL 4893277, at *14 (citing *Hanna*, 380 U.S. at 468). Moreover, "[p]revention of forum shopping is also a concern," because refusing to apply Section 70-a would encourage plaintiffs "to bring meritless SLAPP suits in federal court to avoid having to pay attorney's fees." *Id.*

Finally, Defendants identify no countervailing federal considerations that would outweigh New York's interest in promoting robust free speech rights, and there are none. *Id.*

Accordingly, *Erie* dictates that Plaintiffs' anti-SLAPP claims proceed in this Court.

### B.     There Is No Requirement that the Underlying Claim Arise in State Court

Defendants also argue that, to the extent anti-SLAPP claims are allowed in federal court, such claims can survive only where the underlying defamation claim was asserted in state court. (Dkt. 44 at 8-9.) But there is no reasoned basis for imposing this limitation, which would

undermine *Erie*'s purposes by encouraging abusive litigants to immunize themselves from anti-SLAPP liability by filing in federal court. *See Bobulinski*, 2024 WL 4893277, at *14. Indeed, Defendants' argument is further refuted by the cases that sustain anti-SLAPP claims based on defamation claims filed in federal court. *See, e.g., Watson*, 2023 WL 6540662, at *3; *Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 420 (S.D.N.Y. 2019); *Goldman v. Reddington*, 18-cv-3662-RPK, 2021 WL 4099462, at *4-5 (E.D.N.Y. Sept. 9, 2021).

Defendants also contend that sustaining anti-SLAPP claims based on defamation claims in federal court would create a "retroactive" conflict with Rule 12. (Dkt. 44 at 9; Dkt. 46 at 9.) But, Defendants cite no case precluding a claim based on a "retroactive" *Erie* conflict. And, this argument proves too much, as its logic (or lack thereof) would also bar state law malicious prosecution claims arising from cases in federal court, considering they, too, "retroactively" impose a state law standard to federal court claims. In reality, there is no *Erie* conflict in either case; both claims arise from substantive laws aimed at questions unaddressed by Rule 12—namely, whether Plaintiffs are entitled to damages.

## C. The Anti-SLAPP Law May Be Invoked by Plaintiffs

In a similarly misguided argument, Defendants contend that the New York anti-SLAPP law cannot be asserted by a party who is no longer an active defendant. (Dkt. 44 at 9-11; Dkt. 46 at 9-11.) This argument misreads the statute, would impose limitations that are inconsistent with its stated purpose, and would make important anti-SLAPP rights and remedies dependent on tangential procedural matters.

Defendants argue that because New York Civil Rights Law § 70-a provides that a "defendant in an action involving public participation" may avail itself of the law, this means that such person may only do so *while* a defendant. That is not what the law says. It provides a cause of action to any "defendant in an action" with no reference to timing. The statute, by its

terms, applies to anyone who is now or has in the past been a defendant. Nothing in the statute

hints at any desire to benefit only *current* defendants, and Defendants fail to offer a cogent

explanation of why the mere word "defendants" should be rewritten to contain an implied time

limitation. Moreover, the statute provides that such a party can maintain an "action, claim, cross

claim or counterclaim […]." N.Y. Civ. Rights Law § 70-a(1). The inclusion of "action" and

"claim" shows that the language was not intended to apply only to parties that are currently

defendants; if only then-current defendants were intended beneficiaries, "counterclaim" and

"cross-claim" would have sufficed. The statute, by its plain language, contemplates that those

who are or have been the subject of a SLAPP lawsuit may seek relief in a new lawsuit—an

"action"—as the Plaintiffs have done here.

Defendants cite *Dynamic Energy Sols., LLC v. Pinney*, 387 F. Supp. 3d 176 (N.D.N.Y.

2019) as dismissing an anti-SLAPP claim because "the plaintiff did not assert Anti-SLAPP as a

counterclaim in state court." (Dkt. 44 at 10; Dkt. 46 at 10.) Not so. Instead, the Court

concluded that the plaintiff had not satisfied the much narrower definition of public participation

set by the pre-2020 anti-SLAPP law. *Id.* at 188-189. Not only does *Pinney* not support the

proposition for which Defendants offer it, but Plaintiffs have found no case—and Defendants

cite none—in which a party was denied anti-SLAPP relief simply because that party was no

longer an active defendant when it filed its claims. To the contrary, courts have sustained the

right to pursue anti-SLAPP remedies following the full and final adjudication of the underlying

SLAPP lawsuit. *See, e.g., Buhl v. Kesner*, 152548/2022, 2024 WL 4026129, at *2 (N.Y. Sup. Ct.

