UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIAN HEILBUT, JESSE BRODKIN, AND, ENEA MILIORIS,<br><br>    Plaintiffs,<br><br>DAVID BREDT and GEOFFREY PITT<br><br>    Intervenor Plaintiffs<br><br>v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, AND DR. LINDSAY BURNS,<br><br>    Defendants. | Civil Action No. 1:24-cv-05948-JLR<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS CASSAVA SCIENCES, INC., REMI BARBIER, AND
DR. LINDSAY BURNS'S JOINT REPLY IN SUPPORT OF THEIR
MOTIONS TO DISMISS THE FIRST AMENDED AND INTERVENOR COMPLAINTS**

Michael Vatis (NY Reg. No. 2258655)
J. Erik Connolly (*admitted pro hac vice*)
Caitlin Kovacs (*admitted pro hac vice*)
Michael B. Silverstein (*admitted pro hac vice*)
   mvatis@beneschlaw.com
   econnolly@beneschlaw.com
   ckovacs@beneschlaw.com
   msilverstein@beneschlaw.com

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
*Attorneys for Defendant Cassava Sciences, Inc.*

Steven J. Fink (NY Reg. No. 2697639)
   steven.fink@sjfinkpllc.com

**LAW OFFICE OF STEVEN J. FINK PLLC**
*Attorney for Defendants Remi Barbier and Lindsay Burns*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.     Plaintiffs' Anti-SLAPP claims are insupportable under the law and given the facts. 1

     A.     New York's Anti-SLAPP law cannot apply to the Defamation Action............ 1

          1.     *States cannot penalize adherence to federal procedure.* ......................... 1

          2.     *There is an "emerging consensus" that 70-a does not apply to federal complaints* ................................................................................................ 3

     B.     Plaintiffs are not "defendants." ........................................................................ 5

     C.     The Defamation Action did not lack a substantial basis in law and fact. ......... 6

II.     Plaintiffs do not adequately plead malicious prosecution. ............................................ 7

     A.     Cassava had probable cause to bring the Defamation Action. ......................... 7

     B.     Cassava brought the Defamation Action without malice. ................................ 8

     C.     Plaintiffs do not allege any special injuries. ..................................................... 9

     D.     The Individual Defendants cannot be liable for litigation brought by Cassava. ........................................................................................................... 10

III.     Plaintiffs cannot plead civil conspiracy .......................................................................... 10

     A.     Cassava cannot conspire with itself. ................................................................ 10

     B.     Plaintiffs allege no common scheme or plan. .................................................. 11

CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adelson v. Harris*
    774 F.3d 803 (2d 2014) ............................................................................................................ 4

*Adelson v. Harris*
    973 F. Supp. 2d 467 (S.D.N.Y. 2013) ...................................................................................... 4

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................................................................. 2

*Bank of Am., N.A. v. Kessler*
    206 N.E.3d 1228 (N.Y. 2023) .................................................................................................. 6

*Bobulinski v. Tarlov*
    No. 24-cv-2349-JPO, 2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ..................................... 3

*Broich v. Inc. Vill. Of Southampton*
    650 F. Supp. 2d 234 (W.D.N.Y. 2009) .................................................................................. 11

*Campion Funeral Home, Inc. v. State*
    166 A.D.2d 32 (1991) .............................................................................................................. 9

*Carroll v. Trump*
    590 F. Supp. 3d 575 (S.D.N.Y. 2022) ......................................................................... 1, 2, 4, 5

*Cassava Scis., Inc. v. Bredt et al.*
    No. 1:22-cv-9409, 2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) ........................................... 6

*Dudick v. Gulyas*
    277 A.D.2d 686 (N.Y. App. Div. 2000) .................................................................................. 9

*Dynamic Energy Sols., LLC v. Pinney*
    387 F. Supp. 3d 176 (N.D.N.Y. 2019) .................................................................................... 6

*FiDi Creatives LLC v. Skapos LLC*
    No. 654685/2023, 2024 WL 1647284 (N.Y. Sup. Ct. Apr. 12, 2024) ................................... 10

*Fink v. Shawangunk Conservancy, Inc.*
    15 A.D.3d 754 (N.Y. App. Div. 2005) .................................................................................... 7

*Fisk v. Letterman*
    424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) .............................................................................. 11

