UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIAN HEILBUT, JESSE BRODKIN, and ENEA MILIORIS,<br><br>        Plaintiffs,<br><br>DAVID BREDT and GEOFFREY PITT,<br><br>        Intervenor-Plaintiffs,<br><br>    -against-<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, and LINDSAY BURNS,<br><br>        Defendants. | Case No. 1:24-cv-05948 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

This action arises out of a defamation suit brought in 2022 by Cassava Sciences, Inc. ("Cassava") against Drs. Adrian Heilbut, Jesse Brodkin, Enea Milioris, David Bredt, and Geoffrey Pitt, among others. *See Cassava Scis., Inc. v. Bredt*, No. 22-cv-09409 (GHW) (OTW) (S.D.N.Y. filed Nov. 2, 2022) (the "Defamation Action"). The Defamation Action was dismissed, and now plaintiffs Drs. Heilbut, Brodkin, and Milioris, along with intervenor-plaintiffs Drs. Bredt and Pitt (collectively, "Plaintiffs"), bring claims against Cassava for violation of the New York anti-SLAPP statute, N.Y. Civ. Rights Law §§ 70-a, 76-a, and against Cassava, Remi Barbier, and Dr. Lindsay Burns (collectively, "Defendants") for malicious prosecution and civil conspiracy. At the heart of this action, Plaintiffs allege that Cassava, at the direction of Barbier and Dr. Burns, commenced and continued the Defamation Action against Plaintiffs in retaliation for their public criticism of the research underlying Cassava's experimental Alzheimer's drug simufilam. *See* Dkt. 9 ("First Amended Complaint" or "FAC") ¶¶ 183-214; Dkt. 40 ("Complaint in Intervention" or "CII") ¶¶ 59-91. Currently before the Court are Defendants' motions to dismiss the First Amended Complaint and

Complaint in Intervention in their entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See* Dkts. 43, 45. For the reasons set forth below, Defendants' motions are DENIED.[1]

## BACKGROUND

### I. Factual Background[2]

### A. The Parties

Cassava is a Texas-based pharmaceutical company. FAC ¶¶ 19, 28-30, 32-35. When the Defamation Action was commenced, Defendant Barbier was Cassava's Chief Executive Officer, and Defendant Dr. Burns was Cassava's Senior Vice President of Neuroscience. *Id.* ¶ 29. Both are citizens of Texas. *Id.* ¶¶ 20-21. In 2009, Dr. Burns and Dr. Hoau-Yan Wang, a professor at the City University of New York ("CUNY"), first filed a patent application for a drug called simufilam, which they described as a painkiller "with the novel ability to bind to filamin-A," a protein. *Id.* ¶ 32; *see id.* ¶¶ 29, 31. Dr. Burns and Dr. Wang ultimately "abandoned the notion that simufilam was a painkiller," but later hypothesized that simufilam "could treat Alzheimer's disease by binding to filamin-A." *Id.* ¶ 33. In 2017, Cassava filed an Investigational New Drug Application with the Food and Drug Administration ("FDA")

---

[1] Defendants requested oral argument via a notation on their reply brief. The Court declines this request because the parties' briefing was sufficient and oral argument would not materially assist the Court. *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

[2] Unless otherwise noted, the facts stated herein are taken from the FAC and CII and are accepted as true for purposes of resolving the instant motions. *See Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (explaining that on consideration of a Rule 12(b)(6) motion, courts may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit").

for simufilam, claiming that filamin-A was misfolded in Alzheimer's patients and that "simufilam could restore . . . filamin-A to its native shape." *Id.* ¶ 34; *see id.* ¶ 35.

Drs. Heilbut, Brodkin, and Milioris are pharmaceutical researchers and investors who were prominent critics of "simufilam's claimed mechanism of action and the integrity of Dr. Wang's and Dr. Burns's research underlying it." *Id.* ¶ 40; *see id.* ¶ 41. They are citizens of New York, New Jersey, and Greece, respectively. *Id.* ¶¶ 16-18. In 2021, Drs. Heilbut, Brodkin, and Milioris began to raise their concerns publicly, including through:

> (1) an open letter to the FDA; (2) testimony at a public CUNY meeting; (3) a poster presented at a Clinical Trials on Alzheimer's Disease ("CTAD") conference describing experiments to test certain aspects of Dr. Burns and Dr. Wang's research; (4) a letter to journal editors concerning research misconduct of Dr. Wang in 32 papers dating back two decades; (5) posts on the online scientific forum PubPeer; (6) posts on Twitter (now known as X); (7) three presentation decks describing problems with Cassava's claims related to simufilam and Cassava's ostensible diagnostic test for Alzheimer's disease, branded as SavaDX; and (8) a website compiling their critiques and sources at www.cassavafraud.com.

*Id.* ¶ 41. They also "filed several FOIA and FOIL requests for information related to Dr. Wang, Dr. Burns, Barbier, simufilam, and Cassava, and have made public many previously undisclosed documents, including emails illustrating defects in the Phase 2 clinical trial design and execution." *Id.* ¶ 42.

Drs. Bredt and Pitt are neuroscientists who are citizens of California and New York, respectively. CII ¶¶ 2, 10-11. In 2021, they filed a Citizen Petition ("CP") with the FDA to raise concerns about the data on which Cassava relied in its FDA filings to obtain approval to conduct Phase 3 clinical trials on simufilam. *Id.* ¶¶ 2, 30. In their CP, which was based on information "obtained from public, non-proprietary sources," *id.* ¶ 34, Drs. Bredt and Pitt raised "three groups of major concerns" about Cassava's data; specifically, they (1) suggested that the "underlying papers by Drs. Wang and Burns employed 'Western blot' analyses

containing 'anomalies that are suggestive of systematic data manipulation,'" *id.* ¶ 30(a);[3] (2) contended that Cassava's "claims about the effect of simufilam based on its purported effect in long dead and frozen brain tissue 'defies logic' and contains 'hallmarks of manipulation,'" *id.* ¶ 30(b); and (3) questioned "the validity of Cassava's biomarker data" that was presented in a September 2020 retest of a previously unsuccessful analysis of simufilam and in "a poster describing blood tests presented in July 2021 at the Alzheimer's Association International Conference," *id.* ¶ 30(c). After Cassava denied the allegations, counsel for Drs. Bredt and Pitt disclosed in a press release "that the CP was submitted on behalf of individuals with expertise in 'neuroscience, drug discovery, biochemistry, and finance' and that they held short positions in Cassava stock." *Id.* ¶ 31. Drs. Bredt and Pitt filed four more supplemental CP submissions reiterating their concerns and "not[ing] that other scientists also 'expressed major concerns with the integrity of these phase 2a data and advised the inspection of the original [Western Blot] images is needed to assess the authenticity of the clinical study results.'" *Id.* ¶ 32.

### B. The Defamation Action

#### 1. *Litigation History*

On November 2, 2022, Defendants initiated the Defamation Action in this District, "six days after Barbier announced the hiring of a new general counsel, who would report directly to him and whom Barbier touted as a 'critical addition' to Cassava's 'strategic initiatives.'" FAC ¶ 46. In their complaint — which was 184 pages long and attached 106

---

[3] As described in the First Amended Complaint: "A Western blot is a technique used in biochemistry to observe and quantify relative amounts of proteins in a sample, by separating them according to molecular weight or charge followed by detection using antibodies that bind specifically to the protein of interest." FAC ¶ 128. "It is standard scientific practice to save and retain the complete set of images (and if using physical film, the films themselves) associated with a Western blot, which enables later quantitative analysis and evaluation of the data in the context of controls and molecular weight markers." *Id.* ¶ 129.

exhibits — Cassava alleged that Drs. Heilbut, Brodkin, and Milioris "made false and defamatory statements in their letter to the FDA, slide decks published online, and related posts on Twitter," *id.* ¶ 48, and that Drs. Bredt and Pitt "made false and defamatory statements" in their CP, CII ¶ 34. *See generally* Complaint, *Cassava Scis., Inc.*, No. 22-cv-09409 (S.D.N.Y. Nov. 2, 2022), ECF No. 1; First Amended Complaint, *Cassava Scis., Inc.*, No. 22-cv-09409 (S.D.N.Y. Nov. 4, 2022), ECF No. 30 (adding jurisdictional allegations) (the "Defamation FAC").

In early 2023, Plaintiffs' counsel conferred with Cassava's counsel — per the individual rules of Magistrate Judge Wang, to whom Judge Woods referred the Defamation Action for pretrial purposes — "to notify them of the bases for Plaintiffs' anticipated motion to dismiss and to afford Cassava the opportunity to avoid the burden and expense of motion practice by withdrawing or further amending the First Amended Complaint." FAC ¶ 54. However, "Cassava refused to do either," *id.*, and Plaintiffs filed their anticipated motions to dismiss the Defamation FAC in January and March 2023, *id.* ¶ 56. Discovery was stayed in the Defamation Action. *Id.* ¶ 58.

