

**Isaac B. Zaur**

izaur@cgr-law.com

Direct: 212.633.4314

**By ECF**  April 2, 2025
Hon. Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

      Re: <u>Heilbut, et al., v. Cassava, et al., Case No. 1:24-cv-05948-JLR-OTW</u>

Dear Judge Wang,

      We write jointly on behalf of all Plaintiffs to request a conference to resolve a discovery dispute concerning the refusal of three non-parties, Matthew Nachtrab, Dr. Charles Spruck, and Sitrick and Company (the "Subpoenaed Parties"), to comply with document subpoenas ("Subpoenas").[1]

      Each of the three Subpoenaed Parties is represented by the same counsel as Cassava. None dispute that he (or it) possesses responsive documents. Rather, each points out that Cassava itself has not yet produced documents and insists on waiting until Cassava's production is completed and reviewed before it produces anything, supposedly on the basis that any responsive materials would also be in Cassava's hands, and to avoid the possibility of duplication.[2] This position is baseless—and, under the circumstances, abusive.

      Federal Rule of Civil Procedure 45(a)(1) allows a party to serve a subpoena on a non-party for the production of relevant documents. "There is a 'relatively low threshold' for a party to show that the material sought is relevant to any claim or defense in the litigation." *Delta Air Lines, Inc. v. Lightstone Grp., LLC*, No. 21-mc-374 (RA) (OTW), 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021). Here, the documents sought by Plaintiffs plainly are relevant.

      As Your Honor may recall, Plaintiffs were early and prominent critics of the scientific claims underlying Defendants' now-abandoned drug candidate simufilam. In this action, Plaintiffs allege that the underlying Defamation Action was a centerpiece of Defendants' campaign of intimidation and retaliation against Plaintiffs, designed to suppress criticism of simufilam. Each Subpoenaed Party played a role in this campaign. In the words of Judge Rochon's decision denying Defendants' motion to dismiss, each of the three "echo[ed] the criticisms that Cassava included in the Defamation Action" and supported Mr. Barbier and Dr. Burns' amplification of those attacks "online and in other publications." (Dkt. 82 at 32.) Indeed, each played a unique and important role in Defendants' campaign to distort the public dialogue about simufilam and attack Plaintiffs. The materials Plaintiffs seek will show exactly that.

---

[1] In compliance with Rule II.b of Your Honor's Individual Rules, we attempted to resolve this dispute by means of a telephonic meet and confer held March 31, 2025, and several follow-up emails indicating our view that the parties are at an impasse. Counsel has not substantively responded, beyond stating that they will speak further with their clients on an undefined timetable. Accordingly, we now seek the Court's intervention.

[2] The Subpoenas and the Subpoenaed Parties' Responses and Objections are attached hereto as Exhibits 1-6.

*Matthew Nachtrab*: Mr. Nachtrab is a Cassava investor who, spurred on by Cassava's leadership, actively encouraged other Cassava investors to smear and attack Plaintiffs. Mr. Nachtrab himself aggressively campaigned against Plaintiffs on social media (accusing them of "genocide" and "literally killing people" by criticizing Cassava (*see* FAC, Dkt. 9, at ¶ 114)) and even founded a non-profit corporation devoted to attacking them. This entity had the announced intention to, among other things, "[h]ire legal advisors to pursue individuals" such as Plaintiffs and to convince "government agencies to prioritize the investigations against" critics of Cassava and simufilam.[3] Mr. Nachtrab also served as a liaison between Cassava's principals and their online surrogates.[4] Plaintiffs also believe that discovery will reveal Mr. Nachtrab himself filed multiple baseless complaints against Plaintiffs with universities and federal agencies.

*Dr. Charles Spruck*: Dr. Spruck is a Cassava investor and scientist, whom Defendants identified in their initial disclosures as a non-party "likely to have discoverable information." Defendant Dr. Lindsay Burns induced Dr. Spruck to lobby multiple scientific journals to disregard legitimate criticism of her own and Dr. Wang's research, including by characterizing Plaintiffs' scientific concerns as cynical and unscientific. In so doing, Dr. Burns falsely described Dr. Spruck as an "independent" researcher who could disinterestedly corroborate the science underlying simufilam, despite his substantial investment in Cassava and their ongoing close collaboration. Documents produced by other non-parties have already confirmed Dr. Spruck's active advocacy on Cassava's and Dr. Burns' behalf. He also publicly participated in social media and blogs that targeted Plaintiffs and other critics of simufilam.[5]

*Sitrick and Company*: Sitrick is a public relations firm hired by Cassava in 2024 and is responsible for issuing press releases and responding to journalists on Cassava's behalf. On information and belief, Sitrick engaged in a public relations strategy for the Company during the Defamation Action and after its dismissal, including during the Company's separation from Mr. Barbier and Dr. Burns, Defendants' settlements with the SEC, and the impending revelation of simufilam's clinical failure.

