

**Isaac B. Zaur**
izaur@cgr-law.com
Direct: 212.633.4314

**VIA ECF AND EMAIL**
**FILED UNDER SEAL**

October 1, 2025

Hon. Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

      Re: Request for Pre-Motion Conference on Defendants' Motion for Limited Stay
      *Heilbut, et al., v. Cassava, et al.*, Case No. 1:24-cv-05948-JLR-OTW

Dear Judge Wang:

      Plaintiffs Adrian Heilbut, Enea Milioris, and Jesse Brodkin oppose individual defendants Dr. Lindsay Burns and Remi Barbier's requests for a further extension of the current October 28 fact discovery deadline and a stay of their own depositions and that of Dr. Hoau-Yan Wang until December 19, 2025 (effectively pushing fact discovery into 2026). (Dkt. No. 162.)

      Procedural Context

      Plaintiffs are entitled to move this case to trial. Cassava, the individual defendants, and their non-party allies have already imposed significant delays on discovery, including by seeking a stay while their unsuccessful motion to dismiss was pending and by failing to produce any new documents at all for the first several months of document discovery. Today, discovery is finally almost complete. And now, Dr. Burns and Mr. Barbier once again seek what amounts to months of additional delay on the basis of Fifth Amendment concerns that are as amorphous as they are ill-founded. They made exactly the same request in August of this year without success. (*See* Dkt. Nos. 153 (August 11 Letter), 154 (August 20 Letter), 156 (Court Order).)

      Indeed, the individual defendants' renewed application comes with a truly ill grace in light of their conduct in recent months. To put it plainly, their posture seems to be that, by stalling their own depositions up until nearly the end of discovery and the eve of Dr. Wang's criminal trial, they should be rewarded with further delay until six weeks after that trial is over. This conduct should not be rewarded.

      Plaintiffs have been seeking practical deposition dates from the individual defendants for months.[1] Throughout that period, the individual defendants' counsel indicated dates would be forthcoming. Months ago, they even proposed to make their clients available between August 25

---

[1] Specifically, we requested deposition dates in writing on August 1, 8, 13, 18, and 20 and September 2, 5, 15, and 22.

and 29—dates which we had informed their prior counsel were impossible for us. On August 20, counsel informed us they were "continuing to discuss deposition availability[] with our clients." Following the Court's August 22 Order extending discovery to October 28, we again requested deposition dates in emails dated September 2, 5, 15, and 22. The first three requests went unanswered. Finally, on September 22, counsel finally responded "[w]ith regard to the deposition dates, we are of the position that any deposition of Remi and Lindsay should occur after Dr. Wang's trial" and stated they "intend to move to stay discovery as to their depositions shortly."[2]

While the present request comes from the individual defendants, there is little subtlety to the coordination by all defendants to engineer further delay. For example, on September 26, Cassava for the first time sought mental examinations of all three plaintiffs. Plaintiffs' demand for emotional damages is set forth clearly in the Amended Complaint filed October 24, 2024. The only explanation for serving these demands 30 days before the (already twice-extended) close of fact discovery is to engineer a situation where they cannot be completed and discovery "must" be extended. The same goes for Cassava's September 26 service of a deposition notice for Dr. Brodkin's wife, Dr. Lisa Brodkin.

This is only the most recent effort by the individual defendants to weaponize their Fifth Amendment rights in this action. They invoked those rights in response to nearly all of plaintiffs' document demands. (*See* Dr. Burns and Mr. Barbier's March 3, 2025 R&Os to Plaintiffs' and Intervenor-Plaintiffs' First Set of Requests for Production, attached hereto as Exhibits A-D.) They invoked the "act of production" privilege as to nearly every document in their possession. They produced a mere eight documents between them—five of which are transcripts from SEC depositions, two of which are versions of one text thread, and one of which (after much delay) is a copy of a journal by Dr. Burns describing her perspective on the controversy surrounding simufilam. They also invoked the Fifth Amendment repeatedly in their Answers filed on April 9, 23, 30, and May 13. (Dkt. Nos. 93-96, 102-103, 107-110, 118.)

Legal Argument

As non-indicted defendants in a civil matter, Dr. Burns and Mr. Barbier have no basis to seek a stay based on their wish to potentially invoke the Fifth Amendment as informed by the Government's trial strategy in Dr. Wang's criminal proceeding.

