**GIBSON DUNN**

Monica K. Loseman
Partner
T: +1 303.298.5784
M: +1 303.408.1847
mloseman@gibsondunn.com

October 30, 2025

Hon. Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

**BY ECF**

Re: *Heilbut, et al. v. Cassava, et al.*, Case No. 1:24-cv-05948-JLR-OTW

Dear Judge Wang,

We write on behalf of Defendant Cassava Sciences, Inc., respectfully opposing Plaintiffs' request to take an eleventh deposition in this case (ECF 183).

There is no justification for Plaintiffs taking more than the presumptive number of depositions. Plaintiffs knew from the outset of discovery that they were limited to 10 depositions. And Plaintiffs knew from the outset about Dr. Wang and his role with respect to the development of simufilam, Cassava's investigation drug candidate. Yet Plaintiffs made the deliberate, strategic choice to take 10 *other* depositions, with full knowledge that they were not entitled to 11. In short, Plaintiffs openly calculated that they were free to take extra depositions early in this case, imposing the associated burden on defendants and the witnesses, betting that this Court would grant them leave to take additional depositions later. The Court should not pay that bet.

"The Federal Rules of Civil Procedure presumptively limit to ten the number of depositions that each side may conduct." *Galgano v. County of Putnam*, No. 16-cv-3572 (KMK) (PED), 2021 WL 2138759, at *1 (S.D.N.Y. May 26, 2021) (*citing* Fed. R. Civ. P. 30(a)(2)(A)). The purpose of the ten-deposition limit is "to enable courts to maintain a tighter rein on the extent of discovery and to minimize the potential cost of wide-ranging discovery." *Id*. (quoting *Sigala v. Spikouris*, No. 00-cv-983 (ILG), 2002 WL 721078, at *3 (E.D.N.Y. Mar. 7, 2002) (internal quotation marks omitted)).

When determining whether to permit a party to exceed the presumptive limit, courts consider the factors set forth in Rule 26(b)(2)(C): "including whether (1) the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less extensive, (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, and (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. *Id*. (quoting Fed. R. Civ. P. 26(b)(2)(c)) (internal quotation marks omitted). "The party seeking to exceed the ten-deposition limit bears

the burden of demonstrating cause to exceed limit." *Oakley v. MSG Networks, Inc.*, No. 17-cv-6903 (RJS), 2024 WL 50561111, at *2 (S.D.N.Y. Dec. 10, 2024) (quoting *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 368 (S.D.N.Y. 2010) (alterations accepted and internal quotations omitted)).

Plaintiffs do not meet that burden here.

First, Plaintiffs fail to show that Dr. Wang's testimony is not unreasonably cumulative or duplicative. Plaintiffs speculate generally that Dr. Wang's "interactions with defendants" are "relevant to defendants' purported bases and purposes for bringing the defamation action" and that his testimony is "necessary to test the credibility of defendants' testimony—particularly that of Mr. Barbier and Dr. Burns." ECF 183, 1. As to the former point, this is the definition of "cumulative or duplicative" testimony. Plaintiffs are deposing both Mr. Barbier and Dr. Burns within the next two weeks, and can ask them about their "interactions" with Dr. Wang and how, if at all, those interactions were relevant to any bases or purposes for bringing the defamation action. Further, Dr. Wang's counsel has already proffered to Plaintiffs and this Court that Dr. Wang's testimony will not be relevant on this front. ECF 181, 1 ("As we have repeatedly indicated to Plaintiffs' counsel, if called to testify, Dr. Wang would confirm that he did not engage in any intentional research misconduct and, by logical extension, did not discuss any such conduct with Cassava at any time. As a result, we struggle to see the relevance of Dr. Wang's testimony to Plaintiffs' case…"). As to the latter point, Plaintiffs provide no explanation of how Dr. Wang's testimony will "test the credibility" of Mr. Barbier and Dr. Burns. The only inference that can be drawn is that they intend to ask the same questions of Dr. Wang that they will ask of Mr. Barbier and Dr. Burns to confirm the answers are the same. Again, this is the definition of cumulative and duplicative testimony.

