**BakerHostetler**

Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

June 2, 2026

**VIA ECF**

Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 20B
New York, New York 10007-1312

Re:     *Heilbut, et al. v. Cassava Sciences, Inc., et al.*, No: 1:24-cv-05948 (JLR) (OTW)

Dear Judge Rochon:

On behalf of Defendants Remi Barbier and Dr. Lindsay Burns, we are writing to provide the bases for their anticipated summary judgment motion and request that the post-discovery pre-trial conference scheduled for June 22, 2026, serve as a conference for the motion.

## Background

Defendant Cassava Sciences, Inc. is a clinical-stage biotechnology company. In November 2022, Cassava filed suit against Plaintiffs Adrian Heilbut, Jesse Brodkin, and Enea Milioris (and others) for alleged defamatory statements, such as the science behind simufilam was "fabricated," and that Cassava committed "fraud." *See Cassava Sciences, Inc. v. Bredt, et al.*, No. 1:22-CV-9409 (S.D.N.Y.). On March 28, 2024, Judge Woods found that certain statements by Drs. Heilbut, Brodkin, and Milioris were defamatory, but dismissed Cassava's claim against them for failure to adequately plead actual malice. *Id.*, ECF 119. Cassava filed an amended pleading on April 29, 2024, before voluntarily dismissing the action on August 2, 2024. *Id.*, ECF 140.

On August 6, 2024, Plaintiffs filed this action asserting an Anti-SLAPP claim against Cassava. On October 24, 2024, Plaintiffs filed an Amended Complaint ("AC"), ECF 9, to add Mr. Barbier and Dr. Burns as defendants to claims for malicious prosecution and conspiracy. Neither Mr. Barbier, Cassava's former CEO, nor Dr. Burns, Cassava's former Senior Vice President of Neuroscience, were parties to Cassava's defamation action.

## Anticipated Summary Judgment Motion

Mr. Barbier and Dr. Burns anticipate filing a targeted motion for summary judgment.

**I.     Plaintiffs' Claim for Malicious Prosecution (Count Two)**

Under New York law, "[t]he elements of the tort of malicious prosecution of a civil action are (1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury." *ANS 1 Corp. v. Yosef*, 244 A.D.3d 669, 671 (1st Dep't 2025).

***No special injury.*** Plaintiffs complain about the financial burden and emotional toll of defending against a defamation action, AC ¶¶ 13, 175-82, but these alleged harms are insufficient to establish a special injury. *See McCaul v. Ardsley Union Free Sch. Dist.*, 2013 WL 673751, at *6 (2d Cir. Feb. 26, 2013); *Engel v. CBS, Inc.*, 711 N.E.2d 626, 631 (N.Y. 1999). Alleged reputational harm from a defamation claim is likewise insufficient. *See Zahrey v. City of N.Y.*, 2009 WL 54495, at *22, *amended,* 2009 WL 1024261 (E.D.N.Y. Apr. 15, 2009); *Loftus v. Arthur*, 2007 WL 2376883, at *3-4 (N.Y. Sup. Ct. July 16, 2007); *Campion Funeral Home, v. State of N.Y.*, 166 A.D.2d 32, 36-37 (3d Dep't 1991). Discovery has eviscerated Plaintiffs' allegations of

*Atlanta     Austin     Chicago     Cincinnati     Cleveland     Columbus     Dallas     Denver     Houston     Los Angeles
New York     Orange County     Orlando     Philadelphia     San Francisco     Seattle     Washington, DC     Wilmington*

Honorable Jennifer L. Rochon
Page 2

lost business damages.[1] *See Engel v. CBS Inc.*, 961 F. Supp. 660, 664-65 (S.D.N.Y.), *aff'd*, 182 F.3d 124 (2d Cir. 1999) (granting summary judgment).

