

**Isaac B. Zaur**

izaur@cgr-law.com

Direct: 212.633.4314

<u>**Via ECF**</u>                                                                                  June 9, 2026

Hon. Jennifer L. Rochon
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

> Re:   *Heilbut, et al. v. Cassava, et al.*, Case No. 1:24-cv-05948-JLR-OTW

Dear Judge Rochon:

We write in response to defendants' pre-motion letters (ECF 212 and 213) proposing motions to exclude testimony by plaintiffs' expert and for summary judgment. The proposed motions are as ill-conceived as the original defamation lawsuit that gave rise to this case.

## I.   <u>Cassava's Proposed Rule 702 Motion to Exclude Testimony by Dr. David A. Sanders</u>

Dr. David A. Sanders is an Associate Professor of Biological Sciences at Purdue University whose research focuses on standards and ethics of scientific publication. Dr. Sanders will testify that critical defects in the recordkeeping and other practices underlying research on simufilam—all of which were known or readily knowable by defendants—made it impossible for Cassava to have believed in good faith that it could refute the truth of plaintiffs' criticisms. These defects include the failure to maintain ███████████ original data, improper biostatistical practices, and deliberate ████████████.

Cassava's proposed motion aims primarily at Dr. Sanders' conclusion that "Based on the facts I have been shown (and asked to assume), it appears Dr. [Hoau-Yan] Wang repeatedly ████████████████████████████████████████████." This opinion is based on Dr. Sanders' examination of ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Cassava attacks the admissibility of Dr. Sanders' testimony on three grounds, all of them wrong.

<u>Relevance</u>. Cassava asserts that Dr. Sanders' opinions about recordkeeping and ███ by Dr. Wang are irrelevant because "this is not a research-misconduct case against Dr.

---

[1] ELISA refers to Enzyme-Linked Immunosorbent Assay.

Hon. Jennifer L. Rochon
June 9, 2026
Page 2 of 6

Wang." (ECF 212 at 2.) But this misses the point. Cassava owned the results of Dr. Wang's research concerning simufilam. It had both the contractual right and the practical ability to visit and audit his lab and to review his data at any time.[2] In fact, ██████████████████████████████████████████████████████████████████████████████████████████[3]

Cassava insisted in the Defamation Action that it could "prove" plaintiffs' statements were "false" based on "[t]he underlying research and backup for the underlying research" (ECF 30 ¶ 162; *see also* ¶¶ 419-22). Cassava mentioned Dr. Wang 99 times in its complaint (ECF 30) and attached his research papers as purported proof that plaintiffs' critiques were "false" and made with "actual malice." (*See id.* Exs. 77-80.) Hence, the readily identifiable ██████████████ ██████████ is probative of defendants' bad faith in prosecuting the Defamation Action.

<u>Qualifications</u>. Cassava briefly suggests that Dr. Sanders is not qualified because, for example, he is not an expert in Alzheimer's disease. But plaintiffs are not offering him as an Alzheimer's expert. Rather, he is an expert in scientific research integrity who has taught and published about scientific recordkeeping, statistical analysis, and the ELISA and Western Blot assays at issue in Dr. Wang's work. The weight of his evidence is for the jury to decide.

<u>Methodology and Authentication</u>. Cassava's letter suggests an attack on Dr. Sanders' methodology but actually focuses on the authenticity of ███████████████████████████ ████████████████████████ This, again, misses the point. Plaintiffs never suggested that they would rely on Dr. Sanders for that purpose. Rather, Plaintiffs will establish ███ ██████████████████████████████████████ Cassava cannot otherwise challenge Dr. Sanders' method, which followed the well-established approach of ████████████████████████████████ ████████████████████████████████████████████████.

