# EXHIBIT 20

HIGHLY CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN HEILBUT, JESSE        §
BRODKIN, AND ENEA            §
MILIORIS,                    §   CASE NO.
                             §   1:24-CV-05948-JLR-OTW
    PLAINTIFFS,              §
                             §
V.                           §
                             §
CASSAVA SCIENCES, INC.,      §
REMI BARBIER, AND            §
LINDSAY BURNS,               §
                             §
    DEFENDANTS.              §

**HIGHLY CONFIDENTIAL**
ORAL AND VIDEOTAPED DEPOSITION OF
LINDSAY BURNS
NOVEMBER 13, 2025

   ORAL AND VIDEOTAPED DEPOSITION OF LINDSAY BURNS, produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above styled and numbered cause on Thursday, November 13, 2025, from 9:03 a.m. to 6:03 p.m., before TAMARA CHAPMAN, CSR, RPR-CRR in and for the State of Texas, reported by computerized stenotype machine, at the offices of Baker & Hostetler, LLP, 111 Congress Avenue, Austin, Texas, pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record herein.

HIGHLY CONFIDENTIAL

Page 151

Q.    And what is your understanding of why enrollment took longer?

A.    Because trial sites were slow to sign on, some of them declined, patients were slow to enroll, all of that together, it was time, effort, and money.

Q.    To your knowledge, if any, what was the company's purpose for filing the defamation action?

MR. CAMPBELL:  Objection.

A.    I don't know.  I -- I was not involved. I wasn't -- I had no role in the decision processing.  And nothing was shared with me.  I don't know.  Well, you have to ask them.

Q.    Who?

A.    The legal team who filed it.  Why don't you call up Benesch?

Q.    Who aside from Benesch would you go to if you wanted to understand why the company filed the defamation action?

A.    Benesch would be the one to talk to, perhaps the board.  It was a board action.  I -- I don't communicate with the board.

Q.    Mr. Barbier was on the board.  Right?

A.    Yeah.

Q.    You communicated with him?

HIGHLY CONFIDENTIAL

Page 152

A.    Not on company matters.

Q.    Your testimony is that you've never communicated with Mr. Barbier about company matters?

MR. CAMPBELL:  Objection to form.

A.    That's not my -- my testimony. Particularly on legal matters, he kept me in the dark intentionally.

Q.    So your testimony is you had no involvement in any way in the defamation action?

A.    Absolutely.  Correct.  I had no involvement.  I didn't even know for sure it was being filed.

Q.    Marked as Exhibit 192 a document marked CASSAVA_000741222.

(Exhibit 192 was marked.)

Q.    Exhibit 192 appears to be an email from you, Dr. Burns, dated October 29th 2022 to Kate Watson-Moss at the law firm Benesch.  Do you see that?

A.    Yes.

Q.    And you write:  This was PLOS's response to COPE's request for information.  Basically the requested process flow is just a list of dates. Lindsay.

Do you see that?

HIGHLY CONFIDENTIAL

Page 262

Q.    And did that decision by PLOS One to retract those five articles ever cause you to question in any way whether any of the claims by our clients or other critics of the company might have some truth or validity to them?

A.    No, because there was no evidence of any data manipulation.  Yet, they -- they retracted.  No journal editor ever found any evidence of data manipulation.  None.

Q.    Do you recall any feedback or reactions from people after news of the PLOS One retractions became public around March of 2022?

A.    We were probably, you know, hand-holding clinical sites spending hours and hours again as -- as we were with all the hit pieces.  I don't remember.

Q.    I'll mark as Exhibit 209 a document Bates-stamped CASSAVA_000956262.

(Exhibit 209 was marked.)

Q.    Okay.  This appears to be an email from you, Dr. Burns, to Remi Barbier, Guy Singer, and William Foley dated April 5th, 2022.

Do you see that?

A.    Is this a privileged communication with -- with counsel on here?

HIGHLY CONFIDENTIAL

Page 263

MR. WU:  Hold on one second.

MR. KUMAGAI:  I don't think so, but --

MR. WU:  Hold on one second.  Let me just take a look.

THE WITNESS:  Hang on.

MR. KUMAGAI:  Okay.  Let's go off the record.

THE VIDEOGRAPHER:  I need both sides to --

MR. KUMAGAI:  Can you agree to go off the record?

MR. WU:  Go off the record.  Yeah.

THE VIDEOGRAPHER:  Going off the record.  The time is 4:37.

(Break.)

THE VIDEOGRAPHER:  Back on the record.  The time is 4:46.

Q.    All right, Dr. Burns.  So this is an email you sent, Exhibit 209, to Mr. Barbier and two lawyers at Orrick, it looks like, on April 5th, 2022.

Do you see that?

A.    Yes.

Q.    And you write to them:  More sites

HIGHLY CONFIDENTIAL

Page 264

concerned about PLOS that we have to address.

Do you see that?

A.    I see that.

Q.    And so is that a reference to sites raising concerns about the retractions that PLOS had issued?

A.    This is concerns of sites about these PLOS retractions, yes.

Q.    And did you have any discussions with any sites where they mentioned concerns about PLOS?

A.    Did I have discussions with sites?  I think so.  I can't remember specifically which, but this was a record of damage caused by your clients because one site said, sorry, can't do it; we're going to have to, you know, not -- we're going to withdraw our site.

Q.    Do you blame our clients for the scientific journal, PLOS One's, decision to retract those five articles?

MR. CAMPBELL:  Object to form.

A.    They contributed.

Q.    Who else contributed?

A.    I don't know.

Q.    Do you know an individual by the name of Elizabeth McNally or Beth McNally, Dr. Beth McNally?