# EXHIBIT 154

Benesch

J. Erik Connolly
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Direct Dial: 312.624.6348
econnolly@beneschlaw.com

May 5, 2022

**VIA EMAIL & FEDEX**

**NOT FOR PUBLICATION**

***The New York Times***
Ms. Diane M. Brayton
EVP, GC, & Secretary
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-5995
Email: braytd@nytimes.com

Re: *The New York Times* Report "Scientists Question Data Behind an Experimental Alzheimer's Drug"

Dear Ms. Brayton,

My firm is outside counsel for Cassava Sciences, Inc. This letter concerns a news report published by *The New York Times* on April 18, 2022 titled "Scientists Question Data Behind an Experimental Alzheimer's Drug" by Apoorva Mandavilli (the "Report").[1] I write to notify *The Times* of the significant issues with the Report: namely, that it amplifies a false narrative from sources who stand to gain financially from harming Cassava, omits information that contradicts the reporter's preconceived narrative, and fails to disclose important information and context to its readers. Given those facts, it comes as no surprise that the Report contains a number of factual inaccuracies about my client and the new drug treatment (simufilam) it is developing for people with Alzheimer's disease. We respectfully request that you correct these inaccuracies, disclose the conflicts of the sources quoted in the Report, and update the Report to mitigate the ongoing harm to Cassava as quickly as possible. Please note that this letter and the information it contains are not for publication.

Before I address the issues with the Report, it is worth noting that my client respects and appreciates *The New York Times'* role in informing its readers of new and potentially exciting scientific breakthroughs. As a science organization, Cassava expressly supports the exercise of free speech and dissenting opinion. However, even the importance of *The New York Times* does not justify the knowing publication of false and defamatory information that a reasonable reporter would know, or suspect, constitutes a reckless representation of Cassava prior to publication.

[1] The Report is available online at https://www.nytimes.com/2022/04/18/health/alzheimers-cassava-simufilam.html.

"[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in uninhibited, robust, and wide-open debate on public issues." *Gertz v. Welch*, 418 U.S. 323, 340 (1974). In this case, there is ample evidence that Reporter Mandavilli came to her reporting with a preconceived narrative that has been promoted for many months by known short sellers of Cassava stock. It appears that Reporter Mandavilli knew before she called any of the nine "experts" quoted in her story that most—if not all of them—held negative views of Cassava and its science. Seven of the nine "experts" she quoted had previously made critical, negative statements publicly about Cassava and its science. Those statements, which are discoverable by a simple Google search, appeared in a story in *The New Yorker* on January 17, 2022, on Twitter, and in the Citizen Petition filed against Cassava, as well as in medical/pharma publications and journals, websites, and other public venues.[2]

Reporter Mandavilli's preconceived narrative was not only supported by her selection of biased sources whose views were already known, but by sources whose conflicts of interest were not meaningfully disclosed in the Report, if disclosed at all. Throughout her reporting, she made decisions that evidenced her purposeful avoidance of the truth by failing to use neutral sources and refusing to interview sources with firsthand knowledge of the potential benefits of simufilam. Those decisions resulted in a story that can only be described as an unbalanced, biased hit piece, as evidenced by its tone, its content, and its spin. The Report is inaccurate and undercuts Cassava at every turn. This is not the kind of neutral and balanced reporting that *The Times* is known for. Cassava is hopeful that with this letter, *The Times* will take quick action to remedy these problems and avoid further damage to Cassava and the public.

## I. The undisclosed biases held by the Report's sources render them unreliable, and Reporter Mandavilli's failure to seek and interview sources supportive of Cassava is evidence of purposeful avoidance of the truth.

