# EXHIBIT 180

orrick

Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000

orrick.com

**Guy David Singer**

**E** gsinger@orrick.com
**D** +1 212 506 3510

March 8, 2023

***Via Email***

Derek Davis, Esq.
The City University of New York
Office of the General Counsel
205 East 42nd Street
New York, New York 10017
derek.davis@cuny.edu

Matthew Drost, Esq.
Research Foundation of CUNY
Chief Counsel
230 W. 41st St., 7th FL
New York, NY 10036
Matthew_Drost@rfcuny.org

Rosemarie D. Wesson, Ph.D.
Tamera Schneider, Ph.D
The City University of New York
Wille Administration Building
160 Convent Avenue
New York, NY 10031
rwesson@ccny.cuny.edu
tamera.schneider@cuny.edu

Re: CONFIDENTIAL: Research Misconduct Inquiry Concerning Professor Hoau-yan Wang

Mr. Davis, Mr. Drost, Dr. Wesson and Dr. Schneider,

This firm represents Cassava Sciences, Inc. ("Cassava" or the "Company"), a clinical-stage biopharmaceutical company focused on developing first-in-class medicines for people with debilitating neurodegenerative conditions.[1] For nearly two decades, Cassava has sponsored preclinical and clinical trial research through the Research Foundation of CUNY with Dr. Hoau-yan Wang, a tenured professor at CUNY School of Medicine, acting as the principal investigator.[2]

---

[1] Prior to 2019, Cassava was known as Pain Therapeutics, Inc.

[2] *See, e.g.*, December 15, 2004 Preclinical Research Agreement by and between Pain Therapeutics, Inc. and the Research Foundation of CUNY, and related amendments ("First Preclinical Agreement"); April 15, 2005 Preclinical Agreement by and between Pain Therapeutics, Inc. and the Research Foundation of CUNY ("Second Preclinical Agreement); August 1, 2012 Preclinical Research Agreement by and between Pain Therapeutics, Inc. and the Research Foundation of CUNY, and related amendments ("Third Preclinical Agreement"); August 1, 2018 Clinical Trial Agreement by and between Pain Therapeutics, Inc. and the Research Foundation of CUNY, and related amendments ("Clinical Agreement").

Cassava is aware that CUNY has initiated a research misconduct investigation into Dr. Wang's work, including research that he performed on Cassava's behalf, and that the investigation has been pending for many months. To date, however, CUNY has not provided Cassava with any information concerning the investigation, in violation of CUNY's own policies. Indeed, CUNY's research misconduct policy expressly requires both the Vice Provost for Research and the Research Foundation to "report . . . to all applicable regulatory agencies ***and research sponsors*** with regard to Allegations of Research Misconduct[.]" *See* Policy 1.24 at ¶ 9.1; *see also id.* ("[R]eporting requirements may begin immediately upon receipt of an Allegation and continue during and after the Research Misconduct Proceedings."). The policies further require the Vice Provost for Research to "immediately notify" the research sponsor "if the University has reason to believe that," among others things, "[r]esearch sponsor resources or interests are threatened" or "[t]here is a reasonable indication of possible violations of civil or criminal law." *See id.* ¶¶ 9.2, (a) and (c). Finally, the policies obligate the investigation committee to "comply with the requirements of [the] applicable . . . research sponsor [in this case, Cassava] regarding the interviewing of individuals in connection with the Investigation[.]" *See id.* ¶ 7.5.

In apparent disregard of these obligations, we understand that neither the Vice Provost for Research nor the Research Foundation (nor anyone else associated with CUNY) has contacted or provided any information to Cassava regarding the investigation into alleged research misconduct by Dr. Wang. For instance, CUNY has not even provided Cassava with the allegations that the investigation committee is purportedly considering. There is no question that any findings by a committee regarding the allegations made against Dr. Wang could have a substantial impact on Cassava's interests. Indeed, the Company is currently in Phase 3 clinical testing of simufilam, an investigational drug that is designed to treat Alzheimer's disease. On several occasions, Dr. Wang performed research supporting the development of simufilam at his CUNY lab under research contracts between Cassava and the Research Foundation. Simply put, there is no way that CUNY can render ultimate findings in connection with its investigation of Dr. Wang without: (1) providing Cassava with all information to which the Company is entitled under the policies, including the allegations that are being investigated; and (2) permitting the Company to analyze and provide input regarding any allegations that may impact its interests.[3]

