**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADRIAN HEILBUT, JESSE BRODKIN, and ENEA MILIORIS,<br><br>Plaintiffs,<br>v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, and DR. LINDSAY BURNS,<br><br>Defendants. | Civil Action No. 1:24-cv-05948-JLR<br><br>**Oral Argument Requested** |

**DEFENDANT CASSAVA SCIENCES, INC.'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**


I. The Court Should Deny Plaintiffs' Claim for Attorney's Fees for Pursuing Compensatory and Punitive Damages ........ 3

A. New York's Anti-SLAPP Statute Does Not Authorize Attorney's Fees for Pursuing Compensatory and Punitive Damages ........ 3

B. Plaintiffs' Attorney's Fees Demand Is Inconsistent with Federal Procedure ........ 5

C. Plaintiffs' Misinterpretation Would Open a Floodgate of Extensive, Unwarranted Litigation ........ 6

II. The Court Should Deny Plaintiffs' Claim for Punitive Damages Under N.Y. Civ. Rights Law § 70-a(1)(c) ........ 8

III. The Court Should Deny Plaintiffs' Malicious Prosecution Claim ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*315 W. 103 Enters. LLC v. Robbins*,
95 N.Y.S.3d 800 (App. Div. 2019) ....................4

*Adelson v. Harris*,
2018 WL 1585676 (S.D.N.Y. Mar. 29, 2018) ....................6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................9

*Gersh v. Kaspar & Esh, Inc.*,
206 N.Y.S.2d 510 (App. Div. 1960) ....................12

*Gibson v. SCE Grp., Inc.*,
391 F. Supp. 3d 228 (S.D.N.Y. 2019) ....................12

*Greenwich Bldg. Co. v. Hoots*,
2026 WL 2408839 (N.Y. Sup. Ct. Aug. 11, 2026) ....................4

*Hariri v. Amper*,
854 N.Y.S.2d 126 (App. Div. 2008) ....................5

*Isaly v. Garde*,
2024 WL 1156850 (N.Y. Sup. Ct. Mar. 18, 2024) ....................3

*N.Y. Times Co. v. Wayfarer Studios LLC*,
2026 WL 2256440 (N.Y. Sup. Ct. July 27, 2026) ....................4, 7, 8

*Rentas v. Ruffin*,
816 F.3d 214 (2d Cir. 2016) ....................13

*Yuan v. Rivera*,
48 F. Supp. 2d 335 (S.D.N.Y. 1999) ....................11, 12

### Statutes

N.Y. Civ. Rights Law § 70-a(1)(a) ....................5, 6

N.Y. Civ. Rights Law § 70-a(1)(c) ....................11

### Rules

Fed. R. Civ. P. 54(d)(2)(A) ....................5, 6

Fed. R. Civ. P. 68 ....................8

Make a federal case out of it. That is the message Plaintiffs ask this Court to send to every defendant who successfully dismisses an anti-SLAPP case in New York.

Plaintiffs' view is that where a company sues to prevent disenrollment in a critical clinical trial based on defamatory statements, but the court holds that the company has not adequately pleaded malice, Plaintiffs may seek punitive damages without tether to economic consequence. Defendants here offered to reimburse Plaintiffs for all fees they incurred defending the Defamation Action. But that wasn't enough because, for Plaintiffs, this isn't about being made whole. This is about a free roll for millions in punitive damages because, according to Plaintiffs, Defendants must pay their fees, win or lose. But this Court is no casino, and there can be no free rides under New York law.

Plaintiffs ask this Court to extend New York's statute to mandate that anti-SLAPP plaintiffs shall recover their attorney's fees spent chasing punitive damages across multi-year litigation, whether they recover such damages or not. And Plaintiffs would have this Court further declare that plaintiffs can then base a massive punitive damages recovery on a multiple of those fees. This reinterpretation of anti-SLAPP law would incentivize enterprising plaintiffs and their counsel to pursue extended litigation in this Court on a risk-free, shoot-for-the-moon basis, just as Plaintiffs have done here. Unsurprisingly, Plaintiffs' position is contrary to the statute and has never been endorsed by any court. This is a purely legal issue with no factual dispute, and the Court should grant summary judgment denying Plaintiffs' claim for attorney's fees for pursuing compensatory and punitive damages under New York's anti-SLAPP law.

