**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADRIAN HEILBUT, JESSE BRODKIN, and ENEA MILIORIS,<br><br>Plaintiffs,<br><br>v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, and LINDSAY BURNS,<br><br>Defendants. | Case No.: 1:24-cv-05948-JLR-OTW<br><br>**ORAL ARGUMENT REQUESTED** |

**THE INDIVIDUAL DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants Remi Barbier and Lindsay Burns*

## TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........ ii

TABLE OF ABBREVIATIONS ........ iv

DR. BURNS IS ENTITLED TO SUMMARY JUDGMENT ........ 1

I. Dr. Burns Did Not Initiate or Prosecute the Defamation Action ........ 1

II. Cassava Did Not Need or Seek Dr. Burns' Agreement to Commence or Prosecute the Defamation Action ........ 6

III. The Intracorporate Conspiracy Doctrine Bars The Conspiracy Claim ........ 7

MR. BARBIER IS ENTITLED TO SUMMARY JUDGMENT ........ 9

ADDITIONAL GROUNDS FOR SUMMARY JUDGMENT ........ 10

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

Page(s)

*Aprahamian v. Sandoz, Inc.*,
2026 WL 221286 (S.D.N.Y. Jan. 28, 2026) ....................4

*Bahiri v. Madison Realty Cap. Advisors*,
2010 WL 5559404 (N.Y. Sup. Ct. Dec. 23, 2010) ....................11

*Christians of Cal., Inc. v. Clive Christian N.Y.*,
2015 WL 468833 (S.D.N.Y. Feb. 3, 2015)....................7, 10

*De Sole v. Knoedler Gallery*,
137 F.Supp.3d 387 (S.D.N.Y. 2015)....................6, 7

*Dudick v. Gulyas*,
277 A.D.2d 686 (3d Dep't 2000) ....................2

*Heilbut v. Cassava Scis., Inc.*,
778 F.Supp.3d 551 (S.D.N.Y. 2025)....................6, 7

*Hewitt v. City of N.Y.*,
2012 WL 4503277 (E.D.N.Y. Sept. 28, 2012) ....................3

*LaFrance v. Bemben*,
2013 WL 132702 (E.D.N.Y. Jan. 10, 2013) ....................3

*Langer v. Paysafe Partners LP*,
2020 WL 7684885,
*adopted by* 2020 WL 7041085 (E.D.N.Y. Nov. 30, 2020) ....................10

*Manganiello v. City of N.Y.*,
612 F.3d 149 (2d Cir. 2010)....................2

*Maskantz v. Hayes*,
39 A.D.3d 211 (1st Dep't 2007) ....................3

*Moorhouse v. Standard, N.Y.*,
124 A.D.3d 1 (1st Dep't 2014) ....................2

*Reich v. Lopez*,
38 F.Supp.3d 436 (S.D.N.Y. 2014) ....................10

*Rhodes v. Tevens*,
2012 WL 777421 (W.D.N.Y. Mar. 7, 2012)....................10

*Ruggiero v. Cnty. of Orange*,
2023 WL 7005074 (S.D.N.Y. Oct. 24, 2023) .......... 7

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) .......... 6, 7

*Springboards to Educ., Inc. v. Kipp Foundation*,
325 F.Supp.3d 704 (N.D. Tex. 2018) .......... 7

*Thomas v. G2 FMV, LLC*,
2016 WL 320622 (N.Y. Sup. Ct. Jan. 27, 2016) .......... 1, 2

*Trs. of the Nat. Ret. Fund v. Wildwood Corp.*,
2013 WL 8446003 (S.D.N.Y. Dec. 17, 2013) .......... 2

*Williston v. Jack Resnick & Sons, Inc.*,
177 A.D.3d 822 (2d Dep't 2019) .......... 3