Sept. 3, 2024) (awarding fees on Section 70-a claim brought *after* dismissal of underlying federal

claim); *see also Polis v. Valley Electronics AG et al.*, 528434/2022 (N.Y. Sup. Ct., Kings Cty.),

Dkt. 57 (case proceeding in an action for fees pursuant to Section 70-a that was commenced *after*

dismissal of underlying federal action); *Schneebalg v. Conway*, 161568/2021 (N.Y. Sup. Ct., N.Y. Cty.), Dkt. 29 (denying motion to dismiss action for fees pursuant to Section 70-a that was commenced *after* dismissal of underlying state action).

Defendants' argument is not only contrary to the statute and bereft of precedential support, but it is also illogical. There is no reasoned basis to suppose that the New York Legislature had special concerns relating to *when* the anti-SLAPP claim is filed—whether that be during the pendency of the SLAPP lawsuit or afterwards. Clearly, the legislative intent was to crack down on parties using baseless defamation actions to chill free speech, and Defendants' parsing of the statute for an illusory time limitation only undermines that purpose. *See Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 25 (1st Dep't 2024). Moreover, Defendants' position would deprive parties like Plaintiffs of a remedy simply because they elected, quite reasonably, to await this Court's ruling on their motions to dismiss before asserting their anti-SLAPP claims. Nothing in the statute hints that Defendants' proposed outcome was an intended result, and the Court should reject their effort to arbitrarily cabin its scope.

### D. Plaintiffs' Section 70-a Claims Are Well Pled

Defendants argue that Plaintiffs failed to adequately plead their anti-SLAPP claims. (Dkt. 44 at 11-13; Dkt. 46 at 11-15.) In fact, the dismissal of the defamation claims—standing alone— is sufficient to establish that such claims were "without a substantial basis in fact and law" under Section 70-a(1)(a). *See Bobulinski*, 2024 WL 4893277, at *13 ("Logically, a complaint that fails to state a claim is, *a fortiori*, 'without a *substantial* basis in fact and law'"); *Aristocrat Plastic Surgery P.C. v. Silva*, 219 N.Y.S.3d 336, 337 (1st Dep't 2024) (same); *Reeves*, 218 N.Y.S.3d at 25 (same). Having pled the fact of this Court's dismissal orders, Plaintiffs adequately state claims for relief under Section 70-a. (*See* FAC, Count I; *id.* ¶¶ 60-67; CII, Count I; *id.* ¶¶ 43-48.)

For this reason alone, the Court should reject Defendants' argument that Plaintiffs failed to state their anti-SLAPP claims.

Remarkably, Defendants also argue that the Defamation Action must have had a "substantial basis" because Judge Woods identified a subset of statements by Dr. Heilbut, Dr. Brodkin, and Dr. Milioiris, for which Defendants adequately pled a defamatory meaning, and dismissed those claims without prejudice. (Dkt. 44 at 11-13; Dkt. 46 at 11-15.) This argument fails for multiple reasons.

First, even with every inference drawn in Defendants' favor, Judge Woods nevertheless dismissed *all* claims because Defendants failed to plead actual malice. (Dkt. 9 ¶¶ 62-72.) It is telling that the best Defendants can muster is that they pled *some* of the essential elements for *some* of their claims as to *some* Plaintiffs—as if the lack of an essential element were a mere technicality.[3]

Second, with respect to Dr. Bredt and Dr. Pitt, Judge Woods dismissed all claims against them *with* prejudice, and Defendants made no effort to appeal the Court's thorough dismissal order. As such, even if Defendants' substantial basis argument had any merit whatsoever (and it has none), it still would not apply to the defamation claims against Dr. Bredt or Dr. Pitt.