*Kaye v. Trump*
    58 A.D.3d 579 (N.Y. App. Div. 2009) ................................................................................... 10

*LaNasa v. Stiene*
    731 F. Supp. 3d 403 (E.D.N.Y. 2024) ...................................................................................... 4

*Levitin v. Miller*
    No. 92 CIV. 0520 (KMW), 1994 WL 376078 (S.D.N.Y. July 15, 1994) .............................. 8

*Max v. Lissner*
    No. 22-CV-5070 (VEC), 2023 WL 2346365 (S.D.N.Y. Mar. 3, 2023) ................................. 4

*McGee v. Dunn*
    940 F. Supp. 2d 93 (S.D.N.Y. 2013) ........................................................................................ 9

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*
    551 F. Supp. 3d 408 (S.D.N.Y. 2021) ...................................................................................... 4

*National Fuel Gas Distribution Corp. v. PUSH Buffalo,*
    104 A.D.3d 1307 (N.Y. App. Div. 2013) ................................................................................ 7

*Perryman v. Vill. of Saranac Lake*
    41 A.D.3d 1080 (N.Y. App. Div. 2007) .............................................................................. 8, 9

*Reich v. Lopez*
    38 F. Supp. 3d 436 (S.D.N.Y. 2014) ...................................................................................... 11

*Reszka v. Collins*
    136 A.D.3d 1299 (N.Y. App. Div. 2016) ................................................................................ 9

*Savarese v City of New York*
    547 F Supp 3d 305 (S.D.N.Y 2021) ....................................................................................... 10

*Thyroff v. Nationwide Mut. Ins. Co.*
    No. 05-cv-6607T, 2006 WL 2827082 (W.D.N.Y. Sept. 29, 2006) ........................................ 9

*Vega v. Artus*
    610 F. Supp. 2d 185 (N.D.N.Y. 2009) ................................................................................... 11

*Watson v. NY Doe 1*
    No. 19-cv-533, 2023 WL 6540662 (S.D.N.Y. Oct. 6, 2023) .................................................. 4

**STATUTES**

28 U.S.C.
§ 2072 ................................................................................................................................. 3

Nevada
Nev. N.R.S. 41.670 .............................................................................................................. 6

New York
N.Y. Civ. Rights Law § 70-a ..................................................................................... *passim*

**FEDERAL RULES**

Fed. R. Civ. P.
Rule 11 ................................................................................................................................ 3
Rule 12 ........................................................................................................................... 2, 5
Rule 56 ................................................................................................................................ 5

**INTRODUCTION**

Plaintiffs' respective Complaints elide and misconstrue both the law and the facts, and the Joint Opposition to Defendants' Motions to Dismiss ("Opposition") shows as much. As Defendants show below, this Court should dismiss (1) the Anti-SLAPP claim as an attempt to circumvent the federal rules and plain language of the statute, (2) the malicious prosecution claim because it relies on conclusory allegations while mischaracterizing the Defamation Action, and (3) the civil conspiracy claim because Cassava cannot conspire with itself. Accordingly, Defendants respectfully request that this Court grant the Motions to Dismiss.

**ARGUMENT**

**I. Plaintiffs' Anti-SLAPP claims are insupportable under the law and given the facts.**

Plaintiffs' Anti-SLAPP claims fail for three reasons: (1) New York's Anti-SLAPP law does not apply in federal court, (2) the statute applies only to "defendants," which Plaintiffs are not, and (3) Plaintiffs do not allege sufficient facts to show the Defamation Action lacked a substantial basis in law and fact.

**A. New York's Anti-SLAPP law cannot apply to the Defamation Action.**

New York's Anti-SLAPP law imposes a higher burden on federal plaintiffs than prescribed by the Federal Rules of Civil Procedure. Therefore, it cannot apply in federal court. *See Carroll v. Trump*, 590 F. Supp. 3d 575, 582 (S.D.N.Y. 2022).

***1. States cannot penalize adherence to federal procedure.***

Plaintiffs attempt to pry open a loophole by seeking otherwise prohibited procedural relief in the form of a substantive claim. [*See* Opp'n at 10–14.] This transformation, so they say, eliminates any conflict between Section 70-a and the federal rules.