In July 2023, Cassava served subpoenas on Drs. Heilbut, Brodkin, Bredt, and Pitt "in connection with a separate consolidated securities class action that Cassava is defending in the Western District of Texas," which Plaintiffs characterize as an "effort to circumvent the stay of discovery entered in the Defamation Action." *Id.* ¶ 59; *see* CII ¶ 41. *See generally In re Cassava Scis., Inc. Sec. Litig.*, No. 21-cv-00751 (W.D. Tex. filed Aug. 27, 2021) (the "Securities Action"). Each of the subpoenas sought around fifty "broad categories" of documents including, among other things, extensive "third-party discovery concerning [Drs. Heilbut's, Brodkin's, Bredt's, and Pitt's] personal, professional, and financial circumstances." FAC ¶ 59; CII ¶ 41.

In January 2024, Judge Wang recommended the dismissal of the Defamation FAC in its entirety. FAC ¶ 60. In March 2024, over Cassava's objections, Judge Woods adopted Judge Wang's recommendations, *see id.* ¶¶ 61-62, holding that Cassava failed to adequately plead a claim for defamation against any of the defendants, *see Cassava Scis., Inc. v. Bredt* (*Cassava I*), No. 22-cv-09409 (GHW), 2024 WL 1347362, at *7 (S.D.N.Y. Mar. 28, 2024). He found that a majority of the allegedly defamatory statements — including all of Dr. Bredt's and Dr. Pitt's challenged statements — were nonactionable, constituting either scientific conclusions, opinion statements, unchallenged factual statements, or summaries and headings. *Cassava I*, 2024 WL 1347362, at *8-17. With regard to a smaller subset of statements that Cassava adequately pleaded were defamatory — including statements in tweets and in a slide deck prepared by Drs. Heilbut, Brodkin, and Milioris — Judge Woods determined that Cassava failed to plead that the statements were published with actual malice, *see id.* at *17-18, *20-28, and granted Cassava leave to file a second amended complaint to replead its allegations of actual malice with regard to those statements, *id.* at *29.

As Plaintiffs recount, "[b]oth Judge Woods and Magistrate Judge Wang criticized Cassava's pleading tactics." FAC ¶ 63. In particular, Judge Wang concluded that the Defamation FAC did not comply with Rule 8:

> [Cassava] asserts that the [defendants'] arguments for dismissal "are predicated on a misrepresentation of the facts alleged" and "nearly everything Bredt and Pit[t] said in their petitions and everything that they republished was factually inaccurate." This conclusory statement, based on a FAC that attaches and incorporates more than 100 exhibits (many of which contain multiple links) and spans nearly 1600 pages, is tantamount to dropping all of the scientific discourse — spanning years of research — in the lap of a randomly selected federal judge. That the parties happened to be referred to a randomly selected federal judge with a Ph.D. in science made the review of this motion only marginally more efficient.

*Cassava Scis., Inc. v. Bredt*, No. 22-cv-09409 (GHW) (OTW), 2024 WL 555484, at *11

(S.D.N.Y. Jan. 3, 2024), *report and recommendation adopted*, *Cassava I*, 2024 WL 1347362;

*see also Cassava Scis., Inc. v. Heilbut*, No. 22-cv-09409 (GHW) (OTW), 2024 WL 553806, at

*6 (S.D.N.Y. Jan. 5, 2024), *report and recommendation adopted sub nom. Cassava I*, 2024

WL 1347362. Judge Woods agreed with Judge Wang's assessment:

> [Cassava] attached dozens of studies to the Complaint with the expectation that
> the Court would compare the methodologies used by Dr. Burns, Dr. Wang, and
> [Cassava] to the methodologies used by other scientists and determine whether
> the latter conflicted with [d]efendants' critiques[,] . . . [and] the Complaint does
> not direct the Court to any specific sections of the articles . . . . Hundreds of
> pages of attachments, many of which are written in highly technical, specialized
> language rather than for a lay audience, fail to meet the standard of either "short"
> or "plain."

*Cassava I*, 2024 WL 1347362, at *27 n.48 (quoting Fed. R. Civ. P. 8(a)); *see* Fed. R. Civ.

P. 8(a) ("A pleading that states a claim for relief must contain," among other things, "a short

and plain statement of the claim showing that the pleader is entitled to relief.").

Cassava filed a second amended complaint on April 29, 2024. *See generally* Second

Amended Complaint, *Cassava Scis., Inc.*, No. 22-cv-09409 (S.D.N.Y. Apr. 29, 2024), ECF

No. 120 (the "Defamation SAC"). The Defamation SAC — which contained 732 paragraphs

and attached 192 exhibits — added new allegations regarding actual malice as to the smaller

set of allegedly defamatory statements identified by the *Cassava I* court as actionable. *See id.*;

FAC ¶¶ 69, 72. Plaintiffs moved to dismiss the Defamation SAC on June 28, 2024. FAC

¶¶ 75-76. On August 2, 2024, the day Cassava's opposition papers were due, Cassava instead

filed a notice of voluntary dismissal as to all claims. *Id.* ¶¶ 80.

> ### 2. *Defendants' Awareness of the Viability of the Defamation Action*

Plaintiffs outline several reasons why they believe Defendants knew or should have

known that Cassava could not have prevailed in the Defamation Action. FAC ¶ 115. First,

Plaintiffs contend "that the scientific hypotheses underlying simufilam were novel, unique to the company, and had never been independently corroborated." *Id.* ¶ 116. They allege that prior to the commencement of the Defamation Action, "at least three scientific journals . . . had retracted at least seven research papers co-authored by Dr. Burns or Dr. Wang," *id.* ¶ 120; "at least four other scientific journals . . . had issued Expressions of Concern or corrections regarding at least six research papers co-authored by Dr. Wang or Dr. Burns," *id.*; and "in response to the Citizen Petition, Barbier himself publicly admitted to certain errors in simufilam's foundational research," *id.* ¶ 121.

Second, Plaintiffs assert that "Defendants knew that they could never refute the allegedly defamatory claims that simufilam was based on manipulated or fabricated data" because they "knew that [no original data] existed at the time [Cassava] commenced the Defamation Action." *Id.* ¶ 143. Plaintiffs reference the conclusions of "numerous investigations [that] have revealed that Defendants lack the original data underlying their scientific claims about simufilam," due in large part to Dr. Wang's purported research misconduct. *Id.* ¶ 124; *see id.* ¶¶ 123-143; *see also id.* ¶ 134 ("The only supposed evidence that filamin-A is misfolded in Alzheimer's patients are certain Western blot experiments reported by Dr. Wang and Dr. Burns in a 2017 paper. However, according to the DOJ's indictment, Dr. Wang fabricated the Western blot images purporting to show simufilam's mechanism of action in that 2017 paper."); *id.* ¶ 135 ("Cassava has admitted that it relied on Dr. Wang's laboratory to conduct these experiments and preserve the original data."). Plaintiffs allege that Dr. Burns "must have known about Dr. Wang's research methods and recordkeeping practices for years" because she served as his "senior co-author and collaborator for two decades," and that she "had actual knowledge by at least September 2022," *id.* ¶ 142, when Cassava completed an internal audit that found "Dr. Wang's laboratory

was 'unacceptable and temporarily not qualified to provide biomarker analysis and research services for any future Cassava studies,'" *id.* ¶ 136(a). "[T]he SEC concluded that '[b]oth Barbier and Dr. Burns were generally aware of the findings in the report' from Cassava's internal audit in September 2022." *Id.* (second alteration in original) (quoting Complaint ¶ 86, *Sec. & Exch. Comm'n v. Cassava Scis., Inc.*, No. 24-cv-01150 (W.D. Tex. Sept. 26, 2024), ECF Nos. 1, 2-1) (citing Hoau-Yan Wang, Securities Act Release No. 11311, Exchange Act Release No. 101201, 2024 WL 4332556 (Sept. 26, 2024)).