Unsurprisingly, given this context, none of the Subpoenaed Parties denies possessing responsive documents. Rather, each has refused to produce on the basis that "[a]s Cassava has not yet produced any documents or communications in this case, it is premature and a violation of [Rule 45(d)(1)] to require [the Subpoenaed Parties] to produce documents and communications in response to this Request, particularly since any potentially relevant documents and communications from [the Subpoenaed Parties] would likely be duplicative of what Plaintiffs will receive from Cassava." The Subpoenaed Parties propose that "[o]nce Cassava has made sufficient productions in this case for Plaintiffs to identify any perceived gaps in Cassava's productions that Plaintiffs reasonably believe can be filled by documents and communications in the possession, custody, or control of [the Subpoenaed Parties], [the Subpoenaed Parties are] willing to discuss at that time responding to and producing relevant

---

[3] Cure Guardian, https://cureguardian.org/ (last accessed April 2, 2025).
[4] For example, in a post to a Discord chat group comprised of fierce Cassava supporters named "SAVA Army," Mr. Nachtrab confirmed "yes, I am talking to [R]ick [Barry] about this stuff. Lindsay [Burns] too."
[5] In another chat on the SAVA Army Discord, another regular conduit between Dr. Burns and the group conveyed Dr. Burns's report that she was "[m]eeting Chuck Spruck in San Diego" and that he "continues to be useful."

documents and communications, if any are located, in response to a properly narrowed version of this Request." This is wrong.

To begin with, the unique role played by each of the three Subpoenaed Parties means that each will *certainly* have non-duplicative materials in its possession. Mr. Nachtrab made numerous social media posts and other public statements of his own about Plaintiffs, not only inspired by but apparently also in coordination with Cassava. He founded an entire non-profit agency devoted to furthering the simufilam agenda by attacking Plaintiffs. Dr. Spruck, for his part, was in regular direct contact with multiple journal editors. While he does appear to have coordinated these efforts closely with Dr. Burns, this does not mean that Cassava would be in possession of all documents evidencing his efforts—especially given that he was posing as an independent, disinterested scientist merely advocating for a cure. And, Cassava's PR agency Sitrick possesses not only their outward-facing communications in furtherance of Cassava's strategy, but also—to state the obvious—their own internal communications related to that strategy, which are highly likely to illustrate Cassava's agenda.

Moreover, even if there is some overlap between documents sought from Cassava and from the Subpoenaed Parties, that is no basis to refuse production. *See, e.g.*, *Amphenol Corp. v. Fractus, S.A.*, No. 19-mc-160 (PAE), 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019) (finding it reasonable for party to "seek information relevant to these central issues from [non-party], even if some of it may prove duplicative" in part because "it is appropriate [] to 'test the accuracy and completeness of the defendants' discovery responses.'"). And, Plaintiffs have legitimate concerns about Defendants' preservation of relevant materials, considering the SEC's and DOJ's findings that Defendants and Dr. Wang failed to preserve research data or records (*see* Dkt. 9 ¶ 136), and assertions by plaintiffs in the ongoing securities action about "Cassava's deletion of crucial evidence such as Burn's unblinding email to Wang" (*In re Cassava*, 21-cv-00751 (W.D. Tex.), Dkt. 257 at 2).

The equities here also counsel against permitting further delay. Both Mr. Nachtrab and Dr. Spruck attempted to evade service for several weeks, necessitating an application to this Court authorizing substitute service. (Dkt. 64.) Only after that application was made did Cassava's counsel at Benesch LLP acknowledge representing them and accept service. They served responses and objections on the last possible date (more than 11 weeks after Plaintiffs issued and first attempted to serve the subpoenas) and refused to produce any documents.

Indeed, the Benesch firm's dual representation of Cassava and the Subpoenaed Parties makes their position all the more inappropriate. The Subpoenaed Parties argue that they should not have to produce until after Cassava does. And Cassava—also represented by Benesch—has yet to produce any documents, or even to commit to a date to begin doing so. Indeed, as of this writing, they have failed to respond for almost two weeks to Plaintiffs' (revised) search term proposal. Cassava should not be allowed to leverage its own delay in producing documents as a basis to forestall non-party productions (likely to further damage its position).

Accordingly, Plaintiffs request that this Court compel the Subpoenaed Parties to produce all documents responsive to the requests in the Subpoenas imminently. We thank the Court for its attention to this matter.

Respectfully submitted,

Isaac B. Zaur

cc: All parties/counsel of record (via ECF).