A "stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy." *Bernard v. Lombardo*, 2017 WL 2984022, at *2 (S.D.N.Y. June 9, 2017). The most typical fact pattern for a stay pending criminal proceedings emerges where a civil party is indicted on related criminal charges. Otherwise, courts in the Southern District "have generally agreed that a stay is not appropriate absent an indictment or special circumstances." *Id.* at *3 ("In fact, a 'pre-indictment motion to stay can be denied on this

---

[2] In a pre-motion meet-and-confer on September 25, counsel again altered course and indicated they could make Dr. Burns and Barbier available for depositions on the final two days of fact discovery (Oct. 24 and 27) if their motion is denied.

ground alone.'") In assessing the appropriateness of a stay, courts will consider the overlap between the civil and criminal proceedings, the criminal proceeding's status, and the respective interests of (and risk of prejudice to) the parties. *See Citibank, N.A. v. Super Sayin' Pub., LLC*, 86 F. Supp. 3d 244, 246 (S.D.N.Y. 2015).

Overlap: While there are substantial factual overlaps between this action and Dr. Wang's criminal prosecution, 1) the defendants are different people; and 2) the theory and nature of potential liability are different. The United States alleges Dr. Wang defrauded the National Institutes of Health (NIH) by engaging in falsification on grant applications related to simufilam. Dr. Wang is not a defendant in this case, and plaintiffs' claims do not rise or fall on the outcome in his criminal proceeding.[3] Rather, the factual nucleus of this action is the baseless nature and bad faith of Cassava's litigation against plaintiffs and others.

Defendants' citations prove the point. In *SEC v. Ahmed*, 2025 WL 958732, at *3 (S.D.N.Y. Mar. 31, 2025), the court granted an unopposed DOJ motion for a stay in an SEC civil proceeding, where the civil defendant was charged with a criminal count for similar misconduct. And *ICD Cap., LLC v. CodeSmart Holdings, Inc.*, 2015 WL 14023658, at *2 (S.D.N.Y. Aug. 21, 2015) granted a stay where plaintiff had already agreed to stay proceedings against one (already-indicted) defendant in the same case and the remaining individual defendant stated she was under active investigation and anticipated being indicted as well.[4]

Status of the Criminal Action: As discussed above, defendants' arguments regarding the imminence of Dr. Wang's trial do not support granting a stay as any "imminence" has been engineered by defendants' gross delay tactics.

Interests of the Parties (Plaintiffs): Plaintiffs have already experienced substantial expense and delay in prosecuting this action—not to mention defending the underlying defamation action. They are entitled to move this case forward to trial and judgment and would clearly be prejudiced by further delay. This prejudice is especially pronounced given the obvious questions surrounding Cassava's viability as a going concern and uncertainty regarding its financial future. *Bernard*, 2017 WL 2984022, at *3 (risks "particularly great" where "further delay...will increase the risks that [plaintiffs] could succeed in the litigation, without being able to collect on any judgment").

Interests of the Parties (Defendants): The individual defendants argue only that they may learn something from the Government's trial strategy that will permit them to take a more nuanced approach to invoking the Fifth Amendment at their depositions. Frankly, this makes little sense. The Government's approach to a criminal trial of Dr. Wang for lying on his NIH applications may be relevant to the individual defendants' potential criminal liability for connivance in those same lies, but that is only one of many forms of criminal liability they may

---

[3] *Weidinger v. Djokic*, involving parallel civil and criminal charges for harassment against the same defendant, is distinguishable. 2023 WL 4106274, at *1 (S.D.N.Y. June 21, 2023).
[4] Defendants' comparison to *CodeSmart* is misleading, as the "central figure" who was criminally indicted was also the civil movant's co-defendant. 2015 WL 14023658 at *4.

Hon. Ona T. Wang
October 1, 2025
Page 4 of 4

face—whether related to their dealings with the FDA, the public, or the public capital markets. Moreover, Dr. Burns and Barbier have not been indicted and do not claim to believe they are at risk of indictment. Their preference to wait until after Dr. Wang's trial does not constitute "undue prejudice" or "interfere[] with [their] constitutional rights." *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) ("forcing a [d]efendant to choose between waiving his Fifth Amendment privilege or suffering the adverse inference . . . does not violate due process").

      For these reasons, plaintiffs request this Court deny defendants' request. We thank the Court for its attention to this matter and are available at the Court's convenience.

Respectfully submitted,

*/s/ Isaac B. Zaur*

Isaac B. Zaur

cc:    All parties/counsel of record (via ECF)

41 Madison Avenue, New York, NY 10010     Main: 212.633.4310     cgr-law.com