Second, Plaintiffs certainly had ample opportunity to depose Dr. Wang. Plaintiffs' letter request misleadingly suggest that they have satisfied this factor because Dr. Wang asked not to testify until after the prosecution dismissed its case against him. ECF 183, 2. But the issue is not the *timing* of Dr. Wang's testimony. Rather, the issue is the *number* of depositions Plaintiffs determined to take with the knowledge that they intended to depose Dr. Wang. Cassava did not object when Plaintiffs noticed their first 10 depositions, including Dr. Wang's. However, on October 13, 2025, Plaintiffs informed Cassava that they intended to notice an 11th deposition – of non-party Nicole Hainer – to take place ten days later on October 16. Cassava promptly confirmed its availability for the deposition, but specifically responded: "Plaintiffs have already taken 7 of their 10 depositions, and noticed 3 more (Dr. Wang, Dr. Burns, and Mr. Barbier). If you plan to depose Ms. Hainer, please advise which of the currently noticed depositions you intend to withdraw." Plaintiffs' counsel responded that they would "not be withdrawing any of our notices," and Cassava promptly confirmed that it would "object to any deposition over the limit of 10." *See* Ex. 1, Oct. 3-8, 2025 email conferrals. Plaintiffs had ample opportunity to depose Dr. Wang. They affirmatively and intentionally chose to allocate their depositions to other witnesses, with full knowledge that Defendants would object.

Third, the burden of Plaintiffs' discovery in this case on Defendants is already far out of proportion to the value of this case. In response to a defamation action that Cassava voluntarily dismissed before any discovery was taken, Plaintiffs have ballooned discovery in this case, demanding hundreds of thousands of pages of documents as well as deposition transcripts from

multiple cases, in addition to taking every last deposition available to them under the rules (as compared to Cassava, who took 4 depositions, 3 of which were of Plaintiffs). Plaintiffs' expansive discovery has cost Cassava millions of dollars, many multiples of the attorneys' fees Plaintiffs incurred defending the comparatively modest underlying defamation action (and which fees Cassava made a formal Offer of Judgment to pay to Plaintiffs months ago, before depositions began and discovery costs exploded). Plaintiffs' letter seeks to downplay the burden of several of their depositions by claiming they were "remote and shortened," ECF 183 at 2, but the fact that those third party witnesses had nothing to say that was helpful to Plaintiffs' case[1] simply confirms that each of those depositions already imposed an unnecessary burden on Cassava. This is exactly the type of case where the limits of Rule 30(a)(2) should be imposed to "maintain a tighter rein on the extent of discovery and to minimize the potential cost of wide-ranging discovery." *Galgano*, 2021 WL 2138759, at *1 (quoting *Sigala*, 2002 WL 721078, at *3 (internal quotation marks omitted)).

For these reasons, we respectfully request that Your Honor deny Plaintiffs' request to exceed the presumptive number of depositions in this case.

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Monica K. Loseman*
Monica K. Loseman

MKL

---

[1] The non-party witnesses Plaintiff chose to depose include: (1) Dr. Paul Aisen, director of the Alzheimer's Therapeutic Research Institute at the University of Southern California, and Editor in Chief of the Journal for Prevention of Alzheimer's Disease, who testified that he led a thorough investigation into criticism of a paper Dr. Wang published in JPAD, and found no convincing evidence of manipulation of data or intent to mislead, Ex. 2 Excerpt from P. Aisen Depo. Tr. at 194:21-195:15; (2) Dr. Mark Johnson, a former Cassava investor, who once sent Dr. Burns a LinkedIn message and met with her for a coffee, but otherwise never had any direct communications with anyone at Cassava, Ex. 3 Excerpt from M. Johnson Depo. Tr. at 109:11-110:4; and (3) Nicole Hainer, whose father was an Alzheimer's patient enrolled in Cassava's Phase 2 Open Label clinical trials, and who had no knowledge of Plaintiffs' statements, the defamation action, or the Anti-SLAPP case until she was contacted by Plaintiffs' counsel in this case.