**No actual malice.** Far from bringing the defamation action to harass or intimidate Plaintiffs, Cassava pursued the action to defend the integrity of the Company and protect ongoing clinical trials evaluating the treatment of Alzheimer's with simufilam.[2] That is not actual malice. *See Tray Wrap, Inc. v. Pac. Tomato Growers Ltd.*, 2008 WL 9453492, at *21-22 (N.Y. Sup. Ct. Feb. 6, 2008) (granting summary judgment where plaintiff failed to adduce evidence showing that underlying action was not brought in good faith), *aff'd*, 61 A.D. 3d 545 (1st Dep't 2009).

**Dr. Burns did not initiate or prosecute the defamation action.** Dr. Burns was not a party to, and did not have the power to authorize or direct Cassava's prosecution of, the defamation action. *See Loftus*, 2007 WL 2376883, at *3-4 (granting summary judgment in favor of a defendant who "was not a party to," and had not "initiated or prosecuted," the underlying action); *accord Baldini v. Shah*, 2018 WL 11226079, at *5 (S.D.N.Y. Aug. 9, 2018).

Discovery has confirmed that it was Cassava's Board of Directors, which formed a board litigation committee, that authorized and directed the prosecution of Cassava's defamation action.[3] Dr. Burns was not a board member and did not attend any board or board committee meetings in which decisions about the defamation action were made. From time to time, Dr. Burns was asked to provide and did provide certain materials to outside litigation counsel, but there is no evidence that Dr. Burns, a scientist, rather than Cassava's board, litigation committee, or General Counsel, authorized or directed the prosecution of the defamation action. Nor is there any evidence that Dr. Burns paid any legal bills for, or otherwise funded, the action.

## II.    Plaintiffs' Claim for Conspiracy (Count Three)

Plaintiffs erroneously assert a separate claim for conspiracy. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005). "[C]ivil conspiracy is not an independent tort, but a theory under which a party can establish the vicarious liability of co-conspirators." *Gan v. GSUIG Real Est. Member LLC*, 2025 WL 2416950, at *110 (E.D.N.Y. Aug. 21, 2025).

---

[1] *Compare, e.g.*, AC ¶ 176 (alleging that Dr. Milioris had employment agreement with "base salary of approximately $100,000, plus a bonus of up to 40%"), *with* no documentary evidence and Milioris Tr. 261:5-262:4 (no guaranteed salary or bonus); *and* AC ¶ 179 (alleging that Dr. Heilbut's equity research and consulting business "lost at least $8,500" from otherwise "regular consulting calls" and the "possibility of a more substantial and ongoing consulting engagement"), *with* no documentary evidence and Heilbut Tr. 180:19-190:12 ("no professional experience" in equity research or investment management); *id.* at 196:14-19 (fired *before* defamation action filed in 2022); *id.* at 201:9-12 (from 2021 to 2023, income was "roughly consistent and increased in 2024"); *and* AC ¶ 182 (alleging that Dr. Brodkin "lost valuable investment opportunities"), *with* no documentary evidence and Brodkin Tr. 269:19-271:5.

[2] *See, e.g.*, Cassava 30(b)(6) Tr. 20:8-20 ("[W]e were enrolling two large Phase 3 clinical trials, and the defamatory, false statements … were … inhibiting our ability to recruit … So it was impacting our business[.]"); Barry Tr. 154:25-155:4 ("I was concerned because it was having an effect on the company's business and enrolling in the trial. And I was concerned because the company's reputation was being unfairly destroyed by statements that were defamatory.").

[3] *See, e.g.*, Cassava 30(b)(6) Tr. 17:23-18:18 (decision to file lawsuit made by "board of directors … as informed by outside counsel"; "not aware" of any role by Dr. Burns in decision to file lawsuit); *id.* at 86:3-25 (explaining that the Company and its counsel were responsible for continuing the defamation action after the dismissal of the first amended complaint); Barry Tr. 54:12-20, 62:25-63:8, 93:19-22 (board's litigation committee did not include Dr. Burns in any discussion of the defamation action); Barbier Tr. 120:9-21 (defamation action was "board decision, driven by the litigation committee"); *id.* at 182:5-183:4 (because Dr. Burns was not a director, "she would have no input on – on the whole decision-making on the go/no-go, decision-making path").