## II.     Defendants' Proposed Summary Judgment Motions

### A.   Malicious Prosecution

<u>Malice and Probable Cause</u>. Defendants claim to have been "believers in simufilam" and suggest that this contention, alone, defeats the element of malice. (ECF 212 at 2-3; ECF 213 at 2.) This is wrong. Malice means "a purpose other than the adjudication of a claim," *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 204 (1999), and can be shown with objective evidence bearing upon the presence or absence of probable cause to believe the lawsuit would prevail. Indeed, malice is so closely related to probable cause that "lack of probable cause generally creates an inference of malice," and an issue of material fact as to probable cause generally creates one as to malice as

---

[2] Cassava 30(b)(6) Tr. at 283 ████████████████████████████████████████████████



41 Madison Avenue, New York, NY 10010     Main: 212.633.4310     cgr-law.com

Hon. Jennifer L. Rochon
June 9, 2026
Page 3 of 6

well. *Boyd v. City of New York*, 336 F.3d 72, 77-78 (2d Cir. 2003). "New York courts traditionally consider the issue of malice to be a jury question." *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994). Here, extensive evidence will show both that Defendants lacked probable cause to prosecute the Defamation Action and that they "brought the Defamation Action to harass and intimidate plaintiffs and to suppress criticism from the scientific community," which the Court already held to support a finding of malice at the pleading stage. *Heilbut v. Cassava Sciences, Inc.*, 778 F. Supp. 3d 551 at 574 (S.D.N.Y. 2025)*; see also Thomas v. G2 FMV, LLC*, 147 A.D.3d 700, 700 (1st Dep't 2017) (finding malice where underlying action was brought "for the purpose of silencing plaintiff").

*First*, defendants knew they could never win the Defamation Action because they never had the original data they pled as "proof" that plaintiffs' statements were "false." Cassava alleged that it could prove plaintiffs' critiques to be false using data that supposedly underlay its science. (*See e.g.* ECF 30 ¶ 419 ("[Plaintiffs] stated that Cassava's foundational science has been manipulated, fabricated, and doctored. Defendants made a factual assertion. Cassava can prove that did not happen, thereby demonstrating factual inaccuracy."); *id.* ¶ 180 ("[B]ackup for the underlying research demonstrate[s] that the research relied upon by Cassava in connection with developing simufilam was not fabricated, manipulated, or doctored."). In reality, Cassava had no original data in its possession *at all*. [4] And, Cassava knew that its ostensible research collaborator Dr. Wang did not have such data either. An FDA audit of Dr. Wang's lab at CUNY conducted less than two months before Cassava filed the Defamation Action reported that the lab lacked records or data to reconstruct the simufilam phase 2b study.[5] Cassava's own audit conducted just a few weeks later found ███████████████████████████████████████████ ███████████████████████████████████████████[6] In fact, Cassava's in-house auditor testified at deposition that ███████████████████████████████ █████████████████████████████ ███ "[7] ██████████████████████████████ ████████████████████████████████[8] This evidence of defendants' lack of probable cause is more than enough to put the question of malice to a jury.

*Second*, this is the rare case where defendants' subjective malicious intent can also be established by direct evidence of their animus against plaintiffs. *See Honzawa v. Honzawa*, 268 A.D.2d 327, 329 (1st Dep't 2000) ("Malice can be inferred from the history of bitter relations between the parties."); *Patrick v. G2 FMV, LLC*, 2016 WL 320622, at *6 (N.Y. Cty. Sup. Ct.

---

[4] CASSAVA_000310872 at -876 █████████████████████████████████
███ (CASSAVA_000800400 at -415-416 █████████████████████████
██████████████████████████████████████████████████
[5] CASSAVA_000898032 ██████████████████████████████████
[6] CASSAVA_000796682 ████████████████████████████████████
██████████████████████████
[7] Rodriguez Tr. at 214-15.
[8] CASSAVA_001213617

Hon. Jennifer L. Rochon
June 9, 2026
Page 4 of 6

Jan. 27, 2016) (inferring malice from statement that anti-SLAPP defendant "wanted to bury" opponent).