One of the central problems with the Report is that it appears to be based on statements and information from sources that financially benefited or stand to benefit from harming Cassava. Indeed, there is ample publicly available information regarding the conflicts of interest—almost all of which was not disclosed in the Report—for most of the nine sources identified by name in the Report:

[2] There is also a question as to whether Reporter Mandavilli got her list of "experts" from Jordan Thomas or his clients, who filed a Citizen Petition against Cassava with the FDA. *The New York Times* Report stated that it "contacted nine prominent experts for comment about the scientific underpinnings of Cassava's trials. All said they did not trust the company's methods, results or even the premise underlying the drug's supposed effectiveness." *The New Yorker* story states, "[a]t Thomas's urging, the doctors sent Cassava's papers to ten prominent experts." Two of the three "experts" who were identified as being on Thomas' list in *The New Yorker* story were also quoted in *The New York Times* Report, suggesting that Reporter Mandavilli's reporting, in this instance, was likely driven by the same sources pursued by short sellers who stood to gain financially from disparaging Cassava.

- **Dr. Elisabeth Bik**: Dr. Bik's campaign against Cassava is as well-known as it is persistent. The ethical issues surrounding Dr. Bik's criticism of Cassava have been discussed at length online and need not be rehashed here. Suffice it to say that Dr. Bik has never disclosed her funders and whether they are associated with Cassava's competitors or short sellers of Cassava stock. Dr. Bik self-identifies as a champion of scientific integrity, yet her refusal to make any basic disclosures regarding competing interests or financial conflicts is alarming—indeed, she has said that she would never disclose that information without a search warrant. Dr. Bik's unexplained and unnatural criticism of Cassava goes beyond any concept of scientific debate. It appears that Reporter Mandavilli relied heavily on Dr. Bik in her reporting, and, according to information we have received, that Reporter Mandavilli may have shared my client's private emails to her with Dr. Bik.
- **Dr. David Bredt**: Dr. Bredt is a known short seller of Cassava securities. Additionally, he is the named inventor on a neurobiology patent that may compete with Cassava's supposedly "impossible science." He has also been affiliated with companies, such as MPM Venture Capital/Protego Biopharma, Inc., that directly compete with Cassava.
- **Dr. Geoffrey Pitt**: Dr. Pitt is another known short seller of Cassava securities. He, along with Dr. Bredt, filed a Citizen Petition with FDA attacking Cassava while simultaneously taking a short position in its stock. The Citizen Petition was flatly rejected by the FDA for presenting allegations without evidence. Moreover, the Report does not disclose the fact that Dr. Pitt is a cardiologist with no specialized background in neuroscience.
- **Dr. Roger Nicoll**: Nowhere in the Report is the fact that Dr. Nicoll has a close relationship and affiliation with Dr. Bredt. Indeed, the fact that Dr. Nicoll and Dr. Bredt are close research collaborators is publicly available. Moreover, the Report did not disclose the fact that Dr. Nicoll's employer, the University of California, San Francisco, had been serving as a clinical site in Cassava's Phase 3 clinical program. This context is necessary to evaluate his inflammatory statement attacking Cassava, and it is entirely missing from the Report.
- **Dr. Thomas Südhof**: The Report's discussion of Dr. Südhof is telling. Reporter Mandavilli discloses the fact that Dr. Südhof "consults for drug companies and serves on the board of Sanofi." This disclosure is insufficient. She waits until close to the end of the Report to disclose just one of Dr. Südhof's many conflicts, apparently choosing not to taint his earlier statements with any indicator of his bias. This is especially egregious considering the number of doctors referenced in the article—the steps required to recall Dr. Südhof's earlier statements and connect his affiliation after the fact asks too much of readers. Moreover, Reporter Mandavilli leaves out the critical fact that Sanofi is a competing developer of Alzheimer's drugs.[3] But even if the Report fixed those two issues, its disclosure of Dr. Südhof's potential conflicts would be inadequate, as a simple Google search of his name would reveal. First, Dr. Südhof was solicited by short sellers of Cassava stock for his opinion on Cassava, suggesting that

[3] Very few of the readers of the Report would know this fact.

he may have been primed to speak negatively about my client. Second, he is a member of Catalio Venture Partners, which consists of 36 scientists-entrepreneurs with a financial stake in a $1 billion fund that invests in private and public neuro-companies that compete with Cassava. Third, he is a co-founder of Boost Neuroscience and Neucyte, Inc., more potential competitors of Cassava. Fourth, he is a scientific advisor to Elysium Health, Simcere Pharmaceutical Group, and Alector Therapeutics—all companies that compete with Cassava in the development of new drug treatments for aging or neurological conditions. None of these affiliations are disclosed in the Report.