Separately, while Cassava currently has no reason to question Dr. Wang's integrity or the quality of his work, we note that a finding by CUNY that Dr. Wang engaged in research misconduct in connection with the work he was performing for the Company would have significant legal implications. For example, to the extent that Dr. Wang is found to have manipulated or fabricated data, that would plainly be a breach of the Research Foundation's contracts with Cassava, which require, among other things, that "[CUNY] and [Dr. Wang] will perform all the services described herein, or incidental to those described herein, in accordance with the highest standards of . . . Research practice" and "all applicable laws and regulations." *See* First Preclinical Agreement at § 2.1; Third Preclinical Agreement at § 2.1; Clinical Agreement at § 2.1. Additionally, as you know, over the past 18 months, Cassava has been sued on numerous occasions in connection with allegations related to Dr. Wang's research. For example, Cassava is a defendant in a federal securities fraud class action alleging that the Company and its officers failed to disclose that "Dr.

---

[3] Cassava's General Counsel, Christopher Cook, reached out to Mr. Davis's office by telephone on March 3, 2023 to discuss these issues, but, to date, his call has not been returned.

Wang . . . had manipulated and falsified data in a string of academic journals and presentations providing the basis for the underlying science supporting the continued commercial development of simufilam."[4] Cassava has sought to dismiss this suit on the ground that there is no factual basis for the allegations, i.e., that the allegations against Dr. Wang are simply unadjudicated, unproven accusations of wrongdoing.[5] To the extent that CUNY finds that misconduct actually occurred in this instance, that decision would, under the relevant contracts, require CUNY to "indemnify and hold [Cassava] harmless from any and all liability, loss, or damage it might suffer as a result of claims, demands, costs, or judgment[s]" in the securities class action suit and all other matters related to Dr. Wang's research.[6] *See, e.g.*, Clinical Agreement at § 8.4 (requiring indemnification of Cassava for any costs or losses arising out of (1) "Negligent acts and omissions on the part of . . . [Dr. Wang]" or (2) any "breach of [the] representations, warranties or obligations under this Agreement.").

In light of the importance of this investigation to Dr. Wang, Cassava and CUNY, it is imperative that the investigation be conducted meticulously, transparently, fairly, and in accordance with the due process rights of Dr. Wang and Cassava. Each allegation of misconduct must be evaluated by a trained expert in the relevant scientific field who has no conflicts of interest. No final adjudication can legitimately be issued before all relevant stakeholders, including Cassava, have been given the opportunity to consider the allegations and weigh in, as appropriate. To that end, please immediately provide the allegations under consideration by the committee and any evidence or findings concerning allegations of research misconduct that could potentially impact Cassava's interests. In addition, we request the opportunity to meet in person with relevant personnel at CUNY responsible for the oversight of this investigation to discuss how Cassava will be properly involved in the investigation going forward.

Thank you for your prompt attention to this matter. Given the long and productive relationship between Cassava and CUNY, it is our preference that we open a constructive dialogue rather than resorting to the further exchange of written correspondence. In the first instance, we propose a conversation between Mr. Davis, Mr. Cook and Orrick. We look forward to your response.

Sincerely,

Guy D. Singer

---

[4] *See In re Cassava Sciences, Inc. Sec. Litig.*, 1:21-cv-00751-DAE (W.D. Tex), Dkt. No 68 at ¶ 13.

[5] *See id.*, Dkt. Nos. 81 and 90.

[6] *In re Cassava Sciences, Inc. Deriv. Litig.*, 1:21-cv-00998 (W.D. Tex. 2021); *Albers v. Barbier et. al.*, D-1-GN-21-007018 (Tex. Dist. Ct., Travis County 2021); *Calamore v. Barbier et. al.*, 2022-0737-MTZ (Del. Ch. 2022).

**CONFIDENTIAL – NOT SUBJECT TO FOIL**