The Court should also deny Plaintiffs' claim for punitive damages under the same statute. Discovery confirms that Cassava filed the Defamation Action to defend itself against Plaintiffs' *per se* defamatory statements that it was a fraud, its executives were criminals, and it was harming

elderly patients. Cassava sought legal redress for those false accusations to protect enrollment in its critical, FDA-authorized Phase 3 trials. Although Plaintiffs focus much of their Opposition on Dr. Burns' personal journaling, Plaintiffs cannot genuinely dispute that the decision to pursue the Defamation Action was the Board's, or that the Board based its decision on concern over trial disenrollment, an existential threat to Cassava's Phase 3 trials. It can be no surprise that, in the face of Plaintiffs' *per se* defamatory statements—that Cassava was a criminal fraud harming patients—that Cassava feared patients would drop out of the trials. And it can be no surprise that, as fiduciaries, the Board felt compelled to challenge those statements and preserve enrollment.

Yet Plaintiffs say nothing about the Board's malintent. It is therefore indisputable that Cassava did not sue Plaintiffs for the "***sole*** purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting" their free speech. Plaintiffs' Opposition seeks to avoid this conclusion by pretending that this dispute is only about whether a non-party academic laboratory retained certain records, while ignoring their numerous *per se* defamatory statements. Missing research records do not give Plaintiffs license to defame Cassava, call its executives criminals, and seek to derail Cassava's clinical trials by suggesting its drug will harm patients. Because Cassava indisputably had at least ***a*** purpose other than "harassing, intimidating, punishing, or otherwise maliciously inhibiting" Plaintiffs' free speech, the Court should grant Defendants summary judgment denying Plaintiffs' claim for punitive damages under the statute.

Finally, Plaintiffs' Opposition admits that they have all but abandoned their allegations of special injury, and no admissible evidence supports what is left. Because Plaintiffs cannot show that they suffered a special injury, the Court must deny their malicious prosecution claim.

## I. The Court Should Deny Plaintiffs' Claim for Attorney's Fees for Pursuing Compensatory and Punitive Damages

As explained in Cassava's Motion, Plaintiffs' claim for attorney's fees incurred in pursuing compensatory and punitive damages is (A) inconsistent with New York's anti-SLAPP statute; (B) inconsistent with federal procedure; and (C) bad policy, as it would invite extensive, unwarranted litigation by allowing plaintiffs to manufacture "damages" based on attorney's fees, while eliminating litigation risk. ECF 234 ("Mot.") at 12-19. Plaintiffs cannot rebut these arguments, so their Opposition instead seeks to (1) sidestep them, and then (2) manufacture a factual dispute on a purely legal issue. Both attempts fail.

### A. New York's Anti-SLAPP Statute Does Not Authorize Attorney's Fees for Pursuing Compensatory and Punitive Damages

Cassava's Motion sets out the three-pronged structure of New York's anti-SLAPP statute. Prong (a) permits a SLAPP defendant to recover attorney's fees incurred in defending the defamation action based on a summary determination that the defamation action lacked a substantial basis. Mot. 13-14. Plaintiffs must meet a much higher burden to recover compensatory damages under prong (b), showing an intent to harass, intimidate, punish, or otherwise maliciously inhibit plaintiffs' free speech. *Id.* And to recover punitive damages under prong (c), plaintiffs must show that was the action's ***sole*** purpose. *Id.* at 14.

New York courts confirm that the Legislature intentionally distinguished between a SLAPP defendant's ability to (1) promptly recover its reasonable fees from defending a defamation action through summary motion practice under prong (a), and (2) seek other damages through more extensive litigation and a much higher burden of proof under prongs (b) and (c). *Id.* at 14-15 (citing *Isaly v. Garde*, 2024 WL 1156850, at *7-8 (N.Y. Sup. Ct. Mar. 18, 2024)). Nothing in prongs (b) or (c) provides for recovery of attorney's fees, and, because statutory awards of attorney fees are in derogation of common law, this Court cannot infer it. *Id.* at 15.