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **AC** | Plaintiffs' Amended Complaint, ECF 9 |
| **Cassava or Company** | Defendant Cassava Sciences, Inc. |
| **CEO** | Chief Executive Officer |
| **CMO** | Chief Medical Officer |
| **CP** | Citizen Petition |
| **CUNY** | City University of New York |
| **Defendants** | Cassava Sciences, Inc., Remi Barbier, and Lindsay Burns |
| **Freestanding cite to "¶"** | Paragraph of the Individual Defendants' Rule 56.1 Statement, ECF 242, and Plaintiffs' response thereto, ECF 255 |
| **HHS** | Department of Health and Human Services |
| **IDX_** | Individual Defendants' exhibit to the Declaration of Zachary R. Taylor, ECF 235, 238, 241 |
| **Individual Defendants** | Remi Barbier and Lindsay Burns |
| **LMC** | Litigation Monitoring Committee |
| **MSJ** | Individual Defendants' Opening Memorandum of Law in Support of their Summary Judgment Motion, ECF 243 |
| **Opp.** | Plaintiffs' Memorandum of Law in Opposition to Defendants' Summary Judgment Motions, ECF 253 |
| **ORI** | The Office of Research Integrity of the Department of Health and Human Services |
| **Plaintiffs** | Adrian Heilbut, Enea Milioris, and Jesse Brodkin |
| **PAF_¶** | Paragraph of Plaintiffs' Statement of Additional Facts, ECF 256 |
| **PX_** | Plaintiffs' exhibit to the Declaration of David Kumagai, ECF 257-262 |
| **RPAF_¶** | Paragraph of Defendants' Response to Plaintiffs' Statement of Additional Facts, ECF 272 |

Plaintiffs' Opposition underscores summary judgment should be granted in favor of the Individual Defendants.

## DR. BURNS IS ENTITLED TO SUMMARY JUDGMENT

### I. Dr. Burns Did Not Initiate or Prosecute the Defamation Action

The AC alleges "[t]he Defamation Action was initiated and continued by Cassava, at the direction of ... Burns." AC ¶196. Confronted with overwhelming evidence that Burns did not have the power to initiate or prosecute the Defamation Action, ¶¶2-45, 171-201, Plaintiffs claim whether Burns had such power is legally irrelevant. Opp. 49-50.

Plaintiffs are wrong. For example, in *Thomas v. G2 FMV, LLC*, 2016 WL 320622 (N.Y. Sup. Ct. Jan. 27, 2016), Thomas filed suit for malicious prosecution after G2 brought suit accusing him of misconduct as COO of G2's subsidiary G2IG. *Id.* *1-2. Thomas sued G2 and Neilson, G2IG's President, because Neilson "advocated a 'shock and awe' litigation offensive against Thomas" and said G2's lawsuit would "bankrupt" Thomas. *Id.* *5. The court rejected the claim against Neilson because there was "nothing in the record" showing "Neilson had decision-making power with respect to G2." *Id.* *7.

Here, the evidence confirms Burns did not have decision-making power for Cassava with respect to the Defamation Action:

- Between 2020-2024, eleven individuals served as Cassava directors, and six individuals served as executive officers. Burns was not one of them. ¶¶2, 37.
- Shortly after the CP filing in August 2021, Cassava's Board of Directors formed the LMC, comprised of four directors, including an attorney, to evaluate whether to file a defamation action, with the assistance of outside counsel. ¶¶10-12, 172, 174, 176. After joining Cassava, the General Counsel attended LMC meetings. ¶184.
- After deliberating for over a year, the LMC recommended that Cassava file suit, and the Board authorized the Defamation Action. ¶¶173, 182-83.
- Burns did not attend any LMC meetings or Board meetings regarding the Defamation Action. ¶¶177-78, 194-95.

- Burns did not prepare any portions of the complaints in the Defamation Action or review any drafts prior to filing. ¶198.[1]

That Burns, a scientist who reported to the CMO, ¶51, was the "project leader" for Cassava's Alzheimer's program, Opp. 48, does not mean she had the power to bypass Cassava's corporate governance structure for the Defamation Action. Indeed, Burns' private journal entry in December 2021 shows she wanted a defamation action to be filed right away, but Cassava's Board and LMC deliberated for over a year before Cassava filed suit. MSJ 18.