Third, Defendants badly misconstrue Judge Woods's decision as to the claims against Drs. Heilbut, Brodkin, and Milioris. (Dkt. 44 at 11-13.) In Exhibit A to his opinion, Judge Woods provided a list of statements by Drs. Heilbut, Brodkin, and Milioris that the Court found to have a plausible defamatory meaning "based on the limited allegations before [the Court]." *Cassava*, 2024 WL 1347362, at *21 n.42. At the same time, Judge Woods stressed the

---

[3] Cassava never contested that "actual malice" was a required element of their claims. (*See* Defamation Action, Dkt. 95 at 15-19; *id.* Dkt. 109.)

provisional nature of that finding and "emphasize[d] that contextual allegations […]" necessary to conduct a proper analysis of whether the statements were actionable, "might impact each of those determinations." *Id*. The Court concluded that it could not deem an amendment futile because Cassava "challenged hundreds of tweets [] but provided few individualized allegations regarding the context of each tweet." *Id.* at *29. However, while Cassava's second amended complaint contained some additional contextual allegations (*i.e.*, exhibits with the Twitter threads), it contained no new allegations of "actual malice." Cassava merely repackaged and reordered the same allegations that the Court already found insufficient. (FAC ¶¶ 70-72.) And, after Drs. Heilbut, Brodkin, and Milioris moved to dismiss, Cassava voluntarily dismissed its claims, which were ultimately as baseless as those in its prior pleadings. (FAC ¶ 80.) By voluntarily dismissing its remaining claims at the 11th hour, *after* forcing Drs. Heilbut, Brodkin, and Milioris to incur the cost of moving to dismiss, Cassava seeks to wield as a sword the lack of an order granting that motion to defeat the anti-SLAPP claims. The Court should reject this argument and decline to reward such tactics.

    <u>Fourth</u>, and finally, Defendants ignore that it is now Plaintiffs who are entitled to all inferences in their favor, and Defendants say nothing of the robust allegations detailing many other facts—beyond the Court's dismissal orders[4]—showing that the Defamation Action lacked a substantial basis in fact and law, including Defendants' knowledge from the outset that they could never prevail because they either knew that Plaintiffs' statements were true or, at minimum, knew they lacked the evidence necessary to refute them. (*See, e.g.,* FAC ¶¶ 51-82, 115-171; CII ¶ 28.) And, even if Defendants could credibly contend that their claims had a

---

[4] Defendants also ignore this Court's holdings that Cassava's pleadings violated Rule 8. (FAC ¶¶ 60-72; CII ¶ 28.)

substantial basis or proper purpose when they "commenced" the lawsuit (and they cannot), the

steady accumulation of evidence from the SEC, DOJ, CUNY, FDA, and others—validating

Plaintiffs' critiques—leaves no doubt Defendants "continued" their claims well beyond any

plausible, good-faith belief in their bases could allow. *See* N.Y. Civ. Rights Law § 70-a

(imposing liability for claims "commenced" or "continued" without a basis).

The Court should reject Defendants' efforts to dismiss the anti-SLAPP claims.

## II.     PLAINTIFFS STATE CLAIMS FOR MALICIOUS PROSECUTION

Defendants argue that Plaintiffs fail to plead that "the Defamation Action was brought

without probable cause, with malice, or caused special injury to any Plaintiff." (Dkt. 44 at 13-

19; Dkt. 46 at 15-22.) None of these arguments has merit.

Plaintiffs have alleged more than enough facts to satisfy each element of their malicious

prosecution claims. For instance, Plaintiffs allege, among other things, that:

> [Defendants] Barbier and Dr. Burns each individually participated
> in the malicious prosecution of the Defamation Action, including by
> issuing threats or attacks against [Plaintiffs . . .], by participating in
> decisions to commence and continue the lawsuit, by publicly and
> privately spreading the baseless allegations in the lawsuit, by
> orchestrating and implementing the company's PR campaign that
> falsely blamed all criticism of simufilam on a "short and distort"
> campaign, and by overseeing the company's overall litigation
> strategy, which included the Defamation Action and the recruitment
> and hiring of a new general counsel, reporting directly to Barbier,
> six days before the lawsuit was filed.

(FAC ¶ 197; CII ¶ 73.) Plaintiffs further allege that Defendants knew of problems with the

challenged science and knew they could not prove their baseless defamation claims but asserted

them for the collateral purpose "to silence, intimidate, and discredit the [Plaintiffs] and other

critics[.]" (FAC ¶¶ 201-203; CII ¶¶ 77-79.) This conduct caused special injuries to Plaintiffs,

including, for example, the doxing of Drs. Bredt and Pitt (CII ¶ 82; *id.* ¶¶ 49-58), and Dr. Milioris's loss of an executed employment contract (*see* FAC ¶ 176; *id.* ¶¶ 172-175, 177-182).