Plaintiffs' own reasoning disproves their argument. Plaintiffs acknowledge that the central question is not whether the state labels the law at issue "substantive," but rather "whether a Federal

1

Rule of Civil Procedure 'attempts to answer the same question' in dispute as the state law." [Opp'n at 10; *see also Carroll*, 590 F. Supp. 3d at 582.]  Here, one does.  Federal Rule of Civil Procedure 12(b)(6) establishes all a plaintiff must do to proceed in Federal Court: allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]  If a plaintiff meets that standard, then the Federal Courts are open to them.

Plaintiffs' interpretation of Anti-SLAPP law turns conduct that occurs in Federal Court, with the Federal Court's approval, into a tort.  Even if New York expressly sought to create such a tort, it has no power to do so under the *Erie* doctrine.  The effect of the "substantive" right is clearly in conflict with 12(b)(6), since it foists *state law pleading standards* onto *federal* plaintiffs, whether at the motion to dismiss stage or via a "substantive" claim.

It is important to understand the scope of Plaintiffs' argument.  By their reasoning, so long as a state labels a right as "substantive," it can impose liability on any *federal* plaintiff for engaging in conduct expressly *permitted* by the Federal Rules of Civil Procedure.  For example, New York's default limit is 10 depositions per side in a civil case, while there is no parallel limit in Federal Court. If New York decided that it disliked its citizens being subjected to more depositions than New York deemed appropriate, it could simply create a substantive tort that a deponent could bring against anyone who deposed 11 or more individuals in a federal action. Or perhaps New York decides that there are too many uncorroborated lawsuits being brought against its citizens, and no one should be able to bring *any* claim unless two witnesses can corroborate the plaintiff's story. According to Plaintiffs, New York could make it a tort to assert such a claim in Federal Court. But either law would also plainly conflict with federal procedure, and would chill victims' access to

---

[1] All internal citations and quotations omitted unless indicated otherwise.

Federal Courts even in situations where the victim may succeed in obtaining a judgment. This result defeats the entire purpose of the *Erie* doctrine.

Recognizing this weakness, Plaintiffs try to recharacterize the at-issue question: when are attorneys' fees and damages available in connection with the filing of a lawsuit? [Opp'n at 10–11.] Even if that were the appropriate question—it is not—the Federal Rules already provide a remedy for baseless claims. Fed. R. Civ. P. 11(c)(4) (allowing "reasonable attorney's fees and other expenses directly resulting" from conduct violating Rule 11). Plaintiffs, of course, did not seek Rule 11 sanctions here. Because the Federal Rules answer the question Plaintiffs articulated, the *Erie* doctrine prohibits application of Section 70-a.

Plaintiffs would have states prohibit plaintiffs from interacting with the Federal Courts under the Federal Courts' terms in the supposed interest of free speech. But the Federal Government has a "countervailing interest" in deciding when, how, and whether U.S. citizens can avail themselves of its court system. *See, e.g.,* 28 U.S.C. § 2072 (empowering the Supreme Court to prescribe rules of practice and procedure in federal courts). That interest is at the heart of this conflict, and should win out.

    **2.**   ***There is an "emerging consensus" that 70-a does not apply to federal complaints.***

Plaintiffs cannot justify their position with the case law. Plaintiffs primarily rely on *Bobulinski v. Tarlov* to argue that Section 70-a applies in federal court. In *Bobulinski*, Judge Oetken held that New York's Anti-SLAPP law was just a substantive right to recover attorneys' fees and could be asserted via a motion to dismiss. No. 24-cv-2349 (JPO), 2024 WL 4893277, at *12 (S.D.N.Y. Nov. 26, 2024). But *Bobulinski* stands largely alone against the otherwise "emerging consensus" in this circuit that "§ 70-a is inapplicable in federal court," as it "imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil

3

Procedure." *See LaNasa v. Stiene*, 731 F. Supp. 3d 403, 416–17 (E.D.N.Y. 2024); *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021).