Lastly, Plaintiffs contend that "Defendants knew that simufilam's Phase 2b study was tainted by research misconduct and that they could never refute Plaintiffs' allegedly defamatory statements critiquing that study." *Id.* ¶ 144. Cassava originally hired an independent Swedish laboratory to perform the study, which "was to be conducted [in 2019] as a randomized, double-blinded study to assess certain biomarker changes [in patient samples] over 28 days of simufilam treatment." *Id.* ¶ 145; *see id.* ¶¶ 146, 148. "The Phase 2b study was a critical step to generate evidence supporting simufilam as a potential treatment for Alzheimer's disease and to justify much larger confirmatory studies required for FDA approval, and to raise capital to fund those studies." *Id.* ¶ 145. In May 2020, however, Cassava announced "that the Phase 2b data showed the drug had failed to improve levels of biomarkers of the disease," after which "Cassava's stock lost approximately 75% of its value." *Id.* ¶ 147. Defendants then pursued a "re-do" of "the biomarker analysis in a different laboratory, using back-up samples." *Id.* ¶ 149. They claimed that the samples would be re-tested in an independent laboratory," but "fail[ed] to disclose that Dr. Wang — the co-inventor of simufilam, who had been on Cassava's payroll for years, was participating in the company's bonus plan, [and] was a member of its Scientific Advisory Board" — would be performing the "re-do." *Id.* The new analysis produced positive results, which led to

"Cassava's stock nearly doubl[ing]," but the results were "never accepted for publication by a peer-reviewed journal." *Id.* ¶ 151. Subsequently, Cassava's internal audit and an FDA inspection report of Dr. Wang's laboratory determined that the re-do study was tainted by unreliable recordkeeping practices, *id.* ¶¶ 154-156, and an SEC investigation found that Dr. Burns "sent an email to Dr. Wang with information sufficient to unblind him to a substantial portion of study subjects," which allowed him to manipulate the biomarker data, *id.* ¶ 162; *see id.* ¶¶ 157-163, 170. The SEC also suggested that Dr. Burns was unblinded to certain cognitive data from the study, which allowed her to selectively report favorable measurements "to convey a false and misleading impression that simufilam had a beneficial effect on cognition." *Id.* ¶ 167; *see id.* ¶¶ 164-168.

### C. Impact of the Defamation Action

Plaintiffs characterize the Defamation Action as part of a broader "campaign of intimidation" to attack the motives of Cassava's critics and prevent other critics from coming forward. FAC ¶ 94; *see id.* ¶ 97; CII ¶ 8. In the Defamation FAC, Cassava accused Plaintiffs of engaging in a "short-and-distort" campaign to profit from "publishing false information" to deflate Cassava's stock prices, Defamation FAC ¶ 5, a characterization that Defendants repeated in press releases, SEC filings, comments to the press, and scientific journals, *see* FAC ¶¶ 96-107, 100 n.5, 101 n.6, 105 n.7. Dr. Heilbut was also publicly served with the Defamation Action summons and complaint "at a scientific conference, while he was presenting [a] poster challenging certain scientific claims by Dr. Burns, Dr. Wang, and Cassava," which "required delivery of an entire box of materials" given the length of the complaint and the number of attached exhibits. FAC ¶ 109.

According to Plaintiffs, the Defamation Action resulted in "substantial damages," *id.* ¶ 214 — they allegedly "incur[red] hundreds of thousands of dollars in attorney's fees and

costs," *id.* ¶ 172; *see* CII ¶ 49, including "costs in responding to the subpoenas issued by Cassava in the Securities Action," FAC ¶ 173; *see* CII ¶ 50; lost "hundreds of hours" in connection with the Defamation Action and the instant action "that they would otherwise have spent . . . generating income for their respective businesses," FAC ¶ 174; lost employment opportunities and business relationships, *id.* ¶ 176-182; and were publicly harassed and threatened by Cassava and its supporters, FAC ¶ 114; CII ¶¶ 52-57, which resulted in reputational, psychological, and emotional harm, FAC ¶¶ 175, 177, 181; CII ¶ 51; *see also* FAC ¶ 114 ("[A]n anonymous group of Cassava investors . . . sent a letter to the DOJ petitioning it to open a criminal investigation into [Plaintiffs] based on the . . . allegations in the Defamation Action."); *accord* CII ¶ 58; *see* FAC ¶ 45 ("[I]n December 2021, Dr. Burns threatened Plaintiffs and other critics in a Facebook post that stated, in part: 'Sorry Adrian Heilbut. Sorry Jesse Brodkin. . . . Your days are numbered.'").

More broadly, Plaintiffs contend that Defendants' conduct in connection with the Defamation Action had a chilling effect on public criticism of Cassava in the scientific community. *See, e.g.*, FAC ¶ 95. For example, Plaintiffs allege that a publisher purportedly halted an ongoing investigation into "research misconduct associated with articles by Dr. Wang and Dr. Burns published in *Neuroscience* and *Neurobiology of Aging*" due to the pending Defamation Action. *Id.* ¶ 84; *see also id.* ¶ 85 (alleging, on information and belief, that "other journals likewise have refrained from taking such actions" for similar reasons). Plaintiffs also point to the events following *Science*'s publication of a purportedly "final" CUNY report on Dr. Wang's and Dr. Burns's potential research misconduct: after Defendants responded to the *Science* publication by "attempting to blame the investigation and its findings on Plaintiffs and other short sellers," CUNY purportedly "'paused' its review of Dr. Wang" and "declined to formally publish its final report," although "CUNY had already sent

it to the Office of Research Integrity at the U.S. Department of Health and Human Services." *Id.* ¶ 90; *see id.* ¶¶ 86-92; *see also id.* ¶ 93 ("[A]ccording to the report, CUNY retained an independent image consultant to examine the publications and materials provided by Dr. Wang, but after three months of work, the consultant 'precipitously withdrew their services, citing legal risks to themselves and their business.'").

## II. Procedural History

On August 6, 2024, Drs. Heilbut, Brodkin, and Milioris initiated this action, asserting one claim against Cassava for violation of the New York anti-SLAPP statute, *see* Dkt. 1, and on October 24, 2024, they filed their First Amended Complaint, which added causes of action for malicious prosecution and conspiracy and joined Barbier and Dr. Burns as defendants, *see* FAC. On December 2, 2024, Drs. Bredt and Pitt moved to intervene as plaintiffs, Dkt. 30, which the Court granted as unopposed on December 9, 2024, Dkt. 39. Drs. Bredt and Pitt filed their Complaint in Intervention on December 12, 2024, which incorporated the First Amended Complaint by reference where applicable. *See* CII ¶ 28 & n.2. On January 9, 2025, Defendants moved to dismiss the First Amended Complaint and Complaint in Intervention. *See* Dkt. 43; Dkt. 44 ("MTD FAC Br."); Dkt. 45; Dkt. 46 ("MTD CII Br."). Also on January 9, 2025, Defendants moved to stay discovery, Dkt. 47, which the Court denied on February 6, 2025, after hearing argument from the parties, Dkts. 56, 58. On February 13, 2025, Plaintiffs filed a joint memorandum of law in opposition to both motions to dismiss, Dkt. 59 ("Opp."), and on March 6, 2025, Defendants filed their consolidated reply, *see* Dkt. 65 ("Reply").

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 554, 570 (2007)).  On review of a motion to dismiss for failure to state a claim, courts must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff."  *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quoting *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016)).  Courts shall not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

As set forth in more detail below, the Court finds that Plaintiffs have plausibly stated claims for violation of the New York anti-SLAPP statute (Count One), malicious prosecution (Count Two), and civil conspiracy (Count Three).  The Court addresses each in turn.

### I.   Count One: Anti-SLAPP

"'SLAPP' is an acronym for 'strategic lawsuits against public participation.'"  *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022).  A number of states, including New York, "have enacted 'anti-SLAPP statutes' with the idea that they provide breathing space for free speech on contentious public issues," and "decrease the 'chilling effect' of certain kinds of libel litigation and other speech-restrictive litigation."  *La Liberte v. Reid*, 966 F.3d 79, 85 (2d Cir. 2020) (quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015)).  In 2020, the New York Legislature amended the state's thirty-year-old anti-SLAPP law "to broaden the applicable standards and to provide additional procedural rights to make those standards more effective."  *Carroll*, 590 F. Supp. 3d at 580; *see* 2020 N.Y. Sess. Laws ch. 250 (McKinney) (amending N.Y. Civil Rights Law §§ 70-a, 76-1, and N.Y. C.P.L.R. 3211(g)).

The anti-SLAPP law is codified across two sections of the New York Civil Rights Law and two subdivisions of the New York Civil Practice Law and Rules ("CPLR").  *Reeves*

*v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 21, 25 (App. Div. 2024); *see* N.Y. Civ. Rights Law §§ 70-a, 76-a; N.Y. C.P.L.R. 3211(g), 3211(h). As amended, section 70-a of the New York Civil Rights Law provides that "a defendant in an action involving public petition and participation, . . . may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action." N.Y. Civ. Rights Law § 70-a(1). A claimant's required showing under this provision depends on the relief sought:

> (a) costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to [CPLR 3211(g) and 3212(h)], that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law;

> (b) other compensatory damages may only be recovered upon an additional demonstration that the action involving public petition and participation was commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights; and

> (c) punitive damages may only be recovered upon an additional demonstration that the action involving public petition and participation was commenced or continued for the sole purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights.

*Id.* Among other things, section 76-a of the New York Civil Rights Law supplies the definition of an "action involving public petition and participation," which the 2020 amendments "substantially expanded." *Gottwald v. Sebert*, 220 N.E.3d 621, 631 (N.Y. 2023).