Honorable Jennifer L. Rochon
Page 3

*Duplicative of malicious prosecution claim.* Where, as here, a tort claim is asserted against a defendant who is also alleged to have conspired in the tort, courts have repeatedly rejected a conspiracy claim or theory as duplicative. *Id.* at *111; *Hua Xue v. Jensen*, 2020 WL 6825676, at *12 (S.D.N.Y. Nov. 19, 2020). Thus, summary judgment should be granted on Plaintiffs' claim that Defendants "conspired" to "commit" Count Two for malicious prosecution. AC ¶ 207.

*Intracorporate conspiracy doctrine.* As to Plaintiffs' remaining claim that Defendants "conspired" to "commit" Count One, the Anti-SLAPP claim against Cassava, *id.*, it is well established that "the officers, agents, and employees of a single corporate entity, each acting within the scope of [his] employment, are legally incapable of conspiring together." *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2015 WL 468833, at *9 (S.D.N.Y. Feb. 3, 2015).

Discovery has belied Plaintiffs' allegation that Defendants had an "independent, personal conspiratorial purpose, wholly separate and apart from the entity." *Kim v. NYC Green Transp. Grp.*, 2025 WL 373465, at *6 (E.D.N.Y. Feb. 3, 2025). Indeed, contrary to Plaintiffs' speculation that Defendants sought to "conceal their awareness of and involvement in research misconduct," ECF 82 at 36, contemporaneous documents show that, in weighing whether Cassava should pursue a defamation action, Mr. Barbier was concerned about the impact of negative press arising out of the accusations by Plaintiffs and others on Cassava's "directors, managers, employees, advisors and clinicians – who are going through blood, sweat & tears to test a new drug treatment for patients with Alzheimer's." CASSAVA_001494747; *see also* Barbier Tr. 150:8-151:25 (Mr. Barbier and Cassava's other directors authorized the defamation action to "let the sun in" and "bring some truth to all the allegations that were being charged against the company"). As already discussed, Dr. Burns did not initiate or prosecute the defamation action. After the lawsuit was filed, Dr. Burns hoped it would help preserve clinical trial sites and trial enrollment, Burns Tr. 150:1-25, which had been adversely impacted by the accusations from Plaintiffs and others. *See* CASSAVA_001415183. These concerns and hopes were aligned with, not "wholly separate and apart from," those of the Company. *Christians*, 2015 WL 468833, at *9; *see also Langer v. Paysafe Partners*, 2020 WL 7684885, at *10, *adopted by* 2020 WL 7041085 (E.D.N.Y. Nov. 30, 2020) (rejecting application of personal-interest exception where CEO's embezzlement and termination was concealed from a company's business partner to induce further payments to the company).

## III.    Plaintiffs' Demand for Punitive Damages

Because Plaintiffs cannot show that the defamation action was brought with actual malice, or for the sole purpose of harassing or intimidating Plaintiffs or otherwise suppressing free speech, there is no basis for a punitive damages award. *See, e.g.*, *Egiazaryan v. Zalmayev*, 2013 WL 6486258, at *12 (S.D.N.Y. Dec. 11, 2013), *report and recommendation adopted as modified*, 2014 WL 1244790 (S.D.N.Y. Mar. 19, 2014); *Best v. Genung's Inc.*, 46 A.D.2d 550, 552-53 (3d Dep't 1975); *Bennett v. Towers*, 982 N.Y.S.2d 843, 850 (N.Y. Sup. Ct. 2014).

Respectfully submitted,

*/s/ Douglas W. Greene*

Douglas W. Greene

cc:   All Counsel of Record via ECF