*Third*, discovery has robustly confirmed defendants' use of the Defamation Action as a centerpiece ███████████████████████████ to silence and intimidate others. Cassava publicized the lawsuit with a press release explicitly threatening additional litigation against other critics: "We are still investigating whether additional individuals or entities should be brought into this case or have separate claims brought against them."[12] ███████████████████████████████████████████ ████████████████████████████████[13] Cassava encouraged and celebrated ██████████████ to amplify attacks and threaten critics.[14]

Defendants cannot reasonably move for summary judgment on malice in the face of this evidence, or on the related theory that the purpose of the Defamation Action was to protect enrollment in clinical trials. (ECF 212 at 3; ECF 213 at 2.) Indeed, even that "defense" amounts to an admission that they were trying to suppress public criticism of the research. Moreover, it is factually absurd, not least because the Phase 3 trials were fully enrolled more than four months before Cassava filed its Second Amended Complaint.

Special injury. In its order denying defendants' motion to dismiss, the Court held that plaintiffs satisfied the "special injury" element of malicious prosecution by alleging that the Defamation Action "marred, in [a] specific and meaningful way, [their] financial opportunities." (MTD Or. at 31.) Discovery has substantiated those allegations: Dr. Milioris produced a signed 3-year employment contract with a Greek drug manufacturer and testified that the employer rescinded it upon learning of the Defamation Action. *See Thomas* 147 A.D.3d at 700, ("special

---

[9] BURNS_00000650 at -693
[10] BURNS_00001964
[11] Francisco_0000322
[12] Cassava, Nov. 3, 2022, Press Release
[13] CASSAVA_001309142 at -144 ██████████████████████████
███████████████████████████████████
███████████████████████████████████
[14] CASSAVA_000728606 ██████████████████
████████████████████████████████████

Hon. Jennifer L. Rochon
June 9, 2026
Page 5 of 6

injury" where "plaintiff had a consulting arrangement [] and was terminated as a direct result of the allegations in the complaint"). Dr. Heilbut testified that he lost at least one client of his incipient equity research and consulting business because the client feared becoming a target of discovery. While Dr. Brodkin works primarily as a caregiver for an adult son with special needs and therefore cannot as readily prove loss of business income, both he and his wife testified that the Defamation Action wreaked havoc on their marriage and family finances. As the Court recognized, special injury is "'analyze[d] . . . on a case-by-case basis,'" (MTD Or. at 31 (citation omitted)). A jury could find special injury to each of the plaintiffs.

Dr. Burns. Dr. Burns attempts to evade liability for malicious prosecution on the basis that she did not have the formal authority to cause Cassava to prosecute the Defamation Action. But the standard requires only that the prosecution was undertaken "by or at the instance" of the defendants. *Sapienza v. Notaro*, 172 A.D.3d 1418, 1419 (2d Dep't 2019). Civilians can even be held liable for malicious prosecution in the criminal context if they knowingly provide false information to law enforcement. *Moorhouse v. Standard*, 124 A.D.3d 1, 12 (1st Dep't 2014).

Defendants' privilege logs show ███████████████████████████████████████████████████████████████████████████████████████████████████ Moreover, Dr. Burns was clearly engaged in Cassava's litigation strategy, as shown by ████████████████████████████████████████████████████████[15] The remainder of that passage is redacted for privilege, further confirming Dr. Burns was involved in litigation strategy. In short, there is considerable evidence that, whether or not Dr. Burns held formal power to authorize the Defamation Action, she was a driving force behind it.