- **Dr. William Hu**: Dr. Hu is yet another doctor associated with short sellers of Cassava securities. He was quoted in a Citizen Petition submitted by short sellers to the FDA on November 17, 2021, presenting a question as to his affiliation with Dr. Bredt and Dr. Pitt. Moreover, the Report describes him as "an expert on spinal fluid markers at Rutgers who works with a number of companies that develop such assays." But the Report *does not* identify those companies, including whether or not they compete with Cassava. Nor does Reporter Mandavilli inform the reader that there are many remaining industry-wide questions regarding the use of biomarkers in clinical practice and in research, especially around high variations and inconsistencies across clinical studies and in different neurodegenerative disorders. Additionally, Dr. Hu has previously consulted for Biogen, a Cassava competitor. These facts, which are publicly available, were not disclosed in the Report either.
- **Dr. David Vaux**: Like Dr. Hu, Dr. Vaux is another source affiliated with short sellers of Cassava stock. He is a cancer researcher in Australia with no apparent credentials in Alzheimer's disease, yet he was cited in a submission the short sellers submitted to the FDA on August 30, 2021, presenting a question as to his affiliation with Dr. Bredt and Dr. Pitt.
- **Dr. Lawrence Honig**: Dr. Honig has worked on Eli Lilly's solanezumab, a potentially competitive Alzheimer's treatment that has failed five times in large clinical studies. This monumental failure, which Reporter Mandavilli would have discovered with a simple PubMed search, is not disclosed in the Report.
- **Dr. Robert Howard**: Dr. Howard is a trustee of Alzheimer's Research UK, an organization that works with companies to develop research and fund treatments for Alzheimer's disease. That organization has announced that it has two drugs for Alzheimer's under development, both of which work on a "build-up of abnormally folded proteins," not unlike Cassava's simufilam. Moreover, he has spoken at conferences with Dr. Bik, a loud and persistent critic of Cassava. None of these affiliations, all which are easily identifiable via Google, were disclosed in the Report.
- **Dr. George Perry**: Dr. Perry was retained by NervGen Pharma Corp. in 2020 to guide the development of the Company's lead compound, NVG-291, in the treatment of Alzheimer's, yet another treatment that competes with simufilam. He remains on NervGen's advisory board. Interestingly, when it comes to NervGen—where he is a paid advisor—he is "*intrigued with the novel mechanism of action [of NervGen's drug, NVG-291] . . . and its potential to have a beneficial effect for Alzheimer's disease*

> *patients*."[4] But when it comes to Cassava—where he is *not* a paid advisor—he is uncomfortable with simufilam's novel science. Moreover, he is personally invested in three companies that have direct conflicts of interest with Cassava: Investacure, a Wall Street-based finance company working on "a cure for Alzheimer's"; Neurotez, a company developing treatments for Alzheimer's disease, where he serves as Chief Scientific Officer; and Synaptogenix, a company that develops treatments for Alzheimer's, where he serves as Chairman of its scientific advisory board. None of these affiliations were disclosed in the Report.

As your own Code of Ethics acknowledges, reporters "must be aware that sources are eager to win [reporters'] good will for reasons of their own."[5] This requirement is aligned with the legal framework for defamation claims, whereby the failure of a reporter to probe, consider, and disclose a source's bias can support an inference of actual malice, especially where the source has an "obviously vindictive and antagonistic attitude[]" toward the subject of a report. *Harte-Hanks Communications v. Connaughton*, 491 U.S.657, 689 n.36 (1989); *see also Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016) (allowing defamation claim to proceed where reporter should have further investigated source's allegations and had reason to doubt source's credibility).