Plaintiffs contend that the Defendants are asking the Court to "re-write" New York's anti-SLAPP law, noting that the statute provides for recovery of attorney's fees. ECF 253 ("Opp.") at 31-33. Defendants are not seeking to rewrite anything. Defendants agree that, if Plaintiffs prove that the Defamation Action lacked a substantial basis, prong (a) entitles them to reasonable fees incurred in defending that action. But attorney's fees are *not* available under prongs (b) or (c), and no court has ever awarded any plaintiff its fees for pursuing a separate action under prongs (b) or (c), let alone the sort of multi-million-dollar recovery Plaintiffs seek here.

Plaintiffs next argue that courts have awarded fees for bringing a summary action under prong (a), in addition to pure defense costs. *Id.* at 32-33. But as the first case Plaintiffs cite explicitly states, those courts award only the fees on fees necessary to recover defense costs. *See N.Y. Times Co. v. Wayfarer Studios LLC*, 2026 WL 2256440, at *5 (N.Y. Sup. Ct. July 27, 2026) ("[A]warding fees on fees to prevailing anti-SLAPP defendants will appropriately enable them to *recoup fully the costs of their successful defenses*." (emphasis added)). None of Plaintiffs' cases—and no case anywhere—awarded any anti-SLAPP plaintiff attorney's fees for pursuing additional compensatory or punitive damages under prongs (b) or (c). *See also Greenwich Bldg. Co. v. Hoots*, 2026 WL 2408839, at *11 (N.Y. Sup. Ct. Aug. 11, 2026) (awarding "reasonable attorney fees and costs in defending this action" in a summary dismissal of the case under prong (a), but "declin[ing] to grant punitive or compensatory damages to defendant [because] the issue of damages only comes into play after a trial").

Recognizing that they are necessarily asking the Court to *infer* an unwritten right to recover fees under prongs (b) and (c), Plaintiffs next assert that Defendants "overstate" the American Rule. Opp. 35. Defendants do not overstate anything. Statutory fee-shifting provisions are in derogation of common law and must be strictly construed. Mot. 15 (citing *315 W. 103 Enters. LLC v. Robbins*,

95 N.Y.S.3d 800, 800 (App. Div. 2019); *Hariri v. Amper*, 854 N.Y.S.2d 126, 130 (App. Div. 2008)). Plaintiffs inexplicably argue that this well-established principle of statutory interpretation is "no longer good law" because the Legislature amended the anti-SLAPP law to make an award of attorney fees under prong (a) mandatory. Opp. 35-36. But Plaintiffs' argument in fact shows the opposite: the Legislature amended the statute to clearly state that attorney's fees incurred in defending a defamation action shall be awarded upon a demonstration that the defamation action was brought without substantial basis under prong (a). The Legislature could have stated that attorney's fees shall be recovered for pursuing compensatory or punitive damages under prongs (b) and (c), but it said no such thing. And where the Legislature chose *not* to expressly make such fees available, the Court cannot infer it.

**B. Plaintiffs' Attorney's Fees Demand Is Inconsistent with Federal Procedure**

Plaintiffs' misinterpretation of New York's anti-SLAPP statute—whereby a jury would award attorney's fees at trial, then subject those fees to a punitive damages multiplier—also conflicts with Rule 54. Mot. 15-17.

Rule 54(d)(2)(A) is clear: "a claim for attorney's fees . . . *must* be made by motion *unless* the substantive law *requires those fees to be proved at trial* as an element of damages" (emphasis added). New York's anti-SLAPP law requires nothing of the kind. Indeed, Section 70-a(1)(a) expressly provides that attorney's fees can be recovered through a summary adjudication in New York state court, with *no need to prove them at trial*. Plaintiffs cite no case where New York anti-SLAPP fees were submitted to a jury, and Cassava is aware of none. Under the plain language of Rule 54, fees in this Court must be sought by motion, not through a jury trial.

Because Plaintiffs cannot avoid this plain language, Plaintiffs' Opposition asks the Court to read the entire phrase "requires those fees to be proved at trial" out of Rule 54, referencing only an Advisory Committee note. Opp. 41. Even the selective language Plaintiffs quote describes the

fees potentially excluded from Rule 54(d)(2)(A) as potentially involving "issues to be resolved by a jury." *Id.* The fees at issue here do not require any jury resolution. And, of course, an advisory note does not change the Rule's plain language.