Whether Burns wanted Cassava to pursue a defamation action out of "animosity toward Plaintiffs," or whether she "publiciz[ed]" or "celebrat[ed]" the filing of the action by sending a text message to a friend, Opp. 47-48; PAF_¶402, does not create a genuine issue for trial. *See Thomas*, 2016 WL 320622, *7 (rejecting malicious prosecution claim against G2IG's President notwithstanding his "'shock and awe' comment against Thomas and the fact that G2IG was Thomas' employer" because he had no decision-making power for G2 action against Thomas).

Because Burns did not have decision-making power for the Defamation Action,[2] Plaintiffs argue it is "more than sufficient" to have "provid[ed] 'advice and encouragement' to authorities" or "importun[ed] the authorities to act." Opp. 46. But, as Plaintiffs' cases make clear, "[t]o establish the element of initiation … the defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, *to the point where the officer is not acting of his own volition*." *Moorhouse v. Standard, N.Y.*, 124 A.D.3d 1, 7 (1st Dep't 2014) (emphasis added).

---

[1] By contrast, Plaintiffs' cases involve defendants who signed the complaint, or authored the allegations made, in the underlying proceeding. *See Manganiello v. City of N.Y.*, 612 F.3d 149, 163 (2d Cir. 2010); *Dudick v. Gulyas*, 277 A.D.2d 686, 687 (3d Dep't 2000).

[2] Plaintiffs concede Burns cannot be deemed to have directed Cassava's prosecution of the Defamation Action based on her marriage to Barbier. Opp. 49; *Trs. of the Nat. Ret. Fund v. Wildwood Corp.*, 2013 WL 8446003, *6 (S.D.N.Y. Dec. 17, 2013).

Cassava's directors between 2020-2024 included seven business, finance, law, and law enforcement professionals and four professionals with clinical research and trial experience. ¶¶6-35. Plaintiffs do not identify any evidence that Burns coerced Cassava's Board or LMC to abdicate their exercise of independent judgment. *See LaFrance v. Bemben*, 2013 WL 132702, *6 (E.D.N.Y. Jan. 10, 2013) (summary judgment for defendants who "provided … information that formed the basis of Plaintiff's arrest," where district attorney "drafted [the] criminal court affidavit" and "made the decision to prosecute [Plaintiff]"); *Hewitt v. City of N.Y.*, 2012 WL 4503277, *8 (E.D.N.Y. Sept. 28, 2012) (summary judgment for defendants who provided information used in proceeding because it was attorney, using "exercise of independent [prosecutorial] judgment," who initiated proceeding); *Williston v. Jack Resnick & Sons, Inc.*, 177 A.D.3d 822, 823 (2d Dep't 2019) (defendant who "furnishes information to … authorities, who are then free to exercise their own independent judgment … will not be held liable for … malicious prosecution").[3]

Plaintiffs purport to rely on communications with Benesch, but providing information to outside counsel investigating at the behest of the LMC, which exercised its own judgment as to whether to recommend to the Board to pursue an action, does not show the Defamation Action was brought at Burns' direction. That Burns sent Benesch tweets and other public materials (e.g., "several research papers," PAF_¶469), and emails to journals, Opp. 47; PAF_¶¶453-73, shows only that Burns cooperated with Benesch's investigation. *Hewitt*, 2012 WL 4503277, *7 ("One who does no more than disclose … all material information within his knowledge" or who acts in a "supporting role … in the investigation" is "not deemed to be the initiator of the proceeding."). It does not show that Burns "directed the investigation, dictated charging decisions … or exercised

[3] Plaintiffs mistakenly rely on *Maskantz v. Hayes*, where "the question of initiation was never given to the jury to decide," and appellant "waived any right to challenge" assumption in court's charge that he "initiated a criminal proceeding." 39 A.D.3d 211, 213 (1st Dep't 2007).

control over whether [the action] w[as] brought." *Aprahamian v. Sandoz, Inc.*, 2026 WL 221286, *7 (S.D.N.Y. Jan. 28, 2026).

Nor do Burns' communications with Benesch show she was "knowingly providing false information that supplanted the … independent judgment" of the LMC or Cassava's Board. *Id.* *7-8 (rejecting "speculative inferences about influence unsupported by any concrete facts").