These allegations amply satisfy each element. *See Sapienza v. Notaro*, 102 N.Y.S.3d 291, 293 (2d Dep't 2019) (describing elements as "(1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury") (quoting *Teller v. Galak*, 80 N.Y.S.3d 106 (2d Dep't 2018))); *see also Thomas v. G2 FMV, LLC*, 48 N.Y.S.3d 358, 360 (1st Dep't 2017) (sustaining claims against company and individuals); *Honzawa v. Honzawa*, 701 N.Y.S.2d 411, 414 (1st Dep't 2000) (same).

## A.  Plaintiffs Have Alleged that the Defamation Action Lacked Probable Cause

Defendants' contention that the Defamation Action was supported by probable cause is premised on the same unsound arguments advanced to attack Plaintiffs' allegations under the anti-SLAPP law's "substantial basis" standard: that is, Defendants argue that the Defamation Action had "probable cause" because they alleged *some* of the essential elements for *some* of their claims as to *some* of the Plaintiffs. (Dkt. 44 at 14-15; Dkt. 46 at 15-18.) Defendants' argument fails for the same reasons it fails in the anti-SLAPP context. (*Supra* Section I.D.)

Moreover, Plaintiffs fail to address the voluminous and detailed factual allegations in Plaintiffs' pleadings demonstrating, as required to show probable cause, that the Defamation Action was objectively unreasonable. *Thomas*, 48 N.Y.S.3d at 360. For example, Plaintiffs allege numerous facts showing that Defendants knew from the outset that they could never prove their claims, including because they had always known that Plaintiffs' "defamatory" statements were true (in fact, some of the data had been manipulated by Dr. Burns herself); and, at minimum, they knew from their internal investigation two months before the Defamation Action that they lacked the original records necessary to refute the "defamatory" accusations of data

manipulation.  (*E.g.,* FAC ¶¶ 51-82, 115-171; CII ¶ 28.)  These allegations, accepted as true, more than suffice at the pleading stage.  *See Strumpf v. Asdourian*, 110141/2006, 2006 WL 6348824 (N.Y. Sup. Ct. Dec. 12, 2006) (finding allegations that defendants "were aware that they lacked a viable claim, yet nonetheless maintained the Underlying Action" was "sufficient to satisfy the lack-of-probable-cause element"); *see also Thomas*, 48 N.Y.S.3d at 360 (probable cause where allegations showed "no person of ordinary care and prudence" would believe the underlying claim was viable).

Finally, Defendants rely heavily on *Fink v. Shawangunk Conservancy, Inc.*, 790 N.Y.S.2d 249 (3d Dep't 2005) (*see* Dkt. 44 at 14-15; Dkt. 46 at 15-18).  But *Fink* involved a motion for summary judgment in a property dispute, where the court had already found that the underlying claims involved "ambiguous" deeds and "conflicting evidence" of adverse possession.  790 N.Y.S.2d at 251.  The underlying claims in *Fink* are nothing like Cassava's baseless defamation claims (dismissed under Rule 12(b)(6) *and* found to violate Rule 8).  Moreover, *Fink* involved underlying claims against a single party; here, Defendants not only twist this Court's findings against them—dismissing all of their claims—into "favorable" findings, they also graft those findings onto their claims against *other* parties (*i.e.,* Dr. Bredt and Dr. Pitt).  Defendants cite no case in which one part of a claim against one party was deemed to show "probable cause" against another party, nor does such a contention make sense.[5]

---

[5] The Court's grant of partial leave to amend cannot bar a finding that the Defamation Action lacked probable cause.  Especially so, considering Judge Woods's emphasis that his decision was based on Defendants' failure to plead sufficient contextual allegations for the Court to conduct a complete analysis of the hundreds of statements they haphazardly challenged.  Defendants grossly mischaracterize Judge Woods's opinion; at minimum, they improperly ask this Court to consider it in the light most favorable to them.  And, to state the obvious, this argument has nothing to do with Drs. Bredt and Pitt.

### B. **Plaintiffs Have Alleged Malice**

Plaintiffs have amply alleged that Defendants acted with malice. To plead malice, a complaint must allege "the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Jiang v. Corpuz*, 19-cv-5664-RPK, 2020 WL 5517237, at *5 (E.D.N.Y. Sept. 13, 2020) (quoting *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)). "Although probable cause and malice are independent elements of a malicious prosecution claim, a finder of fact may (but is not required to) infer malice from a lack of probable cause." *Vizcaino v. City of New York*, 157 N.Y.S.3d 370, 371 (1st Dep't 2022).