Plaintiffs' reliance on *Adelson v. Harris* is similarly misplaced. In *Adelson*, the Second Circuit held that Nevada's Anti-SLAPP statute applied in federal court. 774 F.3d 803, 809 (2d Cir. 2014). But the part of Nevada's statute at issue only "effectively rais[ed] the *substantive* standard that applies to a defamation claim." *Adelson v. Harris*, 973 F. Supp. 2d 467, 494 n.21 (S.D.N.Y. 2013). Unlike 70-a, the Nevada law did not change the pleading burden. *Id.*

Further, Plaintiffs misread *Max v. Lissner* [Opp'n at 12]. *Max* explicitly limited its holding to the circumstance where a plaintiff "commenc[ed] a defamation lawsuit ***in state court.***" No. 22-CV-5070 (VEC), 2023 WL 2346365, at *8 (S.D.N.Y. Mar. 3, 2023) (emphasis added) (emphasized text omitted from Opposition). For this same reason, any reliance on *Watson v. NY Doe 1* is misplaced. [*See* Opp'n at 9, 15.] While *Watson* allowed an Anti-SLAPP counterclaim in a federal case, it did so while misinterpreting and relying on *Max*, and failing to perceive the distinction between *Max*'s holding and the circumstances at issue. *See* No. 19-cv-533 (JGK), 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023).

Notably, Plaintiffs ignore the greater weight of case law that goes against them, including the most on-point cases: *Trump v. Carroll* and *National Academy of Television Arts and Sciences, Inc. v. Multimedia System Design, Inc*. [*See* Opp'n at 9.] Plaintiffs make no attempt to distinguish these cases, except for an offhand reference to *National Academy* that misrepresents its significance. [*See* Opp'n at 12.] In both cases, this Court expressly rejected counterclaims under Section 70-a because it conflicts with the Federal Rules of Civil Procedure. *Carroll*, 590 F. Supp. 3d at 582; *Nat'l Acad.*, 551 F. Supp. 3d at 430–32. It did not matter that the counterclaim

4

was asserted as a substantive claim rather than a procedural bar; Section 70-a could not apply because "Federal Rules of Civil Procedure 12 and 56 answer the same question as New York's anti-SLAPP provision." *Id.* at 432; *Carroll*, 590 F. Supp. 3d at 582 (adopting *National Academy*'s reasoning). Plaintiffs' refusal to address these persuasive cases speaks volumes.

This Court should see through Plaintiffs' trojan horse, and recognize what most courts in this circuit have already held: New York's Anti-SLAPP law does not apply to federal complaints.

### B.     Plaintiffs are not "defendants."

Section 70-a allows "a defendant" to bring a claim. A defendant is "a person or group against whom a criminal or civil action is brought: someone who is being sued or accused of committing a crime." *Defendant*, Meriam-Webster, https://www.merriam-webster.com/dictionary/defendant. Plaintiffs are not defendants, so they do not fall within Section 70-a.

To combat the plain meaning of "defendant," Plaintiffs ignore it. They instead assert the statute has no explicit timing requirement. [Opp'n at 15–16.] But that requirement is implicit in the word "defendant." "Defendant" is not a perpetual state of being; it is situational and temporary. The legislature's inclusion of "action" and "claim" do not change this plain meaning. [*Id.* at 16.] A defendant can bring a separate action and claim while a SLAPP suit is pending. Plaintiffs also point to cases allowing Anti-SLAPP claims after the SLAPP suit ended. [*Id.* at 16.] But none of those courts considered the argument Defendants assert now. Plaintiffs identify no case rejecting the plain meaning of "defendant," so Plaintiffs' citations are not persuasive.

Finally, Plaintiffs assert there is "no reasoned basis" to apply Section 70-a only to active defendants. [Opp'n at 17.] To the contrary: "[C]ausing a new suit to appear in a new forum is activity less in line with a public-interest entity trying to oppose a project the group deems harmful to the community and more in line with savvy business litigation seeking to protect business

interest and cause complications and increase cost to a competitor. The SLAPP statute, construed narrowly, was not designed to serve that purpose . . . ." *Dynamic Energy Sols., LLC v. Pinney*, 387 F. Supp. 3d 176, 189 (N.D.N.Y. 2019). This rebuff aptly describes Plaintiffs' conduct here. Like *Dynamic Energy*, Plaintiffs stand to benefit from prolonging litigation with Cassava, attempting to drive its stock price down and harm its reputation. Indeed, Plaintiff Adrian Heilbut has taken multiple opportunities to tweet about this lawsuit to his many followers, insulting Defendants publicly and poking fun at third parties Plaintiffs have targeted with subpoenas. [Ex. A (collection of recent tweets).] New York's Anti-SLAPP law was designed to discourage rather than encourage the kind of behavior Plaintiffs are engaging in here.