The two procedural provisions of the anti-SLAPP law, CPLR 3211(g) and 3212(h), are designed to facilitate the early dismissal of "baseless SLAPP suits" by "flip[ping] the burden of proof ordinarily applied" under state law to motions to dismiss and motions for summary judgment. *Reeves*, 218 N.Y.S.3d at 25. As amended, CPLR 3211(g) "creates an accelerated summary dismissal procedure" that applies when a defendant moves to dismiss a purported

SLAPP action for failure to state a claim. *Id.* at 22. If the movant demonstrates "that the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation," the burden then shifts to the nonmovant to demonstrate that it has a "substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." N.Y. C.P.L.R. 3211(g). If the nonmovant cannot make this showing, the motion to dismiss must be granted, and the movant is entitled to attorneys' fees and costs. *Id.*; *see Reeves*, 218 N.Y.S.3d at 22. CPLR 3212(h), which the 2020 amendments left unchanged, applies a similar burden-shifting framework to motions for summary judgment. If the movant demonstrates "that the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation," the nonmovant must demonstrate that it has "a substantial basis in fact and law or is supported by a substantial argument for an extension, modification or reversal of existing law." N.Y. C.P.L.R. 3212(h). Absent such a demonstration, the motion for summary judgment must be granted, and the movant is entitled to attorneys' fees and costs. *Id.*; *see Reeves*, 218 N.Y.S.3d at 25 n.1.

With this background in mind, the Court now turns to Defendants' three arguments for dismissal of Plaintiffs' anti-SLAPP claim. They argue that: (1) "New York's Anti-SLAPP law cannot apply to a federal complaint" or in federal court; (2) "New York's Anti-SLAPP law allows only 'defendants' to bring claims, which [Plaintiffs] no longer are"; and (3) "Plaintiffs have not alleged and cannot allege that Cassava's Defamation Action lacked a substantial basis in fact and law." MTD CII Br. at 6; *see id.* at 8.[4] The Court addresses each argument in turn and rejects all three.

---

[4] Both motions to dismiss raise the same legal arguments and are cited interchangeably herein unless otherwise noted.

### A.    New York's Anti-SLAPP Law Can Apply in Federal Court

The Court will first address the question of whether a party may bring a New York

anti-SLAPP suit in federal court.

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law

and federal procedural law." *Gasperini v. Ctr. for Hums., Inc.*, 518 U.S. 415, 427 (1996); *see*

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). "[P]rocedural law is 'the judicial process for

enforcing rights and duties recognized by substantive law,' while substantive law is 'the law

that governs the rights and obligations of individuals within a given jurisdiction.'" *Gonzalez*

*v. United States*, 80 F.4th 183, 193 (2d Cir. 2023) (quoting *Corley v. United States*, 11 F.4th

79, 85 (2d Cir. 2021)). When "a Federal Rule of Civil procedure 'answer[s] the same

question'" as a state law or rule, "the Federal Rule governs, unless it violates the Rules

Enabling Act." *La Liberte*, 966 F.3d at 87 (quoting *Abbas*, 783 F.3d at 1333); *accord Shady*

*Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (plurality

opinion). In *La Liberte v. Reid,* the Second Circuit applied this test to assess whether the

"special motion to strike" mechanism in California's anti-SLAPP statute could be employed

in federal court. 966 F.3d at 88. Under California law, the special motion to strike

"provide[s] 'an efficient procedural mechanism for the early and inexpensive dismissal of

nonmeritorious [SLAPP] claims," and "must be granted 'unless the court determines that the

plaintiff has established that there is a probability that the plaintiff will prevail on the claim.'"

*Id.* at 85 (first quoting *Annette F. v. Sharon S.*, 15 Cal. Rptr. 3d 100, 108 (Cal. Ct. App. 2004);

and then quoting Cal. Civ. Proc. Code § 425.16(b)(1), (f)). If the motion is granted, the

movant "'shall be entitled' to recover attorney's fees and costs." *Id.* (quoting Cal. Civ. Proc.

Code § 425.16(c)(1)). Because "the special motion to strike in California's anti-SLAPP

statute . . . 'establishes the circumstances under which a court must dismiss a plaintiff's claim

before trial,'" the Second Circuit "conclude[d] that [it] the answers the same question as Federal Rules 12 and 56," *id.* at 87 (citing *Abbas*, 783 F.3d at 1333-34), both of which "comply with the Rules Enabling Act," *id.* at 88 (quoting *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1357 (11th Cir. 2018)). Thus, the court held, "federal courts must apply Rules 12 and 56 instead of California's special motion to strike." *Id.* In reaching this holding, the Second Circuit distinguished *Adelson v. Harris*, which held that certain provisions of Nevada's anti-SLAPP law could be applied in federal court because they were substantive in nature. *See* 774 F.3d 803, 809 (2d Cir. 2014). In contrast, California's special motion to strike had procedural effects that conflicted with Rules 12 and 56, rendering *Adelson* inapposite. *See La Liberte*, 966 F.3d at 87-88, 88 n.3.

Against this backdrop, Defendants argue that section 70-a of New York's anti-SLAPP law cannot apply in federal court because "[t]he substantial basis standard in [section 70-a] conflicts with Federal Rules 12 and 56." *See* MTD CII Br. at 8 (citing *Nat'l Acad. Tel. Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 417, 431-32 (S.D.N.Y. 2021)). While recognizing the split of authority in this District, the Court disagrees.

As a threshold matter, the Court acknowledges, as outlined above, that New York's anti-SLAPP law contains provisions with procedural effects that appear to conflict with Rules 12 and 56. *See* N.Y. C.P.L.R. 3211(g) (placing burden on nonmovant to show claim has substantial basis in law to avoid dismissal); N.Y. C.P.L.R. 3212(h) (placing burden on nonmovant to show claim has substantial basis in fact and law to avoid summary judgment). But those procedural mechanisms are not at issue here. New York's anti-SLAPP regime also provides for a substantive cause of action, "codified at section 70-a," that allows SLAPP defendants to "bring an affirmative anti-SLAPP suit" for damages without reliance on state procedural rules. *Margolies v. Rudolph*, No. 21-cv-02447 (SJB), 2022 WL 2062460, at *9

(E.D.N.Y. June 6, 2022); *Goldman v. Reddington*, No. 18-cv-03662 (RPK) (ARL), 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021) ("[T]he provision creating a cause of action also makes clear that an anti-SLAPP litigant may obtain costs and attorney's fees without using those procedures."); *Dynamic Energy Sols., LLC v. Pinney*, 387 F. Supp. 3d 176, 184 n.1 (N.D.N.Y. 2019) ("Plaintiff did not file its anti-SLAPP claim as a counterclaim in the underlying state-court case, but as an independent cause of action in federal court. That sort of filing is contrary to the normal procedure in such cases, though it is permitted by the statute."); *see* N.Y. Civ. Rights Law § 70-a(1)(a) ("[Damages] shall be recovered upon a demonstration, *including* an adjudication pursuant to [CPLR 3211(g) and 3212(h)], that the [SLAPP action] was commenced or continued without a substantial basis . . . ." (emphasis added)). Plaintiffs' anti-SLAPP claim is based on this substantive cause of action, and not on any procedural mechanisms available to state-court litigants pursuant to the New York CPLR.

The availability of an independent cause of action under section 70-a is evident from the law's plain text and is confirmed by the statute's legislative history and underlying policy. *See* N.Y. Civ. Rights Law § 70-a(1) ("A defendant in an action involving public petition and participation . . . may maintain an *action*, claim, cross claim or counterclaim . . . ." (emphasis added)); Bill Jacket, Assemb. 4299, 215th Leg., Reg. Sess., at 6, 1992 N.Y. Laws 3546 ("[T]he bill . . . authorizes a defendant in a SLAPP suit to advance a *separate action*, or a claim, cross-claim or counterclaim . . . ." (emphasis added)); *see also Action*, *Black's Law Dictionary* (12th ed. 2024) ("A civil or criminal judicial proceeding; esp., LAWSUIT."). As one state court put it: "That the Legislature established a separate cause of action for anti-SLAPP remedies merely reflects the common will of New York that anti-SLAPP remedies be available in federal court (where awarding anti-SLAPP remedies through procedural rules

18

may not carry through diversity procedure) as well as state court." *Isaly v. Garde*, 213
N.Y.S.3d 852, 862 (Sup. Ct. 2024).