## B. Anti-SLAPP Punitive Damages

Defendants seek summary judgment on the punitive damages component of plaintiffs' anti-SLAPP claim "[f]or the same reason" as their motion with respect to malice. (ECF 212 at 2; ECF 213 at 3.) This will not work. The same evidence described above with respect to malice also creates an issue of fact as to whether defendants—who knew there was no data to refute plaintiff's criticisms of simufilam—could have had a proper purpose in prosecuting the Defamation Action. New York's anti-SLAPP statute provides for punitive damages where a defendant "commenced or continued" a SLAPP action "for the sole purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting" speech. N.Y. Civ. Rights Law § 70-a(1)(c); *Joglo Realties, Inc. v. Marionovsky*, 2015 WL 2155725, at *9 (N.Y. Sup. Ct. May 8, 2015) (awarding punitive damages in the absence of substantial basis for lawsuit where no purpose other than to intimidate, harass and punish defendant).

## C. Fees Incurred Prosecuting This Action

Every court to consider the issue has agreed that fees associated with an anti-SLAPP proceeding are recoverable, along with the fees associated with the underlying SLAPP action. *See 161 Ludlow Food, LLC v. L.E.S. Dwellers, Inc.*, 2025 WL 1542338, at *2 (N.Y. Sup. Ct. May

---

[15] BURNS_00000650 at -697.

41 Madison Avenue, New York, NY 10010    Main: 212.633.4310    cgr-law.com

Hon. Jennifer L. Rochon
June 9, 2026
Page 6 of 6

29, 2025) ("the work performed [] in order to win [] counterclaim for fees did not constitute fees on fees and should be recoverable"); *Aristocrat Plastic Surgery P.C. v. Silva*, 2025 WL 26191, at *5 (N.Y. Sup. Ct. Jan. 3, 2025) ("The Plaintiffs' contention that attorneys' fees should be fixed at the time their causes of action were dismissed is not persuasive."); *Golan v. Daily News, L.P.*, 2023 WL 5900247, at *2 (N.Y. Sup. Ct. Sep. 11, 2023) ("It therefore cannot be disputed that Defendants are entitled to fees and costs for the appellate proceedings here.").

Cassava appears to concede that plaintiffs are entitled to recover fees for the prosecution of this action, but proposes fees be limited to those associated with recovering the cost of defending the Defamation Action (and not those for pursuing compensatory and punitive damages). This proposal is novel, without basis in statute or caselaw, and makes no sense. The anti-SLAPP law provides for compensatory and punitive damages to deter bad-faith litigation. At least one court has held that all fees incurred by an anti-SLAPP movant were recoverable, even though the request for compensatory and punitive damages was denied. *See Aristocrat Plastic Surgery P.C. v. Silva*, 2023 WL 6553906, at *2 (N.Y. Sup. Ct. Oct. 4, 2023); *see also Aristocrat*, 2025 WL 26191, at *5 (awarding fees for appeal). To limit fees to one of the three prongs of the anti-SLAPP law would defang the deterrent purpose of the regime.

### D. Conspiracy

Barbier and Dr. Burns renew their request for dismissal from the Anti-SLAPP claim on the basis that they cannot be liable for "conspiring" with their own employer under the "intra-company conspiracy" doctrine. (ECF 213.) But the Court was correct to deny the individual defendants' motion to dismiss by reference to the "personal-interest exception," (MTD Or. 35), and the evidence found in discovery maps cleanly onto that doctrine. Dr. Burns was not only personally interested but ███████████████████████████. She was co-author of key articles with Dr. Wang—███████████████████████████████████████ And Barbier had the exact personal interests alleged, including through his marriage to Dr. Burns and his compensation tied to Cassava's elevated stock price.[16]

Defendants' proposed motions are plainly without foundation. Especially given the present context, plaintiffs propose that the Court construe the defendants' letters to be their motions and deny them. *See StreetEasy, Inc. v. Chertok*, 730 F. App'x 4, 6 (2d Cir. 2018).

Respectfully submitted,

/s/Isaac B. Zaur

Isaac B. Zaur

cc: All counsel of record (by ECF and email)

---

[16] Defendants' one proffered item of evidence on this front is hardly helpful to them, consisting as it does of ████████████████████████████████████████████ CASSAVA_001494747 at -478.