As set forth above, the biases of the identified sources were either not adequately disclosed in the Report or not disclosed at all. One would expect that a reasonable reporter for *The Times* would have spoken with more than just sources with obviously antagonistic views about Cassava. We believe it is telling that Reporter Mandavilli did not seek out sources with other points of view in order to achieve a balanced article. Assuming she was not aware of the conflicts beforehand, we believe it is also telling that she did not ask the basic questions necessary to assess the bias of each source, such as whether each source knew or had ever been affiliated with Dr. Bredt, Dr. Pitt, their attorney Jordan Thomas, or any other known short sellers of Cassava securities; whether the source was or has been short Cassava stock; whether the source has ever been compensated by Mr. Thomas or anyone else in connection with their statements about Cassava; whether the source had ever discussed serving as an expert witness against Cassava; whether the source had ever been compensated by any funds in a way that could impact their objectivity; whether the source had any conflict of interest or potential conflict with Cassava; and whether the source had ever been affiliated with any competitor of Cassava. If these questions were not asked and answered, there is serious doubt as to the journalistic integrity of the Report, warranting retraction.[6] At best, it is

---

[4] Press Release, NervGen Pharma, NervGen Pharma Retains Dr. George Perry To Advise on Alzheimer's Disease Program / NervGen Renews Business Advisory Relationship with Brian McAlister (Nov. 10, 2020), https://nervgen.com/2020/11/nervgen-pharma-retains-dr-george-perry-to-advise-on-alzheimers-disease-program-nervgen-renews-business-advisory-relationship-with-brian-mcalister/.

[5] *Ethical Journalism: Pursuing the News*, THE NEW YORK TIMES, https://www.nytimes.com/editorial-standards/ethical-journalism.html#pursuingTheNews (last visited May 2, 2022).

[6] That said, simply including more fulsome information about the biases of these sources is not sufficient to cure the taint their statements have deposited on the Report. *See Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 117 (2d Cir. 2005) (reversing motion to dismiss where "article's

bad reporting. At worst, it is evidence of purposeful avoidance of the truth. See *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (actual malice can be established where reporter failed to investigate and there were obvious reasons to doubt the veracity of the source being used—*i.e.*, purposefully avoided the truth).

**II. Reporter Mandavilli's refusal to interview Hilary Metz is further evidence of her purposeful avoidance of the truth and actual malice.**

Unfortunately, Reporter Mandavilli's failure to adequately investigate and disclose the biases of her sources[7] is not the only indicator of purposeful avoidance related to the Report. On April 14, 2022, Hilary Metz, the daughter of a patient with Alzheimer's disease who was enrolled in and experienced improvements from a clinical study of simufilam, emailed Reporter Mandavilli, offering to share her family's positive experiences with the treatment. Reporter Mandavilli dismissed her out of hand, stating that she was only "focusing on the recent news about the retractions":

defamatory tendency is not wholly offset by the giving of [plaintiff's] side of the story," including plaintiff's denials and explanations).

[7] And, based on the information available about these sources, we believe that there is a high probability that she was aware of most, if not all, of her sources' biases before interviewing them. *See supra* Part I.

**NOT FOR PUBLICATION**
May 5, 2022
Page 7

Gmail — Matthew Nachtrab <[redacted]@gmail.com>

**Fwd: Cassava Sciences**
1 message

**Hilary Metz** <[redacted]@gmail.com> — Thu, Apr 14, 2022 at 10:42 PM
To: [redacted]@gmail.com

---------- Forwarded message ---------
From: **Apoorva Mandavilli** <apoorva.mandavilli@nytimes.com>
Date: Thu, Apr 14, 2022 at 10:36 PM
Subject: Re: Cassava Sciences
To: Hilary Metz <[redacted]@gmail.com>

Dear Hilary,

Thanks for reaching out. I'm so sorry to hear about your father. In this article, I'm focusing on the recent news about the retractions. But if the story progresses, I will reach out to you to arrange a time to speak.

Thanks again,
Apoorva

On Thu, Apr 14, 2022 at 11:01 AM Hilary Metz <[redacted]@gmail.com> wrote:

Good Morning Ms. Mandavilli,

I got your contact information from Matt Nachtrab in my search for other people involved in the clinical studies with

Cassava Sciences for Alzheimer's Disease.

My father has been enrolled in the study since September 1, 2021. I would love to speak with you and maybe get an intro to other families you have interviewed. I am very passionate about getting my father's story, and the effects of that on my family out.