Plaintiffs then cite a case interpreting *Nevada* law, claiming that it "rejected precisely [Defendants'] argument." *Id.* (citing *Adelson v. Harris*, 2018 WL 1585676 (S.D.N.Y. Mar. 29, 2018)). But *Adelson* did not address whether attorney's fees must be sought by motion in federal court. To the contrary, *Adelson* was itself before this Court on a fee motion, consistent with Rule 54. 2018 WL 1585676, at *1 ("Presently before the Court is Defendants' motion for attorney's fees and costs.").

None of this provides any support for Plaintiffs' misinterpretation of the statute, or their attempt to convert what should have been a straightforward request for their fees for defending the Defamation Action into a multi-year boondoggle wherein they hope a jury will convert their millions in attorney's fees into a $50 million punitive damages award. Indeed, Plaintiffs all but concede their proposed approach is unworkable, suggesting a wholly new procedure (a second, "bench trial" to address fees) to help clean up their procedural mess. Opp. 42. Again, no court, statute, or rule supports this approach.

### C. Plaintiffs' Misinterpretation Would Open a Floodgate of Extensive, Unwarranted Litigation

Plaintiffs' misreading of Section 70-a(1)(a) is also bad policy the Legislature must be presumed to have rejected. The statute is designed to provide defendants with an expedited mechanism to recover their fees from defending a defamation action—not multi-year litigation meant to spin up attorney's fees to bootstrap a punitive damages windfall.

Plaintiffs do not contest that their goal is to convert what could have been a straightforward claim for their defense fees (amounting to less than $500,000) into a $50 million case. Nor do they

deny that they seek to do so by running up their own legal bills prosecuting *this* case, convincing this Court to treat them as "damages," then asking a jury to multiply their attorney's fees ten-fold as punitive. Nor do they dispute that adopting their strategy would permit others to use the same playbook. Instead of filing a summary state court action to promptly recover defense fees from the defamation action under prong (a), future plaintiffs would likewise make a federal case out of it: file a new action in federal court; run up attorney's fees for years, comfortable they will recover all of them on the same standard available for defensive costs; then seek tens of millions in punitive damages based on those fees.

Plaintiffs concede all of this, but blame Defendants' decision to file the Defamation Action in federal court for Plaintiffs' refusal to seek summary adjudication of their fees. According to Plaintiffs' Opposition, "CPLR's summary adjudication mechanisms were unavailable to Plaintiffs." Opp. 42. Although they spend pages on this argument, Plaintiffs offer no citation or explanation for this plainly false premise.

Indeed, Plaintiffs prominently cite a case where a New York trial court handled this exact scenario. In *New York Times v. Wayfarer*, Wayfarer had sued the New York Times in S.D.N.Y. for defamation. 2026 WL 2256440, at *1. This Court dismissed the defamation claim for, among other things, failure to plead actual malice. *Id.* The New York Times then opened an action in state court and, pursuant to prong (a) of New York's anti-SLAPP statute, sought summary adjudication of its right to recover attorney's fees incurred in defending the defamation action under CPLR 3212. *Id.* at *2. The state court promptly found Wayfarer liable for the defense fees, assessed whether the defense fees were reasonable and warranted, and issued an award for those defense

fees. *Id.* at *4. Plaintiffs in this case could have done the same. Their choice of this forum cannot change what they are entitled to under New York law.[1]

For all of these reasons, the Court should enforce New York's anti-SLAPP statute and its own rules as written and deny Plaintiffs' claim for attorney's fees in this action pursuing compensatory and punitive damages.

## II. The Court Should Deny Plaintiffs' Claim for Punitive Damages Under N.Y. Civ. Rights Law § 70-a(1)(c)

The Court should also deny Plaintiffs' claim for punitive damages under New York's anti-SLAPP law because no reasonable jury could find that Cassava's sole purpose in commencing or continuing the action was to harass, intimidate, or punish Plaintiffs. This Court already determined that hundreds of Plaintiffs' statements were *per se* defamatory, injuring Cassava's reputation as a matter of law. Mot. 22. This included Plaintiffs' numerous statements labeling Cassava a Theranos-like fraud, calling its executives criminals, and suggesting Cassava's drug-candidate was unsafe for use in clinical trials. ECF 237 ("SOF") ¶¶18-23.