Plaintiffs contend Burns "knew of reasons to believe the information and research relied on in the Defamation Action was unreliable," Opp. 47 (citing PAF_¶¶319-38, 347-58, concerning matters between 2014-2020), but make no attempt to reconcile their contention with Burns' private journal entries from 2021-2022, reflecting her unwavering belief in the science behind simufilam:

- "I feel fulfilled, also knowing that this drug candidate has great potential to help millions of families affected by Alzheimer's disease. … Simufilam has improved both biomarkers and cognition in phase two trials, and the started phase three will tell all." IDX_57, at -651.
- "[A] nightmare has intruded. Cassava Sciences, its shareholders, my collaborator and I have been hit with continued unprecedented attacks by short-sellers, including filing of an anonymous Citizen's Petition with the FDA to stop our phase three trials." *Id.*
- "[T]he damage and unfairness to our hard work and to the Alzheimer's disease community in general leaves me questioning humanity[.]" *Id.* at -651; *id.* at -749 (describing the "negative campaign against Cassava" as "an attempt to stop or slow two large Phase 3 clinical trials of our promising drug candidate for Alzheimer's"); *id.* ("Twitter 'scientists' have been promoting a false and damaging narrative that the program is 'all made up' and even that some experiments 'didn't happen.'").

Rather than address Burns' journal entries, which were not prepared for public consumption and are contemporaneous evidence of her belief in simufilam, Plaintiffs engage in a sleight-of-hand by referencing a document leaked to *Science* in October 2023 as CUNY's "final report," PAF_¶284, and asserting it "faulted" Dr. Burns. PAF_¶293; Opp. 17, 51. But the respondent in CUNY's investigation was Wang, not Burns, and in May 2025, CUNY sent ORI its "final conclusions," which stated that "research misconduct did not occur" and did not attribute

any "fault" to Burns, ¶¶162-63, IDX_119. CUNY's May 2025 report is what was withheld from Wang in a *Brady* violation and why Wang's indictment was dismissed with prejudice. ¶¶164-70. No investigation or audit—by Orrick, the Government, CUNY, or Cassava—has found evidence of knowing or deliberate research misconduct,[4] ¶¶132, 138, 147-48, 151, 154-55. Nor did FDA ever halt the clinical trials for Cassava's Alzheimer's program or conclude the program was based on scientific fraud. ¶¶56-66, 76-79, 84-94, 111, 129-132, RPAF_¶432.

Plaintiffs grasp at straws when they assert that a handful of instances in which Barbier and Burns discussed newspaper articles and a single instance in which Barbier—Cassava's CEO—requested that Burns—a Cassava employee—provide certain information in response to a DOJ request, PAF_¶443, show that "Burns and Barbier regularly discussed … company strategy for responding to allegations by Plaintiffs and other legal matters." Opp. 48.

Regardless of whether a handful of instances qualifies as "regular," none of the cited documents in PAF_¶443 shows that Burns exercised decision-making power for the Defamation Action. A text message to Wang stating that Barbier would call him back, PAF_¶444, likewise

[4] Plaintiffs misleadingly use snippets of emails to suggest that Burns knew data was manipulated. Opp. 13-14. For example, Plaintiffs cite a May 2019 email in which (i) Burns stated it was "strange" that certain "total tau/Abeta ratios" from initial patient samples were different as between sample runs and asked for Wang's thoughts; and (ii) Wang responded he would look into the "good questions" Burns raised. PAF_¶323/PX_81. That back-and-forth, and emails to other scientists about replicating Wang's Phase 2a data, PAF_¶325, reflect efforts to understand and verify data, not efforts to manipulate data. PAF ¶¶326-28/PX_82 ("it would be useful to get an independent verification of the data" because "[s]howing that two independent scientists have high reliability in the results obtained is very solid methodology"). And materials describing the results as "striking" and "unbelievable" reflect that Burns was impressed by the results, not that she understood data was manipulated. PAF_¶325/PX_197 ("I feel the data shows a slowing of neurodegenerative drive"); ¶329/PX_84 ("We would like an independent statistician to analyze the data for us. The data are frankly unbelievable so we need as many stamps on them to verify them as we can … As you know, we are hoping to replicate these results in the larger, blinded study starting this month."); *see also* ¶324/PX_72 (Barbier: "These data imply … a validated target, target engagement, confirmatory mechanism of action and beneficial drug effect…. [W]e believe NO DRUG has ever improved these AD biomarkers by so much in patients.").