Here, Plaintiffs' pleadings offer much more than an inference of malice from the baselessness of the underlying lawsuit. Plaintiffs plead detailed malice allegations, including:

- The Defamation Action's pleadings were intentionally overwrought to maximize their painful impact on Plaintiffs, for example, comprising nearly 1,600 pages and asserting damages of "more than $2 billion" (*e.g.,* FAC ¶¶ 48, 64-65, 69-74; CII ¶¶ 35, 45);

- Defendants knew they could never prove their claims because "the biochemical and clinical research underlying Defendants' claims about simufilam were tainted by egregious research misconduct and Defendants' lacked the original data or records from that research necessary to refute [Plaintiffs'] supposedly defamatory statements" (*e.g.,* FAC ¶ 52; CII ¶ 38);

- Defendants "knew from their internal audit in September 2022 that Dr. Wang's laboratory was 'unacceptable' and failed to retain any original records or data; and they knew that the clinical studies supporting simufilam were tainted by egregious research misconduct, including by Dr. Burns individually" (*e.g.,* FAC ¶ 201; CII ¶ 77); and

- Defendants amplified their attacks in the Defamation Action by issuing related threats and inciting others to attack Plaintiffs; for example, Dr. Burns herself threatened certain Plaintiffs online, stating in a Facebook post: "Your days are numbered" (*e.g.,* FAC ¶¶ 45, 112-114; CII ¶¶ 52, 57).

Defendants' characterization of these malice allegations as "conclusory" defies reality (*see* Dkt. 44 at 15-16; Dkt. 46 at 18-19). Plaintiffs allege that Defendants engaged in a knowing, coordinated scheme to bring a lawsuit they knew was untenable for the collateral objective of

injuring Plaintiffs and covering up known issues with simufilam. While the courts recognize that "[a]ctual malice is seldom established by direct evidence of an ulterior motive[,]" here, the allegations are far more than indirect or inferential. *Cardoza v. City of New York*, 29 N.Y.S.3d 330, 340 (1st Dep't 2016) (quoting *Martin v. City of Albany,* 42 N.Y.2d 13, 17 (1977)). Malice is adequately pled.

## C. Plaintiffs Have Alleged Special Injury

To plead "special injury," a plaintiff "must allege a 'highly substantial and identifiable interference with person, property, or business' that includes 'some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 18-cv-4921-PGG, 2020 WL 1330283, at *6 (S.D.N.Y. Mar. 22, 2020) (quoting *Dudick v. Gulyas*, 277 A.D.2d 686 (3d Dep't 2000)). New York courts hold, for example, that "damages for harm to reputation are recoverable in a malicious prosecution action." *Dudick*, 277 A.D.2d at 688. Similarly, emotional harm can constitute a special injury. *See Thyroff v. Nationwide Mut. Ins. Co.*, 05-cv-6607T, 2006 WL 2827082, at *4 (W.D.N.Y. Sept. 29, 2006) (citing *Engel v. CBS, Inc.,* 93 N.Y.2d 195, 205 (1999)).

Plaintiffs adequately plead that Defendants' malicious prosecution of the Defamation Action caused them special injuries (*see* FAC ¶¶ 172-182; CII ¶¶ 49-58), including concrete interferences in their professional lives. For instance, Dr. Milioris's three-year employment contract, worth several hundred thousand dollars and negotiated weeks prior to the Defamation Action, was terminated by his soon-to-be employer expressly because of the Defamation Action. (FAC ¶ 176; *id.* ¶¶ 178-181 (describing Dr. Heilbut's loss of consulting work through the Guidepoint expert network and interference in his efforts to launch an equity research and consulting business); *id.* ¶ 182 (describing Dr. Brodkin's lost investment opportunities); CII ¶ 55

(describing harms to Dr. Pitt's career advancement at Weill Cornell Medical College); *id.* ¶¶ 56-57 (describing harms to Dr. Bredt's work as CSO of Rapport Therapeutics).[6]

These harms more than suffice to state a special injury. *See Sparrow*, 2020 WL 1330283, at *6 (alleged loss of "annual revenue" and "ability to attract new investor" deemed sufficient); *Sapienza*, 102 N.Y.S.3d at 293 (allegation that employer "declined to renew" contract deemed sufficient); *Thomas*, 48 N.Y.S.3d at 361 (alleged termination of "consulting arrangement" found sufficient); *see also In re Eerie World Entm't., LLC*, 00-cv-13708, 2006 WL 1288578, at *8 (S.D.N.Y. Bankr. Apr. 28, 2006) (alleged loss of business deemed sufficient); *Strumpf*, 2006 WL 6348824 (alleged hike in insurance rates and loss of clients deemed sufficient).