But Plaintiffs' quibble with the legislature's language choices ultimately does not matter. The plain text of a statute is "the clearest indicator of legislative intent." *Bank of Am., N.A. v. Kessler*, 206 N.E.3d 1228, 1233 (N.Y. 2023). The legislature could have chosen more open language, like Nevada did by allowing a "person" to bring a claim. *See* N.R.S. 41.670(1)(c). But it chose "defendant." It is not Plaintiffs' place to question that choice and its plain meaning.

**C.     The Defamation Action did not lack a substantial basis in law and fact.**

The Defamation Action was premised on Plaintiffs' attempts to label Cassava as a fraud. *Cassava Scis., Inc. v. Bredt et al.*, No. 1:22-cv-9409, 2024 WL 1347362, at *18 (S.D.N.Y. Mar. 28, 2024). Plaintiffs' campaign made Cassava "synonymous with fraud," leading to serious reputational damage such as an inability to receive *any* funding from the National Institute of Health. [Am. Compl., Defamation Action ¶¶ 426, 428.] Cassava brought the Defamation Action to hold accountable individuals who "sell lies to artificially drive down a stock price and enrich themselves." [*Id.* ¶ 10.] Those allegations and this Court's opinion show that the Defamation Action did not lack a substantial basis in law and fact. [*See* FAC Mot. at 11–13; Intervenor Mot. at 11–15.]

6

Plaintiffs' conclusory assertions to the contrary do not change that. As Plaintiffs concede, this Court allowed Cassava to replead 315 defamatory statements. [*Id.*] Whatever else the Court held does not matter: the Court did not conclude that amendment was futile, because those statements were defamatory. Under *PUSH Buffalo*, which Plaintiffs ignore, this holding demonstrates a substantial basis in law as to the entire complaint. In *National Fuel Gas Distribution Corp. v. PUSH Buffalo*, the state court rejected an individual's claim for § 70-a attorneys' fees even though the court dismissed all claims against that individual. 104 A.D.3d 1307, 1309 (N.Y. App. Div. 2013). One claim remained pending against a co-defendant of the individual. *Id.* Similarly, here, though the Court dismissed all claims against the Intervenor Plaintiffs, it allowed Cassava to replead claims against the Dot.Com Plaintiffs. Plaintiffs do not distinguish this case.

Finally, Plaintiffs push the wrong narrative to allege the Defamation Action lacked a substantial basis in fact. While they are entitled to inferences in their favor, they are not entitled to change facts. The facts are that the Defamation Action was premised on Plaintiffs' allegations that Cassava itself was a fraud, not on critiques of underlying science. So any supposed "steady accumulation of evidence . . . validating the Plaintiffs' critiques" ignores the substance of the Defamation Action. [*Compare* Opp'n at 20 *with* Am. Compl., Defamation Action, ¶ 7.] Plaintiffs *still* do not allege, and can never prove, that Cassava was a fraud. Plaintiffs therefore cannot show that the Defamation Action lacked a substantial basis in fact.

## II.     Plaintiffs do not adequately plead malicious prosecution.

### A.     Cassava had probable cause to bring the Defamation Action.

To demonstrate probable cause, a defendant must show that its arguments were not "frivolous or unsupported." *Fink v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 755 (N.Y. App. Div. 2005). So even if the case is not "ultimately []successful," probable cause can still exist.

*Id.* In the Defamation Action, Cassava received favorable rulings and leave to amend. Therefore, the case was not "frivolous or unsupported." *See id.*

Instead of grappling with these favorable holdings, Plaintiffs focus exclusively on the facts they chose to put in their complaints. But, as Plaintiffs do not dispute, the Defamation Action's proceedings and rulings are part of the record at this stage. [*See* FAC Mot. at 1–2; Intervenor Mot. at 1–2.] And the rulings in the Defamation Action conclusively establish that "probable cause [is] not obviously lacking." *Levitin v. Miller*, No. 92 CIV. 0520 (KMW), 1994 WL 376078, at *5 (S.D.N.Y. July 15, 1994).