To sum up, New York's anti-SLAPP law "is doing no procedural work" in the instant
case; "it is merely defining the substantive standard for entitlement to" a state-law remedy.
*Bobulinski v. Tarlov*, --- F. Supp. 3d ---, 2024 WL 4893277, at *14 (S.D.N.Y. Nov. 26, 2024).
Plaintiffs are not relying on the New York anti-SLAPP regime's expedited motion-to-dismiss
or summary-judgment mechanisms — they are asserting affirmative claims based on a
substantive cause of action created by the New York Legislature, a routine exercise in federal
diversity cases. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 142 n.2 (2d Cir.
2013) ("[A] federal court sitting in diversity must apply substantive law supplied . . . by state
legislation . . . ."); *cf. Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 422
(S.D.N.Y. 2019) ("Simply put, it does not violate the Supremacy Clause for a federal court
sitting in diversity to apply state substantive law." (citing *Erie*, 304 U.S. at 78)).  In this
context, section 70-a's "substantial basis" language does not supply a pleading standard — it
is a substantive provision that "impacts the 'rights and obligations of individuals within a
given jurisdiction'" and does not answer the same question as Rules 12 or 56.  *Gonzalez*, 80
F.4th at 194 (quoting *Corley*, 11 F.4th at 85); *see Max v. Lissner*, No. 22-cv-05070 (VEC),
2023 WL 2346365, at *8 (S.D.N.Y. Mar. 3, 2023) (holding that the plaintiff could bring her
New York anti-SLAPP claim in federal court because, among other reasons, she was not
invoking its heightened pleading standard).  Accordingly, "a federal court sitting in diversity
must apply" section 70-a "because it is a substantive, rather than a procedural, provision."
*Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (citing *Adelson*, 744 F.3d at
809) (applying section 76-a, which, in relevant part, "requires public figures . . . to prove
actual malice by clear and convincing evidence" in defamation cases).

Defendants attempt to distinguish *Max v. Lissner* and *Dynamic Energy Solutions, LLC v. Pinney*, both of which reasoned that a section 70-a claim could be brought in federal court as an independent cause of action. *See Max*, 2023 WL 2346365, at *8-9; *Pinney*, 387 F. Supp. 3d at 183 n.1, 189. Defendants argue that those cases involved underlying state actions and here, "Plaintiffs seek to subvert the federal rules by applying a heightened, state-law pleading standard to a federal complaint." MTD CII Br. at 9. The Court is not persuaded. Plaintiffs' anti-SLAPP claim in this action is not serving to subvert the federal rules by retroactively applying a heightened pleading standard to Cassava's complaints in its earlier federal Defamation Action. Rather, section 70-a is supplying the substantive standard for Plaintiffs' ability to recover damages under a state-law cause of action now brought in federal court, and the Court is applying federal procedural rules to evaluate that claim. Holding that a federal court could not entertain an anti-SLAPP claim based on a federal complaint would be akin to holding that a federal court could not entertain a malicious prosecution claim based on an underlying federal complaint. That would be plainly improper. *See Adelson*, 417 F. Supp. 3d at 424 ("[F]ederal courts have readily imposed state-law tort liability on litigants bringing abusive or meritless claims in federal court." (citing *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 393 (3d Cir. 2002))); *U.S. Express Lines Ltd.*, 281 F.3d at 393 ("[T]he Federal Rules of Civil Procedure do not preempt claims for abuse of process and similar torts providing relief for misconduct in federal litigation."); *see also Bobulinski*, 2024 WL 4893277, at *14 ("If federal courts refuse to apply [section 70-a], . . . [d]efendants in federal courts would have to pay the expenses of defending meritless SLAPP suits out of their own pockets. Meanwhile, defendants in state court would receive the fees intended for them by their state legislature.").

For these reasons, the Court holds that a freestanding claim based on the substantive cause of action created by New York's anti-SLAPP statute may be brought in federal court. Although some courts in this District have come to a contrary conclusion, those decisions did not "distinguish between the 'substantial basis' standard as a procedural mechanism for dismissal — which conflicts with Rule 12 — and the 'substantial basis' standard as a substantive standard for entitlement to [damages] — which does not conflict with any federal Rule." *Bobulinski*, 2024 WL 4893277, at *17 n.24 (emphases omitted) (distinguishing *Nat'l Acad. Tel. Arts & Scis., Inc.*, 551 F. Supp. 3d at 431-32; *Carroll*, 590 F. Supp. 3d at 583-85; and *Kesner v. Buhl*, 590 F. Supp. 3d 680, 700-01 (S.D.N.Y. 2022), *aff'd sub nom. Kesner v. Dow Jones & Co.*, No. 22-875, 2023 WL 4072929 (2d Cir. June 20, 2023) (summary order)).

### B.     Plaintiffs Are "Defendants" Under Section 70-a

Because New York's anti-SLAPP law establishes a cause of action for a "*defendant* in an action involving public petition and participation," N.Y. Civ. Rights Law § 70-a(1) (emphasis added), Defendants contend that the cause of action is available only to current defendants, which Plaintiffs are not. *See* MTD CII Br. at 9-11. This argument is without merit.

As a threshold matter, the Court is aware of no precedent that would support Defendants' position. Defendants cite only to *Pinney* (which they previously attempted to distinguish), but that case is inapposite. In that case, the court dismissed the plaintiff's anti-SLAPP claim because the underlying state-court dispute on which the claim was based "d[id] not fall within the intended purview of the [pre-2020] SLAPP Statute" — not because the underlying state-court dispute had concluded. 387 F. Supp. 3d at 189. The *Pinney* court's

holding in no way rested on the fact that the defendant was a former defendant rather than a current defendant, as Defendants suggest. *Id.*

Adopting Defendants' proposed textual restriction would also run contrary to the 2020 amendment's express purpose: to "protect citizens' from frivolous litigation that is intended to silence their exercise of the rights of free speech and petition about matters of public interest." Bill Jacket, Assemb. 5991-A, 243rd Leg., Reg. Sess., at 5, 2020 N.Y. Sess. Laws ch. 250. Reading such a limitation into the word "defendant" would arbitrarily restrict the law's protections and substantive rights to only some defendants, narrowing the scope of a statute that the Legislature sought to "broadly widen[]" in 2020. *Aristocrat Plastic Surgery, P.C. v. Silva*, 169 N.Y.S.3d 272, 275 (App. Div. 2022) (quoting Bill Jacket, Assemb. 5991-A, at 5). Moreover, extending section 70-a's cause of action to only current defendants would encourage circumvention of the statute's aims by allowing SLAPP plaintiffs to dismiss their frivolous suits before defendants could exercise the substantive rights afforded to them by the Legislature. Finally, construing "defendant" to mean only "current defendant" would also make little sense in light of the surrounding text: as noted above, section 70-a allows for the maintenance of not just an anti-SLAPP counterclaim, but also an independent "action" or "claim," which indicates that the law was meant to extend a cause of action to more individuals than those actively defending an ongoing suit.

C. **Plaintiffs Have Adequately Pleaded That the Defamation Action Lacked a Substantial Basis in Fact and Law**

In order to state a claim for relief under section 70-a, Plaintiffs must allege sufficient factual matter to support an inference that the Defamation Action "involve[ed] public petition and participation" and "was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1)(a); *see Max*, 2023 WL 2346365, at *9. Defendants do

not dispute that the action involved public petition and participation; rather, they argue that Plaintiffs have not pleaded facts that satisfy the "substantial basis" prong. *See* MTD CII Br. at 11-15. The Court disagrees.

"'[S]ubstantial basis' under the anti-SLAPP law means 'such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact.'" *Reeves*, 218 N.Y.S.3d at 22 (quoting *Smartmatic USA Corp. v. Fox Corp.*, 183 N.Y.S.3d 402, 404 (App. Div. 2023)). Although "[t]he term 'substantial basis' is not defined in the anti-SLAPP law and otherwise has no single recognized meaning," *id.* at 27, the New York Appellate Division, First Department, recently held that "a complaint which fails to state a claim under CPLR 3211(a)(7) necessarily lacks a 'substantial basis in law' for purposes of" the anti-SLAPP law, *id.* at 24 (citing *215 W. 84th St. Owner LLC v. Bailey*, 191 N.Y.S.3d 368, 369 (App. Div. 2023)); *accord Bobulinski*, 2024 WL 4893277, at *13 ("Logically, a complaint that fails to state a claim is, *a fortiori*, 'without a *substantial* basis in fact and law and could not be supported by a *substantial* argument for the extension, modification or reversal of existing law.'" (quoting N.Y. Civ. Rights Law § 70-a(1))); *see Bailey*, 191 N.Y.S.3d at 369 (concluding that an "action was 'without a substantial basis in fact and law,' as demonstrated by the court's dismissal of the complaint for failure to state a claim" (quoting N.Y. Civ. Rights Law § 70-a(1)(A))). "In other words, whatever *else* the phrase 'without a substantial basis in fact and law' means, it is certainly triggered by the failure to state a claim." *Bobulinski*, 2024 WL 4893277, at *13. By this reasoning, the present action has adequately pleaded that the Defamation Action lacked a substantial basis in fact and law because Cassava's first amended complaint was dismissed for failure to state a claim.