The saddest part about the sabotage that is happening with this company, is that the people doing this, will likely at some point have someone they love be affected by alzheimers. Until it's your own family member, it's hard to imagine what the reality is and how it affects every aspect of your life, to feel that you are losing a family member one memory at a time.

I am available to talk whenever is convenient for you.

Thank you in advance for your time.

Best,

Hilary Metz

Admitted to Practice in the States of Florida and New York
Admitted in the US District Court Southern District of Florida

NOTICE TO RECIPIENT: THIS ELECTRONIC TRANSMISSION, INCLUDING ANY ATTACHMENTS CONTAINS INFORMATION THAT MAY BE CONFIDENTIAL AND/OR ATTORNEY-CLIENT OR ATTORNEY WORK PRODUCT PRIVILEGED BY LAW. THIS TRANSMISSION IS INTENDED FOR THE SOLE USE OF THE RECIPIENT NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT AND YOU RECEIVED THIS TRANSMISSION IN ERROR, RETENTION, REVIEW, USE, COPYING, OR DISTRIBUTION OF THIS INFORMATION IS STRICTLY PROHIBITED. PLEASE NOTIFY BY RETURN E-MAIL AND DELETE THIS MESSAGE IF RECEIVED IN ERROR. THANK YOU FOR YOUR CONSIDERATION.

It is our understanding that Reporter Mandavilli never followed up with Ms. Metz, who does not appear in the Report.

Of course, evidence that a reporter demonstrated "an intent to avoid the truth" can be sufficient to show an "extreme departure from professional publishing standards." *Harte-Hanks*, 491 U.S. at 693. This email, which Reporter Mandavilli essentially ignored, is clear evidence of selection bias and purposeful avoidance. She had the opportunity to interview a source with unique, valuable, and firsthand insight into the potential benefits of simufilam, but apparently ignored it because it was inconsistent with the narrative she was looking to publish. *See Stokes v. CBS Inc.*, 25 F. Supp. 2d 992, 1004 (D. Minn. 1998) (there is sufficient evidence of actual malice where reporter refused to ask questions because "they might well have been afraid of what the answers would be" and had a "preconceived storyline"). The fact that she ignored the email from

Ms. Metz, considered next to the fact that almost all of the sources she used to write the Report are motivated to harm Cassava, is deeply troubling.

## III. Reporter Mandavilli's preconceived narrative for the Report is inaccurate and misleading.

Given the serious issues with Reporter Mandavilli's reporting, it is not surprising that the Report also suffers from factual problems. And they are not complicated problems: they are simple. A careful reader of the Report would never know that simufilam has been successful in clinical trials, including a trial whose results are publicly available on the ClincalTrials.gov website. Those facts, inconsistent with the Report's narrative, are replaced with language and inuendo designed only to besmirch Cassava, its personnel, and simufilam.

Reporter Mandavilli used inflammatory language that distorts the truth of Cassava's public statements. For example, she starts the Report by alleging that Cassava Sciences "*trumpeted an exciting new treatment for Alzheimer's disease.*" That is not accurate. First, it can hardly be said that Cassava "trumpeted" anything. In July 2021, Cassava announced their nine-month interim results of its open-label study with a simple two-page press release, stating that "*these clinical data… suggest highly encouraging and durable treatment effects for people living with Alzheimer's disease*." When Cassava announced its 12-month interim results in September 2021, its press release was even more subdued, stating that the Company "*feel[s] energized and encouraged by the clinical data*." That was the extent of Cassava's publicity surrounding these results. If Reporter Mandavilli heard trumpets in the air, surely the sound didn't come from Cassava. Second, in her statement, Reporter Mandavilli implies that Cassava claimed it has an effective new treatment for Alzheimer's disease. This implication is false. Cassava has never, and would never, make that claim. Mandavilli is a health reporter and should know that the FDA is the final arbiter of clinical safety and efficacy. That assessment can only be made based on the FDA's review of clinical data from Phase 3 studies; in the case of simufilam, Reporter Mandavilli knew that such studies are still ongoing. Misleading statements about a drug candidate's safety or efficacy can jeopardize the health of patients and fits the FDA's description of health care fraud as "articles of unproven effectiveness."