Facing these false accusations, Cassava's Board felt compelled to file the Defamation Action to defend its reputation and clinical operations. The company was in the midst of conducting its Phase 3 clinical trials, which enrolled almost 2000 patients at a cost of more than $100 million. SOF¶9. Unsurprisingly, protecting the trials was Cassava's top priority, and Cassava filed the Defamation Action to discredit Plaintiffs' defamatory statements that Cassava believed

[1] As noted in Cassava's Motion, when it became clear that Plaintiffs would insist on multi-year litigation driving attorney's fees far exceeding the total value of their case, Defendants promptly made an Offer of Judgment substantially exceeding all of Plaintiffs' attorney's fees. Mot. 18. Plaintiffs' Opposition notes that this Offer of Judgment will not be admissible at trial. Opp. 39-40. That misses the point. On this motion, the Offer of Judgment is not proffered to support any factual determination to be made by the jury. Rather, it illustrates the problem with Plaintiffs' radical misinterpretation of the law. Plaintiffs are pursuing a case whose value they view as driven almost entirely by the attorney's fees they continue to accrue. In addition to being a waste of resources and an abuse of the litigation process, this misinterpretation also guts Rule 68 because it would mean Plaintiffs can reject even an overly-generous Rule 68 offer because they believe they can continually increase the amount of their damage by simply continuing to litigate.

threatened enrollment in these ongoing, critical trials. Mot. 20-21. The testimony establishing these facts is credible, accurate, and unrebutted, and Plaintiffs cannot defeat summary judgment "by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of . . . legal malice." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Further, with no actual evidence to contradict Cassava's legitimate purpose, Plaintiffs ask the Court to simply ignore Cassava's testimony as "not credible." First, Plaintiffs make the bizarre argument that Cassava could not have had any proper purpose to sue or discredit Plaintiffs' defamatory statements because it lacked "original" data to refute certain allegations of research misconduct. Opp. 24-27. This argument is bizarre because the primary problem with Plaintiffs' statements wasn't that they made some scientifically-rooted allegations of research misconduct. The problem was that Plaintiffs blasted hundreds of statements to the Twitterverse, which the Court found to be defamatory *per se*, claiming Cassava was "a complete fraud," that Cassava's executives were criminals, and suggesting that Cassava was endangering patients enrolled in its trials. Cassava has extensive evidence, having little or nothing to do with scientific record keeping standards, that its drug is safe and well-tolerated in thousands of patients, that its executives have never engaged in criminal behavior, and that it is not a "complete fraud"—including the testimony of numerous hard-working Cassava employees who spent years dedicated to studying a potential treatment for Alzheimer's. Cassava believed it could and would discredit Plaintiffs' false accusations when it filed its suit.

Second, Plaintiffs argue that protecting trial enrollment is "neither credible nor proper," arguing that there was not contemporaneous evidence of sites or patients dropping out due to Plaintiffs' defamatory statements, or that Cassava was "genuinely concerned" about enrollment. *Id.* at 27-28. That's preposterous. Statements that Cassava is a fraud, its executives are criminals,

and its drug is unsafe would obviously threaten enrollment. That's why they are *per se* defamatory. It's also wrong. Cassava's Rule 30(b)(6) designee testified that physicians reported patients "who would be in the trial but for . . . the things they read online about the company being a fraud." ECF 257, PX 16 (Schoen 30(b)(6) Dep.) 20:5–21:5, 22:12–23:10. Nor is it true that Mr. Barbier "never mentioned protecting enrollment." Opp. 28. Asked what the Board's decision was based on, he cited the harm critics were causing by "calling our clinical sites." ECF 257, PX 5 (Barbier Dep.) 270:1-6. And Mr. Barry's testimony that Mr. Barbier was "always the decision-maker" concerned the selection of counsel, not the decision to sue, which the Board made. *Id.*, PX 8 (Barry Dep.) 194:1–16; SOF¶30.