shows nothing. And there is no "evidence indicating that Burns directed Benesch to serve" Heilbut at a December 2022 conference. Opp. 47. What the documents show is that in November 2022, three weeks after the filing of the Defamation Action, Burns texted a *friend* that she "would love to serve" Heilbut at the conference. RPAF_¶474. Heilbut was ultimately served at the conference, RPAF_¶475, but there is no evidence Burns conveyed to Benesch what she texted to her friend, much less evidence Benesch acted at Burns' direction as opposed, for example, to its own judgment based on information that Heilbut would be attending the conference. RPAF_¶¶474-75.

Because there is no evidence Burns had the power to bypass Cassava's corporate governance structure and direct the Company to initiate and prosecute the Defamation Action, summary judgment should be granted in Burns' favor.

## II. Cassava Did Not Need or Seek Dr. Burns' Agreement to Commence or Prosecute the Defamation Action

For their conspiracy claim, Plaintiffs allege Burns "agreed [with Cassava] to commence and continue the Defamation Action." AC ¶207. But because Burns did not have decision-making power for the Defamation Action, *supra* 1-6; MSJ 16-21, Cassava did not need or seek Burns' agreement to commence or prosecute the Defamation Action.

At the pleading stage, the Court accepted as true the AC allegations that Burns sought to "conceal" her participation in research misconduct through the Defamation Action and by "publicly amplif[ying] Cassava's allegations from the Defamation Action regarding Plaintiffs' motives and integrity." *Heilbut v. Cassava Scis., Inc.*, 778 F.Supp.3d 551, 578 (S.D.N.Y. 2025) (citing *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) and *De Sole v. Knoedler Gallery*, 137 F.Supp.3d 387 (S.D.N.Y. 2015)).

Summary judgment should be granted because there is now evidence that was not before the Court at the pleading stage—*i.e.*, Cassava did not need or seek Burns' agreement to commence

or prosecute the Defamation Action. *Supra* 1-6. Plaintiffs do not cite any case in which a court has allowed to proceed to trial a conspiracy claim against a defendant whose agreement to an alleged scheme was not needed or sought to effect the scheme. Opp. 54.[5]

Summary judgment also should be granted because the contemporaneous evidence shows that Burns was upset by Plaintiffs' "false and damaging narrative" because she firmly believed in the science behind simufilam, *supra* 4-5; MSJ 25-27, not because she sought to "conceal" her research misconduct through the Defamation Action, *Heilbut*, 778 F.Supp.3d at 578, or "attacks on Plaintiffs' motives and integrity," Opp. 54.[6]

## III. <u>The Intracorporate Conspiracy Doctrine Bars The Conspiracy Claim</u>

Plaintiffs do not dispute that for the personal-interest exception to the intracorporate conspiracy doctrine to apply, a defendant "must have had an independent, personal conspiratorial purpose" that was "wholly separate and apart from the entity.'" *Christians of Cal., Inc. v. Clive Christian N.Y.*, 2015 WL 468833, *9 (S.D.N.Y. Feb. 3, 2015).

Plaintiffs again invoke their refrain from the pleading stage that Burns sought to "conceal" her involvement in research misconduct, Opp. 50-51, "[b]ut at the summary judgment stage, Plaintiff[s] must come forward with evidence—not merely allegations—in order to demonstrate a genuine dispute of material fact for trial." *Ruggiero v. Cnty. of Orange*, 2023 WL 7005074, *16 (S.D.N.Y. Oct. 24, 2023). They have not done so.

Plaintiffs assume the only reason Burns could have asserted that Plaintiffs, who all held short positions in or put options for Cassava stock, ¶120, had financial motives for accusing

[5] In *Sedona* and *De Sole*, the defendant's agreement to the alleged scheme was needed to effect the scheme. *See Sedona*, 2005 WL 1902780, *18; *De Sol*e, 137 F.Supp.3d at 394, 414-15.