Moreover, Plaintiffs allege that Defendants wielded the Defamation Action to smear Plaintiffs and incite allies to attack them, interfering in their personal lives and causing emotional and reputational harms. For example, Plaintiffs allege that Barbier submitted a letter to the editor of the *Journal of Prevention of Alzheimer's Disease* on Cassava's behalf "falsely accusing" Dr. Heilbut, Dr. Brodkin, and Dr. Milioris of "'using adulterated simufilam,' 'patent infringement,' and failing to disclose 'conflicts of interest.'" (FAC ¶ 104.) Barbier also "called investment bankers during Rapport's IPO process in the spring of 2024, alleging that Dr. Bredt (Rapport's CSO) had behaved without integrity." (CII ¶ 57.) These efforts to wield the Defamation Action to foment attacks against Plaintiffs subjected them to doxing efforts and slurs from those taking cues from Defendants. (FAC ¶¶ 113-114 (describing allegations of "genocide" against Drs. Heilbut, Brodkin, and Milioris); CII ¶¶ 53-54 (describing "doxing" and slurs against Drs. Bredt and Pitt).) Ultimately, Defendants' gratuitous litigation and PR tactics

---

[6] Defendants concede Dr. Milioris alleges special injury and challenge causation only. (Dkt. 44 at 17.)

had the predictable and intended effect of inflicting severe reputational and emotional damage on Plaintiffs (*e.g.*, FAC ¶¶ 172-182; CII ¶¶ 49-58).

Defendants contend that these harms are insufficient primarily because Plaintiffs have not alleged a causal link between their injuries and the Defamation Action. (Dkt. 44 at 18-19; Dkt. 46 at 20-22.) But Defendants concoct an elevated causation standard requiring proof, for example, that "Defendants force[d] Milioris' employer" to terminate his contract (Dkt. 44 at 19), or that Defendants "forced" their supporters to attack Plaintiffs (Dkt. 46 at 21). That is not the standard. Each Plaintiff sufficiently alleges, as required, that their injuries were the "result of" Defendants' malicious and public prosecution of the Defamation Action. *See Sparrow,* 2020 WL 1330283, at *6 (harms "as a result of" underlying lawsuit deemed sufficient); *Strumpf*, 2006 WL 6348824 (same); *In re Eerie*, 2006 WL 1288578, at *7 (same).[7]

For all of these reasons, Plaintiffs sufficiently state claims for malicious prosecution.

## III. PLAINTIFFS STATE CLAIMS FOR CIVIL CONSPIRACY

Defendants admit that Plaintiffs may assert a claim of civil conspiracy "to connect the actions of separate defendants with an otherwise actionable tort." (Dkt. 44 at 20; Dkt. 46 at 22 (quoting *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006).) That is precisely what Plaintiffs have done: they assert that "[t]he Defamation Action was a central component of Defendants' concerted and coordinated PR campaign, led by Barbier and Dr. Burns, designed to silence, intimidate, and discredit [Plaintiffs] and other critics, distract from problems with

---

[7] Defendants rely on *Kaye v. Trump*, 58 A.D.3d 579, 580 (1st Dep't 2009). But the "conclusory" assertion by the plaintiff in *Kay* (that she was forced to sell her condo because of the lawsuit) is a far cry from the facts alleged here, such as Dr. Milioris's claim that, after executing a three-year contract shortly before the Defamation Action was filed, his employer terminated it "during an in-person meeting, expressly citing concerns about the attention and bad publicity caused by the Defamation Action." (FAC ¶ 176.)

simufilam's foundational scientific and clinical research, evade further public and government scrutiny, conceal and cover-up their misconduct, and inflate Cassava's stock price." (FAC ¶ 209, *id.* ¶¶ 25-26, 206-214; CII ¶ 85, *id.* ¶¶ 18-19, 83-91.)