Plaintiffs' attempt to distinguish *Fink* consists merely of an *ipso-facto* declaration that the Court need not credit. Plaintiffs argue the underlying claims in *that* case had some basis, whereas—so they say—the Defamation Action had none. [Opp'n at 22 & n.5.] But this argument ignores the central holding of *Fink*: "[P]rior judicial recognition of potential merit of the underlying case creates a presumption that it did not lack probable cause." 15 A.D.3d at 755. This Court allowed Cassava to replead precisely because it could not hold the case was without merit. Under *Fink*, then, the Defamation Action presumptively "did not lack probable cause." *Id.*

It also does not matter that the Intervenor Plaintiffs' claims were dismissed with prejudice. [Opp'n at 22 & n.5.] If probable cause is established with respect to any individual claim, it is established with respect to the action as a whole. *Perryman v. Vill. of Saranac Lake*, 41 A.D.3d 1080, 1082 (N.Y. App. Div. 2007).

### B.     Cassava brought the Defamation Action without malice.

Plaintiffs allege mere legal conclusions and irrelevant facts to create an illusion of malice. This is not sufficient.

Rather than allege malice properly, Plaintiffs cite irrelevant facts and inaccurately describe the underlying record. **First**, allegations that the Defamation Action's pleadings were

8

"intentionally overwrought" is nothing more than speculative opinion; Plaintiffs offer no explanation as to why a detailed complaint demonstrates actual malice. [*Id.* at 23.] **Second**, allegations that Defendants could not prove their claims about research misconstrue what Defendants' claims actually were. The thrust of the Defamation Action was that Plaintiffs maligned Cassava itself as fraud; it was not based on disagreements over underlying science. **Third**, for the same reasons, allegations regarding knowledge of Dr. Wang's laboratory are irrelevant. **Finally**, supposed "threats" and incitements have nothing to do with the prosecution of the Defamation Action. These irrelevant and conclusory allegations are not enough to show malice. *See McGee v. Dunn*, 940 F. Supp. 2d 93, 101–02 (S.D.N.Y. 2013).

### C. Plaintiffs do not allege any special injuries.

Special injuries must be a "wrongful interference with [his] person or property" that do not merely amount to "the physical, psychological or financial demands of defending a lawsuit." *See Reszka v. Collins*, 136 A.D.3d 1299, 1301 (N.Y. App. Div. 2016). Plaintiffs' focus on reputational harm conflate damages with special injury. [*See* Opp'n at 24-25.] Though a plaintiff may collect damages for reputational harm, such damages are not the same as *injury*. *C.f. Dudick v. Gulyas*, 277 A.D.2d 686, 688 (N.Y. App. Div. 2000) (discussing damages, not special injury); *Campion Funeral Home, Inc. v. State*, 166 A.D.2d 32, 37 (N.Y. App. Div. 1991) ("Injury to reputation, the remaining category of damages claimed herein, likewise fails to satisfy the injury to or interference with person or property requirement."). Further, Plaintiffs allege that emotional harm can constitute a special injury, but this works only for *severe* emotional harm. *See Thyroff v. Nationwide Mut. Ins. Co.*, No. 05-cv-6607T, 2006 WL 2827082, at *4 (W.D.N.Y. Sept. 29, 2006). The harm Plaintiffs allege is not severe, but rather the "psychological … demands of defending a lawsuit." *See Reszka*, 136 A.D.3d at 1301.

9

Plaintiffs' remaining special injury allegations are either conclusory or lack causation. [FAC Mot. at 17–19; Intervenor Mot. at 19–21.] Each plaintiff must allege enough facts to show that Defendants' prosecution of the Defamation Action caused his special injuries. [FAC Mot. at 20–21]; *Kaye v. Trump*, 58 A.D.3d 579, 580 (N.Y. App. Div. 2009). The Complaints bring only conclusory allegations. That is not enough.

### D. The Individual Defendants cannot be liable for litigation brought by Cassava.

Plaintiffs begin the defense of their malicious prosecution claim with an unsuccessful attempt to justify bringing that claim against the individual defendants. [Opp'n at 20-21.] However, aside from conclusory allegations that the individuals "participat[ed] in decisions to commence and continue the lawsuit," and supposedly "over[saw] the company's overall litigation strategy," they fail to explain their theory that individuals can be liable in malicious prosecution for a claim brought by the company that employed them. This is particularly true as to Dr. Burns—Cassava's "former lead in-house scientist" [FAC ¶ 3]—who by virtue of her position with Cassava had no plausible role in advising, deciding, or even being aware of what litigation Cassava would or would not bring.