To be sure, "[t]heoretically there might be some daylight between the CPLR 3211(a)(7) standard and the Rule 12(b)(6) standard as a result of *Twombly* and *Iqbal*," but the

two provisions are generally "parallel." *Bobulinski*, 2024 WL 4893277, at *13 n.17 (collecting cases). In the Defamation Action, Cassava's first amended complaint was dismissed because it failed to plead actual malice, "a required element for a defamation claim brought by a public official," which would have warranted dismissal in state court as well. *Reszka v. Collins*, 25 N.Y.S.3d 457, 460 (App. Div. 2016); *see Audthan LLC v. Nick & Duke, LLC*, 244 N.E.3d 1059, 1066 (N.Y. 2024) ("Dismissal under CPLR 3211(a)(7) is warranted . . . if [the plaintiff] 'fails to assert facts in support of an element of the claim.'" (quoting *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E. 3d 1159, 1162 (N.Y. 2017))). *Compare Cassava I*, 2024 WL 1347362, at *24 ("[Cassava]'s copious allegations fail to rise to the 'accumulation of the evidence and appropriate inferences' necessary to adequately plead actual malice." (quoting *Celle v. Filipino Rep. Enters.*, 209 F.3d 163, 183 (2d Cir. 2000))), *with Friedman v. Rice*, 5 N.Y.S.3d 816, 825 (Sup. Ct. 2015) ("Conclusory allegations of malice, or the failure to allege facts in the complaint from which malice can be inferred, warrants dismissal of the complaint for failure to state a cause of action." (collecting cases)). Drawing all reasonable inferences in Plaintiffs' favor at this stage, the Court sees no indication in *Cassava I* that the defamation action would have "survive[d] dismissal *but for* the plausibility requirement of *Twombly* and *Iqbal*." *Bobulinski*, 2024 WL 4893277, at *13 n.17.

Defendants argue that the Defamation Action did not lack a substantial basis because the *Cassava I* court granted Cassava leave to amend the Defamation FAC to add allegations of actual malice as to 315 statements that it adequately pleaded were actionable. MTD CII Br. at 12 (citing *Cassava I*, 2024 WL 1347362, at *29). The Court disagrees. Being granted leave to amend does not change the fact that Cassava's initial complaint failed to state a claim as pleaded. *Reeves v. Associated Newspapers, Ltd.* is again instructive. There, the state trial

court had found that the plaintiff's "complaint was not frivolous, but nonetheless did not state a claim." 218 N.Y.S.3d at 31 n.7. The Appellate Division still held that the defendant was entitled to attorneys' fees under the anti-SLAPP statute because "surpass[ing] the low standard of nonfrivolousness" was not enough to show that the plaintiff's complaint had a substantial basis. *Id.* Similar logic applies in the instant case: Cassava cleared the low standard of nonfutility, for purposes of being granted leave to amend, but nonetheless "failed to adequately plead actual malice" and "failed to state a claim for defamation." *Cassava I*, 2024 WL 1347362, at *22; *cf. EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005) ("Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss."). It may be true that the *Cassava I* court "conducted a complex legal analysis before reaching its holding," MTD CII Br. at 13, but that "complex legal analysis" still resulted in dismissal for failure to state a claim.

Cassava's filing of a second amended complaint in the Defamation Action does not change this calculus. Section 70-a provides that damages may be recovered from "any person who commenced or continued" a SLAPP action. N.Y. Civ. Rights Law § 70-a(1). The Defamation FAC's dismissal for failure to state a claim indicates that the Defamation Action was commenced without a substantial basis and, at the very least, was continued without a substantial basis until Cassava filed its second amended complaint. *Cf. Sebert*, 220 N.E.3d at 634 (permitting defendant to seek damages under section 70-a for a period spanning some, but not all, of the pendency of the alleged SLAPP suit). In any case, to plead actual malice, Cassava needed to provide additional "individualized allegations regarding the context of each" challenged statement. *Cassava I*, 2024 WL 1347362, at *29. Plaintiffs allege that Cassava's second amended complaint in the Defamation Action "contained essentially no new content, instead elaborately repackaging and reordering the same allegations that had already

been found insufficient to plead actual malice by Judge Woods and Magistrate Judge Wang." FAC ¶ 70; *see* Defamation SAC ¶¶ 544-621. Thus, Plaintiffs have adequately pleaded that Defendants had at least commenced, if not continued, a SLAPP action without a substantial basis in fact and law.

*    *    *

Having found that Plaintiffs' section 70-a claim may be heard in federal court, that Plaintiffs are "defendants" for purposes of the anti-SLAPP statute, and that Plaintiffs have adequately pleaded that the Defamation Action lacked a substantial basis in fact and law, the Court will allow Plaintiffs' anti-SLAPP claim to proceed.

## II. Count Two: Malicious Prosecution

Under New York law, "[t]he elements of the tort of malicious prosecution of a civil action are (1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury." *Skarzynski v. ABM Mgmt. Corp.*, 192 N.Y.S.3d 221, 223 (App. Div. 2023) (quoting *Teller v. Galak*, 80 N.Y.S.3d 106, 107 (App. Div. 2018)); *see Actava TV, Inc. v. Joint Stock Co. "Channel One Russ. Worldwide"*, 412 F. Supp. 3d 338, 351 (S.D.N.Y. 2019) (similar); *see also Thomas v. G2 FMV, LLC*, 48 N.Y.S.3d 358, 361 (App. Div. 2017) ("[A] complaint states [a] cause[] of action for malicious prosecution . . . as against the individual defendants who served as corporate officers by alleging that those defendants participated in the commission of the tort[]." (citing *Bd. of Managers of S. Star v. WSA Equities, LLC*, 30 N.Y.S.3d 876, 877 (App. Div. 2016))).

Defendants argue that "Plaintiffs cannot show a lack of probable cause, existence of malice, or special injury." MTD CII Br. at 15. The Court disagrees and finds that Plaintiffs have plausibly alleged these elements.

## A.      Probable Cause

"The probable cause standard does not require the plaintiff to show that the defendant had no cause to commence the prior action, but rather, that the defendant commenced the prior action despite not having any reasonable cause that 'would persuade a [person] of ordinary care and prudence to believe in the truth of the charge.'" *Sparrow Fund Mgmt., LP v. Mimedx Grp., Inc.*, No. 18-cv-04921 (PGG) (KHP), 2019 WL 8955307, at *5 (S.D.N.Y. Nov. 7, 2019) (quoting *Facebook, Inc. v. DLA Piper LLP (US)*, 23 N.Y.S.3d 173, 177 (App. Div. 2015)), *report and recommendation adopted*, 2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020).  To satisfy this element, "a plaintiff must allege that . . . there was 'an entire lack of probable cause in the prior proceeding.'" *Facebook, Inc.*, 23 N.Y.S.3d at 177 (quoting *Engel v. CBS, Inc.*, 711 N.E.2d 626, 631 (N.Y. 1999)).  "Because obviously less in the way of grounds of belief will be required to justify a reasonable [person] in bringing a civil rather than a criminal suit, when the underlying action is civil in nature, the want of probable cause must be patent." *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 290 (E.D.N.Y. 2014) (quoting *Butler v. Ratner*, 619 N.Y.S.2d 871, 874 (App. Div. 1994)).

"[T]he issuance of a temporary injunction or similar judicial recognition of the merit of the underlying case creates a presumption of probable cause and places upon the plaintiff the burden of pleading facts sufficient to overcome it." *Kurtz v. Hansell*, 664 F. Supp. 3d 438, 452 (S.D.N.Y. 2023) (alteration in original) (quoting *Emanuel v. Griffin*, No. 13-cv-01806 (JMF), 2015 WL 1379007, at *9 (S.D.N.Y. Mar. 25, 2015)), *aff'd sub nom. Kakar Kurtz v. Lawson*, No. 23-7548, 2025 WL 39860 (2d Cir. Jan. 7, 2025) (summary order).  Along these lines, Defendants argue that Plaintiffs have not established that Cassava lacked probable cause to bring the Defamation Action because the *Cassava I* court "recogniz[ed] the merits of [its] claims" by granting it leave to amend.  MTD CII Br. at 16-17.  The Court declines to extend

the probable-cause presumption that far — a court granting leave to amend a complaint that failed to state a claim is certainly not a "recognition of the merit of the underlying case" on par with "[t]he issuance of a temporary injunction." *Kurtz*, 664 F. Supp. 3d at 452 (quoting *Emanuel*, 2015 WL 1379007, at *9). Defendants rely on a handful of decisions that "dismiss[ed] a malicious prosecution claim where 'at least some causes of action in the underlying complaint' had 'potential merit'" based on a prior judicial determination in a civil case. MTD CII Br. at 17 (quoting *Black v. Green Harbour Homeowners' Ass'n, Inc.*, 829 N.Y.S.2d 764, 765 (App. Div. 2007)). But in those cases, the favorable judicial determinations in the underlying actions involved findings of a triable issue of fact on summary judgment or in similar circumstances. *See Black*, 829 N.Y.S.2d 764 at 765; *Fink v. Shawangunk Conservancy, Inc.*, 790 N.Y.S.2d 249, 251 (App. Div. 2005); *Pirro v. Bd. of Trs. of Vill. of Groton*, 164 N.Y.S.3d 699, 704 (App. Div. 2022)); *Levitin v. Miller*, No. 92-cv-00520 (KMW), 1994 WL 376078, at *5 (S.D.N.Y. July 15, 1994). The court made no such finding in *Cassava I* and found that no claim was even stated.