Similarly, Reporter Mandavilli stated that "Cassava is new to Alzheimer's research." That statement is false. Cassava has been engaged in this area of research since 2006. That Cassava is taking a new approach to treating Alzheimer's is not the same as being "new" to the area of study.

In yet another example of Reporter Mandavilli's pursuit of a preconceived storyline, the Report misleadingly presents the retraction of five papers by Dr. Wang, all of which are unrelated to Alzheimer's disease, in an attempt to discredit his work with Cassava. In the Report, Reporter Mandavilli expressly states that five scientific papers by Dr. Wang have been retracted. What she does not explain, however, is that none of those papers are about Alzheimer's disease—three of the five papers are about cocaine, and two are about opioids. The title of each paper makes it plain that they have nothing to do with Alzheimer's.[8] It is unclear how Reporter Mandavilli could have

[8] The titles of these papers are (i) "*Prenatal Cocaine Exposure Increases Synaptic Localization of a Neuronal RasGEF, GRASP-1 via Hyperphosphorylation of AMPAR Anchoring Protein, GRIP*,"

confused Alzheimer's with cocaine or opioids, unless she adapted a pre-set narrative to smear Cassava. Moreover, three of the five papers have no ties to Cassava. Again, it is unclear how Reporter Mandavilli could write an article *about* Cassava while referencing three papers that have nothing to do with Cassava. Had Reporter Mandavilli dug in, she also would have learned that the five papers were retracted due to the efforts of Dr. Bik. This, of course, takes us full circle back to unexplained, undisclosed, and highly curious conflicts of interest among Reporter Mandavilli' sources. It is also worth noting that these retractions were based on less than a dozen pixels, out of possibly millions, in the background of an image, which are repetitive and different from those in the foreground. Background pixels have no impact on the data or its interpretation. This is as if *The Times* retracted an issue of its newspaper due to an unexplained smudge on the corner of five page, even though those smudges had no effect on the printed articles. For that reason, the legitimacy of these retractions remains in dispute.

Reporter Mandavilli also failed to include information that puts the narrative she tells in the Report into question. For example, the Report does not disclose the fact that none of Cassava's officers or directors have sold stock in Cassava for many years, even when the stock traded at over $100 per share in 2021. By contrast, ***short sellers of Cassava Securities are said to have made a quick $100 million profit in a few weeks*** by shorting Cassava's stock. That statement alone would have provided context, meaning, and clarity of purpose for readers of the Report. Moreover, we also note that since the Report was published, Cassava's stock price had declined an additional 18%, or approximately $200 million, driven at least in part due to the negative statements contained in the Report, providing short sellers with another bite of the apple.

The effect of the inclusion of inaccurate information, the use of inflammatory language, and the absence of true information has the combined result of the Report giving the false impression that simufilam is conclusively ineffective and unsafe and that Cassava has engaged in misconduct. These unfavorable impressions are untrue and impugn the moral character of Cassava's employees and advisors. As such, they are *per se* defamatory. *See Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 180 (2d Cir. 2000) ("Where a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed."). While the potential harm of the Report cannot be fully encompassed in one sentence, prior cases with similar facts and circumstances make it clear that there are causes of action associated with the uncorrected publication of erroneous statements. *See, e.g.*, *Gilmore v. Jones*, 370 F. Supp. 630, 673 (W.D. Va. 2019) (allowing defamation claim to proceed where there was evidence that reporter "conceived a storyline" and then "consciously set out to make his false statements about [the plaintiff] confirm to that storyline"); *Eramo*, 209 F. Supp. 3d at 872 (allowing defamation claim to proceed where reporter had a preconceived story line and may have

---

(ii) "*Prenatal Cocaine Exposure Upregulates BDNF-TrkB Signaling*," (iii) "*Prenatal Cocaine Exposure Uncouples mGluR1 from Homer1 and Gq Proteins*," (iv) "*High-Affinity Naloxone Binding to Filamin A Prevents Mu Opioid Receptor–Gs Coupling Underlying Opioid Tolerance and Dependence*," and (v) "*Naloxone's Pentapeptide Binding Site on Filamin A Blocks Mu Opioid Receptor–Gs Coupling and CREB Activation of Acute Morphine*."

consciously disregarded contradictory evidence, should have further investigated source's allegations, had reason to doubt source's credibility, and ignored evidence contradicting source).