Plaintiffs then pivot and argue that protecting enrollment could not be a proper purpose for continuing the suit for nine months after the trials were enrolled. Opp. 27-29. This is similarly nonsense because patients and clinics can and do drop out of clinical trials at any time. Plaintiffs do not deny that they publicly called Cassava a "complete fraud," speculated that its CEO would end up "behind bars," and publicly asked how it was "legal for $SAVA to spinal tap folks and then just make up their biomarker values." SOF¶¶18-23. And the record shows that Cassava understood Plaintiffs to be seeking to shut down its clinical trials, SOF¶33, while Plaintiffs held short positions in Cassava's stock, SOF¶25. The fact that Cassava was nevertheless able to fully enroll the Phase 3 trials does not in any way impeach testimony that Cassava was motivated by disenrollment risks. The notion—supported only by Plaintiffs' supposition—that Cassava had no reason for concern once the trials were enrolled misunderstands the nature of a multi-year clinical trial. It was essential not only that patients sign up, but that they *stay* enrolled and continue to take the medication for the entire trial period. Patient attrition is devastating to clinical trials.

Cassava's unrebutted testimony that it filed the Defamation Action to discredit *per se* defamatory statements that were damaging its reputation as a matter of law, with the intent of protecting enrollment in the most significant and expensive undertaking the company had ever engaged in, is entirely credible. No reasonable jury could find that this was not at least *a purpose* of the litigation. Accordingly, no reasonable jury could find that Defendants' "*sole purpose*" was to harass, intimidate, punish, or otherwise maliciously inhibit Plaintiffs' free speech, and Plaintiffs' claim for punitive damages under New York's anti-SLAPP statute must be denied.

Notably, Plaintiffs' own brief concedes the central point. Section 70-a(1)(c) asks whether harassment or malicious inhibition of speech was the "sole purpose" of the Defamation Action. Yet Plaintiffs themselves attribute the suit to a host of other purposes: to "distract investigators," "evade liability," and "boost the company's stock price." Opp. 16, 21, 27. Cassava disputes Plaintiffs' characterizations. But even on Plaintiffs' theory, the suit served purposes other than the one the statute requires, and that ends the inquiry.

## III. The Court Should Deny Plaintiffs' Malicious Prosecution Claim

Plaintiffs' Opposition also concedes that Plaintiffs suffered no special injuries. Accordingly, their malicious prosecution claim must be denied.

**Brodkin**. Plaintiffs' Opposition completely abandons Brodkin's earlier allegations of financial damages. Instead, Plaintiffs substitute a new argument that Brodkin suffered special damages because his wife got angry with him and they got into arguments. Opp. 45. This does not in any way approach a special injury.

In a feeble attempt to manufacture some sort of legal support for this new, unpled argument, Plaintiffs cite *Yuan v. Rivera* with a parenthetical claiming that the case stands for the proposition that "severe impact on familial relationship constitutes special injury." *Id.* What *Yuan* actually says is that "interference with person or property by means other than provisional remedies may satisfy

the 'special injury' requirement, [and] depriving Ms. Chi of the custody of her children for several months reaches this threshold." *Yuan v. Rivera*, 48 F. Supp. 2d 335, 349 (S.D.N.Y. 1999). Marital strife over the cost of litigation is not equivalent to depriving a mother of the custody of her children.

**Heilbut**. Plaintiffs likewise concede that Heilbut suffered no special injury. He was fired long before the Defamation Action was filed and was purportedly trying to start a new career as an "equity consultant"—a field in which he had no prior experience. Mot. 25-27. Plaintiffs' Opposition asserts that this "misrepresents the record" because Heilbut testified that (1) Perceptive, an investment fund, stopped consulting with him, and that someone at Perceptive told him they were concerned about the Defamation Action; and (2) the Defamation Action caused his "startup equity research consulting business" to fail because he was afraid to market it. Opp. 44. This is far from sufficient. The allegations of hypothetical future losses from a nascent venture whose equity-research revenue never exceeded roughly $10,000 a year, ECF 257, PX 18 (Heilbut Dep.) 146:2-13, 192:5-10, and that Heilbut had no experience to sustain, are so conjectural that Plaintiffs' own expert declined to value them, testifying that there were "too many variables" to do so. ECF 236, Ex. 43 (Soudry Dep.) at 56:10–20. These are not special damages as a matter of law. *See, e.g., Gersh v. Kaspar & Esh, Inc.*, 206 N.Y.S.2d 510, 511 (App. Div. 1960); *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 253-54 (S.D.N.Y. 2019).