[6] Plaintiffs concede their conspiracy claim cannot be predicated on Burns' marriage to Barbier. *Compare* MSJ 21, *with* Opp. 54; *see also Springboards to Educ., Inc. v. Kipp Foundation*, 325 F.Supp.3d 704, 719 (N.D. Tex. 2018).

Cassava of "complete scientific fraud," Exs. 51, 53, was that she knew Plaintiffs' accusations were true and "stood to gain personally from the Defamation Action." Opp. 51 (citing PAF_¶¶334-38, 406-11, 458, 462).

But Plaintiffs never address the contemporaneous evidence showing that Burns was upset by Plaintiffs' "false and damaging narrative" because she firmly believed in simufilam. *Supra* 4-5; MSJ 26-27. Being upset with what she believed to be false accusations against Cassava is not evidence that Burns knew Cassava was a "scientific fraud" or that she had independent, personal interests "wholly separate and apart" from Cassava's.[7] Nor is the "SEC investigation and settlement" evidence that Burns knew Cassava was a "scientific fraud," Opp. 52; indeed, Plaintiffs do not dispute that the SEC allegations were for alleged negligence-based disclosure violations, not alleged knowing or deliberate research misconduct. ¶148, IDX_110 at 25-27.[8]

Far from seeking cover for any research misconduct, the evidence shows that Burns hoped, in alignment with Cassava, that the Defamation Action would help preserve clinical trial sites and trial enrollment, which had been adversely impacted. MSJ 26-27; ¶¶202-203.

Plaintiffs erroneously attribute to Burns an excerpt from a letter Wang wrote, Opp. 51; PAF_¶446, PX25 at 706, and again invoke PAF_¶293, which omits that the May 2025 CUNY report stated that "research misconduct did not occur" and did not attribute any "fault" to Burns. *Supra* 4-5. Plaintiffs' mischaracterization of the record does not create a genuine issue for trial.

---

[7] Plaintiffs concede Burns' alleged animus towards Plaintiffs is insufficient to establish the personal-interest exception. *Compare* MSJ 27, *with* Opp. 52.

[8] Cassava did not admit in 2024 or 2025 that Burns knowingly "shared information sufficient to unblind Dr. Wang." Opp. 51. Instead, Cassava disclosed Orrick's investigation "found no evidence to substantiate allegations that the Company or its employees engaged in or were aware of research misconduct" and that "certain statistical information contained in an attachment to an email … could have been used to unblind him as to some number of Phase 2b Study participants," but "did not determine … [that] Dr. Wang unblinded himself." ¶154-155.

## MR. BARBIER IS ENTITLED TO SUMMARY JUDGMENT

The intracorporate conspiracy doctrine bars Plaintiffs' conspiracy claim against Barbier. Plaintiffs make no attempt to address the contemporaneous evidence showing that Barbier's actions were driven by his concerns regarding the impact of what he believed to be false allegations on Cassava, its employees, and the ongoing clinical trials:

- 8/24/21: "[T]hese [CP] allegations are complete non-sense," but driving stock price down because "investors are selling first, asking questions later." IDX_34.
- 3/4/22: "A small team of short sellers have been targeting Cassava Sciences with sham Citizen Petitions, false allegations, false rumors published on social media." IDX_68.
- 6/20/22: Email reflecting concern about impact on "directors, managers, employees, advisors and clinicians – who are going through blood, sweat & tears to test a new drug treatment for patients with Alzheimer's." IDX_77.

As reflected in the testimony of Cassava's 30(b)(6) designee, and Richard Barry, a director on the LMC, Barbier's concerns were aligned with Cassava's. MSJ 23-24.