Defendants contend that Cassava could not have conspired with Defendants Burns or Barbier, who are former Cassava officers, under the intracorporate conspiracy doctrine. (Dkt. 44 at 20-22; Dkt. 46 at 22-24.) But that doctrine does not apply where a defendant's "involvement in the alleged conspiracy was plausibly based on personal interests." *Reich v. Lopez*, 38 F. Supp. 3d 436, 465 (S.D.N.Y. 2014); *see also Kriss v. Bayrock Grp. LLC*, 10-cv-3959-LGS, 2017 WL 1901966, at *3 (S.D.N.Y. May 8, 2017). Here, Plaintiffs allege that Defendants Burns and Barbier were motivated by precisely such personal interests. Dr. Burns, a scientist responsible for some of the falsified science challenged by Plaintiffs, sought to cover up her research misconduct to protect her personal reputation, avoid liability, and profit personally from the company's inflated stock for as long as their scheme could be concealed. (*E.g.,* FAC ¶¶ 89, 210; CII ¶ 87.) Defendant Barbier, the husband of Dr. Burns, had an interest in protecting her reputation as well, in addition to concealing his own involvement in the use of bad science, avoiding liability for his misrepresentations, and profiting from the continued suppression of the truth about simufilam. (*E.g.,* FAC ¶ 211; CII ¶ 88.) Indeed, the terminations of their employment with Cassava, and bans by the SEC on serving as officers or directors (based on their misrepresentations and omissions about simufilam's defective research), further show that their participation in the conspiracy against Plaintiffs was plausibly based on personal interests. (FAC ¶¶ 3, 212; CII ¶¶ 3, 89.) Accordingly, the intracorporate conspiracy doctrine is inapplicable. *See Reich*, 38 F. Supp. 3d at 465 (intracorporate conspiracy doctrine did not bar claim where defendants' covering up improper activity was based on personal interests, not

official duties); *Kriss*, 2017 WL 1901966, at *3 (same, where individuals' preparation of accounting documents that hid improper payments was allegedly motivated by personal interests to profit from and conceal scheme).

Finally, contrary to Defendants' claims, Plaintiffs adequately allege a common scheme based on the intimate relationship between the Defendants, their knowledge of each other's tortious acts, and their own efforts in furtherance of the scheme. For example, Dr. Burns's issuance of threats to Plaintiffs (*e.g.,* FAC ¶¶ 45, 106; CII ¶ 52 ("Your days are numbered") and Barbier's use of the Defamation Action to attack Plaintiffs in scientific journals, the press and during investment calls (*e.g.*, FAC ¶¶ 96-105; CII ¶ 57) "constitute sufficient facts from which a trier of fact could infer an agreement." *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 414 (S.D.N.Y. 2015) (citing *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 629 F. Supp. 427, 444 (S.D.N.Y. 1986)).

Accordingly, Plaintiffs plead plausible claims for civil conspiracy.

## **CONCLUSION**

For all of these reasons, the motions to dismiss should be denied.


Dated: February 13, 2025
　　　　New York, New York

CLARICK GUERON REISBAUM LLP

By: */s/ Isaac B. Zaur*
Isaac B. Zaur
David Kumagai
Amanda J. Wong
41 Madison Avenue, 23rd Floor
New York, NY 10010
212-633-4310
izaur@cgr-law.com
dkumagai@cgr-law.com
awong@cgr-law.com

GOODWIN PROCTER LLP

By: */s/ Jeffrey A. Simes*
Jeffrey A. Simes
Meghan K. Spillane
620 Eighth Avenue
New York, NY 10018
212-813-8800
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

*Attorneys for Intervenor-Plaintiffs*
*Dr. David Bredt and Dr. Geoffrey Pitt*

LAW OFFICE OF DANIEL F. WACHTELL

By: */s/ Daniel F. Wachtell*
Daniel F. Wachtell
90 Broad Street, 23rd Floor
New York, New York 10004
917-667-6954
dan@danwachtell.com

*Attorneys for Plaintiffs Dr. Adrian Heilbut, Dr.*
*Jesse Brodkin, and Dr. Enea Milioris*

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's Individual Rule of Practice 3(c), I certify that the foregoing Joint Memorandum of Law in Opposition to Defendants' Motions to Dismiss, excluding the table of contents, table of authorities, and this certification, contains 8,678 words.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:    February 13, 2025
          New York, New York

                                        /s/ *Isaac B. Zaur*
                                        Isaac B. Zaur