## III. Plaintiffs cannot plead civil conspiracy.

### A. Cassava cannot conspire with itself.

A corporation and its officers, employees, and agents are legally incapable of conspiring with each other because they are a single entity. *FiDi Creatives LLC v. Skapos LLC*, No. 654685/2023, 2024 WL 1647284, at *6 (N.Y. Sup. Ct. Apr. 12, 2024) (quoting *Savarese v City of New York*, 547 F Supp 3d 305, 343 (S.D.N.Y 2021)). Here, the individual defendants were agents of Cassava at the time of the alleged torts, so the conspiracy claim fails.

Plaintiffs assert that their "personal interest" allegations provide an out. [Opp'n at 27–28.] But Plaintiffs need to do more than conclusorily allege that Barbier and Dr. Burns had a separate

10

personal interest that takes their acts beyond their scope of employment. Specifically, they must plausibly allege that the "individuals pursue[d] personal interests ***wholly separate and apart from the entity.***" *See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (emphasis added); *see also Reich v. Lopez,* 38 F. Supp. 3d 436, 463 (S.D.N.Y. 2014) ("The exception to this doctrine 'applies where a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity.") (quoting *Broich v. Inc. Vill. Of Southampton,* 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009)). Mere allegations of a desire to protect personal reputations do not cut it.

Indeed, Plaintiffs' assertions are belied by the alleged "coordinated PR campaign." [Intervenor Compl. ¶ 85.] Such a campaign could not have been wholly separate and personal to Defendants Barbier and Dr. Burns because it was a campaign ***for Cassava***. So, any alleged acts undertaken in furtherance of this supposed conspiracy necessarily fell within the scope of the individuals' employment.

### B. Plaintiffs allege no common scheme or plan.

Plaintiffs infer a common scheme from the "intimate relationship between the Defendants, their knowledge of each other's tortious acts, and their own efforts in furtherance of the scheme." [Opp'n at 28.] This is not enough. The acts cited by Plaintiffs do not imply an agreement to engage in a conspiracy; instead, they are "conclusory, vague [and] general allegations that the defendants have engaged in a conspiracy." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006).

### CONCLUSION

Defendants respectfully request that the Court grant their Motions and dismiss this case with prejudice.

11

Dated: March 6, 2025

Respectfully submitted,

CASSAVA SCIENCES, INC.

By its attorneys,

*/s/ J. Erik Connolly*
J. Erik Connolly (*admitted pro hac vice*)
   EConnolly@beneschlaw.com
   Illinois ARDC No. 6269558

Caitlin A. Kovacs (*admitted pro hac vice*)
   ckovacs@beneschlaw.com
   Illinois ARDC No. 4180162

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

Michael B. Silverstein (*admitted pro hac vice*)
   msilverstein@beneschlaw.com
   Ohio Bar No. 98036

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
41 South High Street, Suite 2600
Columbus OH, 43215
Telephone: (614) 2233-9300

Michael Vatis
   mvatis@beneschlaw.com
   NY Reg. No. 2258655

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
1155 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (646) 593-7050

       DR. LINDSAY BURNS
       REMI BARBIER

       By their attorney,

       */s/ Steven J. Fink*
       Steven J. Fink
          steven.fink@sjfinkpllc.com
          NY Reg. No. 2697639

       **LAW OFFICE OF STEVEN J. FINK PLLC**
       100 Wall Street, 15th Floor
       New York, New York 10005

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Hon. J. J. L. Rochon's Individual Rule of Practice 3(c), I certify that the foregoing Reply in Support of Motions to Dismiss was prepared in 12-point font, including footnotes, and contains 3,483 words, excluding the parts of the document that are exempted by Individual Rule 3(c).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 6, 2025

*/s/ J. Erik Connolly*
J. Erik Connolly (*admitted pro hac vice*)
EConnolly@beneschlaw.com
Illinois ARDC No. 6269558

## **CERTIFICATE OF SERVICE**

  I, Erik Connolly, hereby certify that a copy of the foregoing Reply in Support of Motions to Dismiss, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 6, 2025.

Dated: March 6, 2025            */s/ J. Erik Connolly*