Even if being granted leave to amend were enough to create a presumption of probable cause, that presumption "may be rebutted by a showing that the prosecution was premised on 'misrepresented or falsified evidence' or on other 'bad faith' actions." *Kurtz*, 2025 WL 39860, at *1 (quoting *Boyd*, 336 F.3d at 76). The Court finds that Plaintiffs have pleaded sufficient factual matter to support a plausible inference of bad faith. Plaintiffs allege, for example, that Cassava drafted a complaint that attached and incorporated more than a hundred exhibits and totaled nearly 1600 pages (and violated Rule 8) in order to harass and intimidate them; served Dr. Heilbut with a large box of those materials at a public scientific conference; attacked Plaintiffs' motives and credibility in the complaint and amplified those allegations online and in other publications; filed a second amended complaint that largely reordered its

prior allegations without attempting to cure any deficiencies; refused to consent to filing extensions or to meet and confer in good faith; attempted to circumvent Judge Wang's discovery stay by serving broad and invasive third-party subpoenas on Plaintiffs in an unrelated securities action; and dismissed the Defamation Action on the day its opposition to the motion to dismiss the Defamation SAC was due.

In any case, the Court finds that Plaintiffs have plausibly alleged that Cassava could not have reasonably expected to prevail in the Defamation Action because it did not have the data or records to refute Plaintiffs' allegedly defamatory statements, it knew that the scientific claims that Plaintiffs criticized had not been corroborated, and it was aware of the research misconduct that Plaintiffs had accused them of committing. *See supra* pp. 7-10; *cf. Actava TV, Inc.*, 412 F. Supp. 3d at 352 (finding that plaintiffs satisfied probable-cause element by "alleg[ing] that [d]efendants knew their [action] would not succeed, yet filed it anyways"); *Strumpf v. Asdourian*, No. 110141/06, 2006 WL 6348824 (N.Y. Sup. Ct. Dec. 12, 2006) ("[Plaintiff] claims that defendants . . . were aware that they lacked a viable claim, yet nonetheless maintained the Underlying Action. Taken as true, [these] allegations would satisfy the lack-of-probable-cause element of a malicious prosecution action."). Of course, Defendants dispute that they lacked probable cause to bring the Defamation Action, but they do not grapple with Plaintiffs' allegations in detail; rather, they primarily rely on the fact that "that the district court held for Cassava in regard to the 315 statements in the Defamation Action" by granting it leave to amend. MTD CII Br. at 17-18. But as previously explained, this is not enough to create a presumption of probable cause and would still be rebuttable by Plaintiffs' allegations of bad faith.

In sum, the Court finds that Plaintiffs have pleaded sufficient factual matter to support an inference that the Defamation Action was brought without probable cause.

### B.    Actual Malice

The Court also finds that Plaintiffs have plausibly alleged that the Defamation Action was brought with actual malice, that is, "a wrong or improper motive, something other than a desire to see the ends of justice served." *Seagrape Invs. LLC v. Tuzman*, No. 21-cv-07517 (RA), 2024 WL 4337448, at *19 (S.D.N.Y. Sept. 26, 2024) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d at 573 (2d Cir. 1996); *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994)).  As noted above, Plaintiffs have made a sufficient showing at this stage to support an inference that Cassava brought the Defamation Action to harass and intimidate plaintiffs and to suppress criticism from the scientific community.  Notwithstanding those allegations, Plaintiffs' burden to establish actual malice "is easily satisfied because, at the pleadings stage, 'lack of probable cause generally raises an inference of malice.'" *Kurtz*, 2021 WL 1143619, at *16 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997)); *accord Kanciper v. Lato*, 989 F. Supp. 2d 216, 237 (E.D.N.Y. 2013).

### C.    Special Injury

 "New York Law requires that the plaintiff in a malicious [civil] prosecution action plead 'special injury' . . . ." *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 328 (S.D.N.Y. 2008).  "New York has not strictly limited special injury to the imposition of provisional remedies," *Engel*, 711 N.E.2d at 631, "such as attachment, arrest or injunction," *Molinoff v. Sassower*, 471 N.Y.S.2d 312, 314 (App. Div. 1984).  Rather, the plaintiff must plead "some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." *Sankin*, 545 F. Supp. 2d at 328 (quoting *Engel*, 711 N.E.2d at 631).  "This standard strikes the balance required between discouraging excess litigation on the one hand and prohibiting the malicious use of the courts on the other," *Engel*, 711 N.E.2d

at 631, and is "analyze[d] . . . on a case-by-case basis," *Zahrey v. City of New York*, No. 98-cv-04546 (DCP), 2009 WL 1024261, at *15 (S.D.N.Y. Apr. 15, 2009) (collecting cases).

"[D]amages in the form of lost business . . . may constitute special injury so long as they are linked to the underlying action." *Sparrow Fund Mgmt., LP.*, 2019 WL 8955307, at *6 (citing *Dudick v. Gulyas*, 716 N.Y.S.2d 407, 410 (App. Div. 2000)); *accord Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11-cv-03327 (ER), 2013 WL 417406, at *14 (S.D.N.Y. Feb. 4, 2013)). Several Plaintiffs have pleaded such damages. Dr. Milioris negotiated and signed a three-year employment agreement with a major drug manufacturer in Greece, but after Cassava commenced the Defamation Action, the employer terminated the agreement, "expressly citing concerns about the attention and bad publicity caused by the Defamation Action." FAC ¶ 176. Dr. Heilbut abandoned his growing equity research and consulting business, which was "highly dependent on discretion and confidentiality in the exchange of information and analysis," *id.* ¶ 180, after having lost at least one client that "feared becoming [a] target[] of discovery in the Defamation Action," *id.* ¶ 179. Dr. Brodkin "lost valuable investment opportunities worth tens of thousands of dollars" due to reputational harm resulting from the Defamation Action and "suffered a sharp reduction in his income in 2023 and 2024 relative to 2022," which was when the Defamation Action was commenced. *Id.* ¶ 182. At the pleading stage, these allegations of lost business are sufficient to establish special injury. Although "vague allegations of reputational loss" are insufficient to satisfy New York's special-injury requirement, Drs. Milioris, Heilbut, and Brodkin have all alleged "that the consequences, in terms of lost business, have marred, in [a] specific and meaningful way, [their] financial opportunities." *Engel*, 711 N.E.2d at 632.

Drs. Pitt and Bredt have also plausibly alleged that they suffered concrete harms beyond the ordinary "demands of defending a lawsuit" in satisfaction of the special-injury

requirement.  *Sankin*, 545 F. Supp. 2d at 328 (quoting *Engel*, 711 N.E.2d at 631).  For example, the Defamation Action allegedly hindered Dr. Pitt's career advancement at Weil Cornell Medical College.  CII ¶ 55.  Although this assertion is somewhat vague, it is supported by particularized allegations that Cassava supporters lodged complaints with Dr. Pitt's employers and their donors, accusing Dr. Pitt of poor moral character and professional misconduct "in connection with the submission of the CP."  *Id.* ¶ 54.  Likewise, Dr. Bredt has experienced "professional challenges" in his role as the Chief Scientific Officer of Rapport Therapeutics ("Rapport").  *Id.* ¶ 57.  While this allegation is also not particularly specific, it is substantiated by the CII's assertions that Barbier "called investment bankers during Rapport's IPO process . . . , alleging that [Dr. Bredt] had behaved without integrity," *id.*; that Cassava supporters have repeatedly and publicly accused Dr. Bredt "of lacking professional integrity," *id.*, and medical misconduct, *id.* ¶ 53; and that Rapport "has been forced to respond to extensive inquiries concerning the 'Cassava Sciences situation,'" *id.* ¶ 56.  Drawing all inferences in Dr. Bredt's favor at this early stage of litigation, the Court finds it plausible that the Defamation Action harmed his company and its relations with investors during the IPO process.  Dr. Bredt also alleges that he "has been doxed by thousands of posts on X [formerly Twitter] and other websites [by Cassava investors and supporters] that reveal his home address and characterize him as a 'thief' or a 'devil,'" which "continues to create fear and anxiety for Dr. Bredt and his family."  *Id.* ¶ 52.  This rises beyond the typical psychological burdens of defending a lawsuit.

Defendants argue that the actions of Cassava's supporters cannot be attributed to the company or its agents, *see* MTD CII Br. at 20-21, but Plaintiffs have plausibly alleged that those supporters were echoing the criticisms that Cassava included in the Defamation Action complaints and that Defendants amplified and continued online and in other publications.  The

Court finds this sufficient at the pleading stage to demonstrate that Dr. Bredt's and Dr. Pitt's alleged special injuries were "the deleterious consequences strongly desired by [Defendants] in bringing" the Defamation Action. *Engel,* 711 N.E.2d at 632; *cf. Chisolm-Mitchell v. Ahmed*, No. 20-cv-03434, 2021 WL 512460, at *4 (E.D.N.Y. Feb. 11, 2021) ("[B]ecause Plaintiff has alleged concrete harms . . . beyond the mere costs of defending against the proceeding and because a malicious prosecution claim is not likely to alter or expand the scope of discovery in this case, the Court allows Plaintiff to proceed on a malicious prosecution claim." (footnote omitted) (collecting cases)).