**IV. The Report has damaged not only Cassava, but also the medical community and patients with Alzheimer's disease.**

Unfortunately, there has been a recent trend of short sellers using well-established news outlets like *The Times* to disparage Cassava in order to promote their own biased messaging for pecuniary gain. This has resulted in significant harm to my client's reputation. Being used to manipulate financial markets in this way is inconsistent with *The Times'* reputation for journalism that is generally considered neutral, fair, and ethical. Cassava is hopeful that a correction and update from *The Times* addressing the biases of the Report's sources and the factual inaccuracies contained therein will help put an end to the market manipulation and damage to Cassava.

It cannot be overstated: the stakes in this matter are high. It is not only Cassava's reputation and stock price at risk. In this case, the collateral damages caused by irresponsible reporting are borne by the patients with Alzheimer's disease who may be deprived of a promising treatment candidate. Already, as a result of *The Times'* reporting, one clinical testing site has withdrawn from simufilam's Phase 3 study program, making it more challenging to locate participants for the study. As discussed above, there have been no reports that simufilam is unsafe, and the goal of the Phase 3 study is to determine simufilam's long-term safety and effectiveness in people with Alzheimer's. The false and disparaging reporting published by *The Times* serves only to halt the progress of that study and deprive families of one more option to help their loved ones while also making short sellers of Cassava stock richer. That is not the kind of reporting *The Times* has ever embraced, and it should be wholly rejected now.

* * *

Given the issues set forth above, Cassava requests that Reporter Mandavilli respond to the following questions regarding each source used in the Report, including any unnamed sources:

- Has the source ever known, been affiliated with, or aided Dr. Bredt, Dr. Pitt, their attorney Jordan Thomas, or any other short sellers of Cassava securities?
- Has the source or any of their immediate family ever shorted Cassava stock?
- Has the source ever been compensated by Mr. Thomas or anyone else in connection with their statements or opinions about Cassava?
- Has the source ever discussed providing an "expert opinion" related to Cassava?
- Has the source ever been compensated by any funds in a way that could impact their objectivity?
- Has the source ever had any conflict of interest or potential conflict with Cassava?
- Has the source ever been affiliated with any competitor of Cassava?

- Is the source an expert on the biology of Alzheimer's disease? An expert on drug development for neurological conditions?
- What firsthand information about Cassava, its products, and/or its studies does the source have?
- Has the source ever spoken with any of Cassava's clinical patients?
- Has the source ever spoken with Cassava?
- Has the source ever spoken with any clinicians involved in Cassava's clinical studies?
- Finally, did Reporter Mandavilli share her email communications from Cassava with any source?

Moreover, to the extent that Reporter Mandavilli did not ask these questions of her sources, we would ask that she explain why she chose not to ask these extremely relevant and pertinent questions. We also request that Reporter Mandavilli respond to the following additional questions regarding her reporting: (1) whether Reporter Mandavilli got her sources for the Report from Mr. Thomas, Dr. Bredt, Dr. Pitt, Dr. Bik, or anyone affiliated with them; (2) whether Reporter Mandavilli was aware of her sources' previous negative statements about Cassava, including whether she reviewed the January 2022 story that appeared in *The New Yorker* or the Citizen Petition; (3) whether Reporter Mandavilli was aware that the five retracted research papers were not about Alzheimer's; and (4) whether Reporter Mandavilli ran and reviewed any Twitter or Google searches related to her sources before she published the Report.

Cassava respectfully requests that you issue a correction to the Report as soon as possible to avoid further harm to its reputation and business. We further request that you let us know whether *The Times* will correct the false statements in the Report by 5 p.m. eastern time on Wednesday, May 11, 2022. Both Cassava and I would be happy to meet with you, Reporter Mandavilli, and her editor to further discuss these issues and the promise of simufilam if that would be helpful in resolving this matter expediently.

Very truly yours,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

J. Erik Connolly

JEC:kwm