Moreover, Heilbut offers no admissible evidence that Perceptive stopped calling him *because of* the Defamation Action. His own testimony as to what someone at Perceptive told him, which he himself says was "expressed pretty vaguely," is hearsay. Heilbut Dep. 151:15–153:4. He offers no written communication, no testimony from Perceptive, and no affidavit. There is no

evidentiary support for this claim which, again, is not even included in Plaintiffs' own expert's damages report.

**Milioris**. Milioris' claim to special injury is also not supported by admissible evidence. He was unemployed long before the Defamation Action was filed. His only claim to special injury is an employment contract with a company called ElmiPharm, which Milioris testified someone at ElmiPharm suggested postponing until the Defamation Action was over. But again, Milioris offers no admissible evidence that ElmiPharm repudiated its obligations under the contract, or that it did so because of the Defamation Action. Mot. 27-29.

Plaintiffs respond that Defendants "attempt to introduce factual doubt as to whether ElmiPharm actually (or properly) repudiated the contract" but claim this factual doubt is "sufficient to bring the question of special injury to the jury." Opp. 43-44. It is not. At this stage of the case, Plaintiffs must show actual, admissible evidence of this critical element. Milioris' testimony of what ElmiPharm told him is inadmissible hearsay, and Plaintiffs offer nothing else—no testimony from anyone at ElmiPharm, no contemporaneous communications, and no affidavit.

Recognizing this deficiency, Plaintiffs try to cover it up by citing *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016), for the proposition that a plaintiff is "entitled to rely on his own testimony to establish his malicious prosecution claim." Opp. 44. But *Rentas* is inapposite. *Rentas* held that an inmate's clearly admissible testimony of his own physical confrontation with officers, which was corroborated by photos of his injuries following the incident, supported his malicious prosecution claim. 816 F.3d at 221. It says nothing that would permit Plaintiffs to avoid summary judgment based on inadmissible hearsay—indeed, based on no admissible evidence at all.

Discovery is closed, and Defendants have moved for judgment on Plaintiffs' malicious prosecution claims. Plaintiffs must present admissible evidence sufficient to support their claims

for special injury now. They have offered none. Their malicious prosecution claims must be denied.

## CONCLUSION

For the foregoing reasons, the Court should grant Cassava's Motion for Summary Judgment.

Dated: October 5, 2026

Respectfully submitted,

/s/ *Monica K. Loseman*

Monica K. Loseman (NY Bar No. 6100671)
Mylan L. Denerstein (NY Bar No. 2620730)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
MLoseman@gibsondunn.com
MDenerstein@gibsondunn.com

M. Scott Campbell (admitted *pro hac vice*)
John Turquet Bravard (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
Telephone: 303.298.5700
SCampbell@gibsondunn.com
JTurquetBravard@gibsondunn.com

*Attorneys for Defendant Cassava Sciences, Inc.*

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITATION**

Pursuant to Rule 3.C of the Individual Rules of Practice in Civil Cases of the Honorable Jennifer L. Rochon, I hereby certify that the foregoing memorandum of law complies with the applicable word-count limitation. Exclusive of the caption, the table of contents, the table of authorities, the signature block, and this certificate, and inclusive of footnotes, the memorandum contains 4244 words, as counted by the word-processing system used to prepare it, and therefore does not exceed the 4250-word limit. The memorandum is double-spaced and set in 12-point Times New Roman type, including footnotes.

*/s/ Monica K. Loseman*
Monica K. Loseman.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on October 5, 2026, a true and correct copy of the foregoing document was served electronically on counsel through the ECF filing system.

*/s/ Monica K. Loseman*
Monica K. Loseman