Plaintiffs argue Barbier sought to avoid "personal legal liability" for research "he knew to lack integrity," Opp. 52-53, but there is no evidence Barbier was ever aware of any research misconduct. Barbier is not a scientist and had no personal role in the clinical studies of simufilam. ¶32; IDX_132, 7:21-23. At the time Cassava was considering whether to pursue a defamation action, Cassava's directors, officers, and scientists believed the clinical trial results showed simufilam's potential for the treatment of Alzheimer's, and that research performed at third-party institutions corroborated simufilam's mechanism of action. ¶¶179-81. That certain third parties expressed "some skepticism" with respect to certain data, and one researcher could not replicate Wang's experiment in July 2024 (two and a half years after the Defamation Action was filed), does not establish that Barbier knew of research misconduct at the time the Defamation Action

was initiated or prosecuted .[9] Opp. 53; PAF_¶¶318-20. Moreover, no investigation or audit has found evidence of knowing or deliberate research misconduct. MSJ 24.

As a fallback, Plaintiffs speculate Barbier pursued the Defamation Action to "protect" his job and the prospect of compensation from a "bonus plan tied to the company's stock price." Opp. 52-53. However, Plaintiffs fail to cite any cases contradicting the authority that neither the alleged desire to keep one's job nor the alleged prospect of stock-based compensation is a personal-interest exception. *See Rhodes v. Tevens*, 2012 WL 777421, *13 (W.D.N.Y. Mar. 7, 2012); *Langer v. Paysafe Partners LP*, 2020 WL 7684885, *9-10, *adopted by* 2020 WL 7041085 (E.D.N.Y. Nov. 30, 2020); *Christians*, 2015 WL 468833, *9. Instead, Plaintiffs rely on a case in which the defendant had already "profited wildly from [an] ongoing illegal bribery scheme." *Reich v. Lopez*, 38 F.Supp.3d 436, 465 (S.D.N.Y. 2014). That is not the situation here. RPAF_¶486 (no bonus payment).

Because the personal-interest exception has no application here, Barbier is entitled to summary judgment on Plaintiffs' conspiracy claim.

## ADDITIONAL GROUNDS FOR SUMMARY JUDGMENT

As explained in Cassava's briefing, all Defendants are entitled to summary judgment on Plaintiffs' malicious prosecution claim because Plaintiffs cannot establish any "special injury."

Plaintiffs erroneously argue that a conspiracy claim should only be dismissed when the underlying tort claim has been dismissed or is duplicative of an aiding and abetting claim. Opp. 55. "[W]here the substantive tort is already pled against the parties, … the conspiracy claim will

[9] Similarly, that Barbier stated on an earnings call that Cassava did not have its own labs and would not likely possess Wang's original Western Blot images at CUNY, and felt unfairly attacked by Plaintiffs' allegations, does not show that Barbier initiated or prosecuted the Defamation Action to "avoid legal liability" or protect his or Burns' personal reputations. Opp. 52-53; PAF ¶¶254, 256-257, 395, 447-49, 451.

be dismissed as duplicative." *Bahiri v. Madison Realty Cap. Advisors*, 2010 WL 5559404, *3 (N.Y. Sup. Ct. Dec. 23, 2010). Accordingly, the Individual Defendants are entitled to summary judgment on Plaintiffs' claim they conspired to "commit" malicious prosecution, AC ¶207.

Through their conspiracy claim, Plaintiffs seek to hold the Individual Defendants liable for punitive damages on their Anti-SLAPP claim against Cassava. *Id.* As explained in Cassava's briefing, there is no basis for a punitive damages award.

## **CONCLUSION**

For these reasons, summary judgment should be granted for the Individual Defendants.

Dated: October 5, 2026
New York, New York

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Zachary R. Taylor*
Douglas W. Greene
Aric H. Wu
Zachary R. Taylor

45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
dgreene@bakerlaw.com
awu@bakerlaw.com
ztaylor@bakerlaw.com

*Attorneys for Defendants Remi Barbier and Lindsay Burns*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(C)**

Pursuant to the Court's Individual Practice Rule 3(C) and Local Civil Rule 7.1(c), I hereby certify that on October 5, 2026, I electronically filed the foregoing Individual Defendants' Reply Memorandum of Law in Support of their Motion for Summary Judgment. As measured by the word processing system used to prepare it, the memorandum has a word count of 3,488 and complies with Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York.

BAKER & HOSTETLER LLP

By: *\/s/ Zachary R. Taylor*
Zachary R. Taylor