*       *       *

Contrary to Defendants' contentions, Plaintiffs have plausibly alleged that the Defamation Action lacked probable cause, was brought with actual malice, and resulted in special injury. Because the remaining elements are undisputed (and nonetheless satisfied), the Court finds that Plaintiffs have stated a claim for malicious prosecution.

## III.   Count Three: Civil Conspiracy

"Although an independent cause of action for civil conspiracy is not recognized in [New York], a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." *Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 187 N.Y.S.3d 702, 707 (App. Div. 2023) (quoting *Faulkner v. City of Yonkers*, 963 N.Y.S.2d 340, 341 (App. Div. 2013)); *accord Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 688 (S.D.N.Y. 2023); *Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009). "To assert a civil conspiracy claim, the complaint must allege [1] a cognizable cause of action, [2] agreement among the conspirators, [3] an overt act in furtherance of the agreement,

[4] intentional participation by the conspirators in furtherance of a plan or purpose, and

[5] damages." *Kovkov v. Law Firm of Dayrel Sewell, PLLC*, 119 N.Y.S.3d 849, 849-50 (App. Div. 2020) (citing *Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585, 588 (App. Div. 2010)); *accord ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478-79 (S.D.N.Y. 2017). The Court has already found that Plaintiffs adequately pleaded causes of action for violation of the anti-SLAPP statute and malicious prosecution. Defendants do not dispute the last three elements of civil conspiracy, but argue that Plaintiffs have failed to demonstrate the existence of an agreement and that Plaintiffs' civil conspiracy claim is barred by the intracorporate conspiracy doctrine. MTD CII Br. at 22. The Court is not persuaded on either ground and finds that Plaintiffs have adequately pleaded the existence of a civil conspiracy.

### A.     Intracorporate Conspiracy Doctrine

"Under the intracorporate conspiracy doctrine, the officers, agents, and employees of a single corporate entity, . . . acting within the scope of [their] employment, are legally incapable of conspiring together." *Reich v. Lopez*, 38 F. Supp. 3d 436, 463 (S.D.N.Y. 2014) (quoting *Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007)), *aff'd*, 858 F.3d 55 (2d Cir. 2017); *accord King v. City of New York*, 581 F. Supp. 3d 559, 577 (S.D.N.Y. 2022) ("This doctrine 'provides that a corporation or public entity generally cannot conspire with its employees or agents as all are considered a single entity.'" (quoting *Everson v. N.Y.C. Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002))), *aff'd*, No. 22-231, 2023 WL 2398679 (2d Cir. Mar. 8, 2023) (summary order). Although this doctrine typically applies in federal antitrust and civil-rights cases, *Reich*, 38 F. Supp. 3d at 463, "there is no reason not to apply the doctrine to New York state conspiracy claims as it is rooted in the New York state common law," *id.* at 464 (citing *Bereswill v. Yablon*, 160 N.E.2d 531, 533 (N.Y. 1959)); *see Bereswill*, 160 N.E.2d at 533 ("To say such a relationship affords a basis for a conspiracy is

much the same as saying an individual or a corporation can conspire with himself or itself. This cannot be done and a complaint so drawn is legally insufficient.").

"An exception to the intracorporate conspiracy doctrine allows suits against 'individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity.'" *Dowd v. DeMarco*, 314 F. Supp. 3d 576, 588 (S.D.N.Y. 2018) (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013)). "Therefore, when the alleged conspirators are members of the same corporation, Plaintiffs can avoid the application of the intracorporate conspiracy doctrine only by alleging that '"the individual defendants were motivated by an [] independent personal stake in achieving the corporation's objective" rather than "merely carrying out the corporation's managerial policy.'"" *Reich*, 38 F. Supp. 3d at 463 (alteration in original) (quoting *Dunlop v. City of New York*, No. 06-cv-00433 (RJS), 2008 WL 1970002, at *10 (S.D.N.Y. May 6, 2008)). Here, Plaintiffs argue that Dr. Burns had an independent personal interest in concealing her alleged research misconduct "to protect her personal reputation, avoid liability, and profit personally" by ensuring Cassava's stock prices remained high. Opp. at 27. Plaintiffs further contend that Barbier, who is married to Dr. Burns, was similarly interested in personal profit, protecting Dr. Burns's reputation, and concealing his alleged misrepresentations regarding Cassava's research. *Id.*

The Court agrees that the personal-interest exception applies. "Self-protection is separate and apart from the concerns of the company." *Reich*, 38 F. Supp. 3d at 465 (citing *Hill v. City of New York*, No. 03-cv-01283 (ARR), 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005)). A defendant "act[s] in his own personal interest, not in the interest of the [entity], by conspiring with others to cover-up his alleged [illegal activity]." *Hill*, 2005 WL 3591719, at *6. Accepting Plaintiffs' factual allegations as true, the Court finds that Dr. Burns and

Barbier had independent personal interests in commencing and continuing the Defamation Action to conceal their awareness of and involvement in the alleged research misconduct underlying simufilam in order to avoid legal, reputational, and financial exposure. *Cf. Reich*, 38 F. Supp. 3d at 465 (applying personal-interest exception where defendants stood to profit significantly from covering up illegal corporate scheme, which "implie[d] a 'personal stake in achieving the corporation's objective' that [went] beyond 'merely carrying out the corporation's managerial policy'" (quoting *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 71-72 (2d Cir. 1976))); *Alvarez v. City of New York*, No. 11-cv- 05464 (LAK), 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012) ("Where, as here, a group of defendants allegedly maintained the pretense of serving the [entity] while in fact pursuing their own ends to avoid liability, it is entirely consistent to conclude that they acted . . . with an independent personal stake barring application of the intracorporate conspiracy doctrine.").

Because Plaintiffs have pleaded facts sufficient to establish that the personal-interest exception applies here, Plaintiffs' civil-conspiracy claim is not barred by the intracorporate conspiracy doctrine.

## B. Existence of an Agreement

"The gist of conspiracy is, of course, agreement." *United States v. Svoboda*, 347 F.3d 471, 476 (2d Cir. 2003) (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989)). To satisfy this element, a plaintiff "need not provide direct evidence of an express agreement to prove its claim; rather, 'disconnected acts, when taken together, may satisfactorily establish a conspiracy.'" *F.D.I.C. v. Hodge*, 50 F. Supp. 3d 327, 349 (E.D.N.Y. 2014) (quoting *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, 2005 WL 1902780, at *17 (S.D.N.Y. Aug. 9, 2005)); *cf. Svoboda*, 347 F.3d at 477 ("Conspiracies are secretive by their very nature, and it is thus well-settled that the elements of a conspiracy may be proved by

circumstantial evidence."). Plaintiffs have pleaded sufficient factual matter from which the Court may infer the existence of an agreement connecting Dr. Burns and Barbier to Cassava's initiation of the Defamation Action: allegedly, Defendants were all aware of or contributed to the purported research misconduct underlying Cassava's claims regarding simufilam, which the Defamation Action allegedly sought to conceal, and Dr. Burns and Barbier publicly amplified Cassava's allegations from the Defamation Action regarding Plaintiffs' motives and integrity to the press, scientific journals, Rapport's investors, and on social media. *See Sedona Corp.*, 2005 WL 1902780, at *18 (alleged coconspirators' interconnected relationships and varying knowledge of and participation in scheme supported inference of conspiratorial agreement); *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 414 (S.D.N.Y. 2015) (alleged coconspirators' close business relationships, shared knowledge of misconduct, and fraudulent misrepresentations contributed to inference of conspiratorial agreement). Moreover, Barbier's announcement, six days before Cassava filed the Defamation Action, that Cassava had hired "a new general counsel who would report directly to [Barbier]" supports an inference that Barbier had a role in initiating the lawsuit. *Cf. Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 257-58 (S.D.N.Y. 2011) (defendant's hiring of alleged coconspirator for the purpose of furthering scheme supported inference of agreement).

*     *     *

In sum, the Court finds that the application of the personal-interest exception to the intracorporate conspiracy doctrine applies and that Plaintiffs have sufficiently alleged a conspiratorial agreement between Defendants. Accordingly, Plaintiffs have adequately pleaded the existence of a civil conspiracy connecting all three Defendants to Plaintiffs' anti-SLAPP and malicious-prosecution claims.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' motions to dismiss the First

Amended Complaint and Complaint in Intervention.  The Clerk of Court is respectfully

directed to terminate the motions at Dkts. 43 and 45.

Dated: March 26, 2025
         New York, New York

                              SO ORDERED.

                              _Jennifer Rochon_____
                              JENNIFER L. ROCHON
                              United States District Judge